POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMI - GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ALPHABET INC., SUNDAR PICHAI, RUTH M. PORAT, and PHILIPP SCHINDLER,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff AMI - Government Employees Provident Fund Management Company Ltd. ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Alphabet Inc. ("Alphabet" or the "Company"), analysts'

reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Alphabet securities between February 4, 2020 and January 23, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     Alphabet is a multinational technology conglomerate holding company.  It was created through a restructuring of Google Inc. in October 2015, at which point Alphabet became the parent company of Google and several former Google subsidiaries.  Alphabet is headquartered in Mountain View, California and incorporated in Delaware.  The Company's Class A and Class C shares trade on the NASDAQ under the ticker symbols "GOOGL" and "GOOG," respectively.

3.     Alphabet's subsidiary Google is a dominant player in the field of digital advertising, to the extent that it controls the digital tools that every major website publisher uses to sell advertising space on their websites.

4.     In recent years, Google's dominance in this industry has drawn regulatory scrutiny.  In July 2018, the European Commission ("EC") fined Google €2.42 billion for promoting its own shopping comparison service at the top of its search results.  Less than a year later, in March 2019, the EC fined Google €1.49 billion for preventing rivals from being able to "compete and innovate fairly" in the online advertising market.  In June 2019, the U.S. Department of Justice ("DOJ") reported that it would

investigate Google for antitrust violations.  Then, in October 2020, the DOJ filed an antitrust lawsuit against Google, alleging that it had abused a monopoly position in the search and search advertising markets.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Alphabet used its dominance in the field of digital advertising to disadvantage website publishers and advertisers who used competing advertising products; (ii) the foregoing conduct was anticompetitive in nature and likely to draw significant regulatory scrutiny; (iii) Alphabet's revenues were unsustainable to the extent that they were the product of said anticompetitive conduct; (iv) Alphabet's conduct, once revealed, would negatively impact the Company's reputation and expose it to a heightened risk of litigation and regulatory enforcement action; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.      On January 24, 2023, the U.S. Department of Justice and eight states filed an antitrust lawsuit against Alphabet's Google subsidiary, accusing Google of illegally abusing its dominance in digital advertising and violating the Sherman Antitrust Act.  The lawsuit alleges, among other things, that "Google abuses its monopoly power to disadvantage website publishers and advertisers who dare to use competing ad tech products in a search for higher quality, or lower cost, matches."

7.      On this news, Alphabet's Class A shares fell $2.09 per share, or 2.09%, to close at $97.70 per share, while its Class C shares fell $2.00 per share, or 1.98%, to close at $99.21 per share, on January 24, 2023.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Alphabet is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

12.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff, as set forth in the attached Certification, acquired Alphabet securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Alphabet is a Delaware corporation with principal executive offices located at 1600 Amphitheatre Parkway.  The Company's common stock trades in an efficient market on the Nasdaq

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Global Select Market ("NASDAQ") under the ticker symbols "GOOGL" (Class A) and "GOOG" (Class B).

15.     Defendant Sundar Pichai ("Pichai") has served as Alphabet's Chief Executive Officer at all relevant times.

16.     Defendant Ruth M. Porat ("Porat") has served as Alphabet's Chief Financial Officer at all relevant times.

17.     Defendant Philipp Schindler ("Schindler") has served as Alphabet's Senior Vice President and Chief Business Officer at all relevant times.

18.     Defendants Pichai, Porat, and Schindler are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Alphabet's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Alphabet's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Alphabet, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Alphabet is a multinational technology conglomerate holding company.  It was created through a restructuring of Google Inc. in October 2015, at which point Alphabet became the parent

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

company of Google and several former Google subsidiaries.  Alphabet is headquartered in Mountain View, California and incorporated in Delaware.  The Company's Class A and Class C shares trade on the NASDAQ under the ticker symbols "GOOGL" and "GOOG," respectively.

21.     Alphabet's subsidiary Google is a dominant player in the field of digital advertising, to the extent that it controls the digital tools that every major website publisher uses to sell advertising space on their websites.

22.     In recent years, Google's dominance in this industry has drawn regulatory scrutiny.  In July 2018, the EC fined Google €2.42 billion for promoting its own shopping comparison service at the top of its search results.  Less than a year later, in March 2019, the EC fined Google €1.49 billion for preventing rivals from being able to "compete and innovate fairly" in the online advertising market.  In June 2019, the U.S. DOJ reported that it would investigate Google for antitrust violations.

### Materially False and Misleading Statements Issued During the Class Period

23.     On February 4, 2020, Alphabet filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2019 (the "2019 10-K").  In the 2019 10-K's recitation of the Company's ongoing "Legal Matters," Alphabet touted its purported "cooperat[ion] with federal and state regulators in the United States, and other regulators around the world" with respect to antitrust investigations.  The Company also stated that the "regulatory and government investigations" to which it was "regularly subject," including those involving competition, "could result in fines, civil or criminal penalties, or other adverse consequences." These vague and generalized statements failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

24.     Similarly, the 2019 10-K contained the following representations regarding Google's advertising products and services:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**How we make our money**

The goal of our advertising products is to deliver relevant ads at just the right time and to give people useful commercial information, regardless of the device they're using. We also provide advertisers with tools that help them better attribute and measure their advertising campaigns. Our advertising solutions help millions of companies grow their businesses, and we offer a wide range of products across devices and formats. We generate revenues primarily by delivering both performance advertising and brand advertising.

•       Performance advertising creates and delivers relevant ads that users will click on, leading to direct engagement with advertisers. Most of our performance advertisers pay us when a user engages in their ads. Performance advertising lets our advertisers connect with users while driving measurable results. Our ads tools allow performance advertisers to create simple text-based ads that appear on Google properties and the properties of Google Network Members. In addition, Google Network Members use our platforms to display relevant ads on their properties, generating revenues when site visitors view or click on the ads. We continue to invest in our advertising programs and make significant upgrades.

•       Brand advertising helps enhance users' awareness of and affinity with advertisers' products and services, through videos, text, images, and other interactive ads that run across various devices. We help brand advertisers deliver digital videos and other types of ads to specific audiences for their brand-building marketing campaigns.

We have built a world-class ad technology platform for advertisers, agencies, and publishers to power their digital marketing businesses. We aim to ensure great user experiences by serving the right ads at the right time and by building deep partnerships with brands and agencies. We also seek to improve the measurability of advertising so advertisers know when their campaigns are effective.

We have allocated substantial resources to stopping bad advertising practices and protecting users on the web. We focus on creating the best advertising experiences for our users and advertisers in many ways, ranging from filtering out invalid traffic, removing billions of bad ads from our systems every year to closely monitoring the sites, apps, and videos where ads appear and blacklisting them when necessary to ensure that ads do not fund bad content.

We continue to look to the future and are making long-term investments that will grow revenues beyond advertising, including Google Cloud, Google Play, hardware, and YouTube. We are also investing in research efforts in AI and quantum computing to foster innovation across our businesses and create new opportunities.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

In touting these features of Google's advertising business as the reasons for its success, Alphabet failed to disclose to investors the extent to which its advertising business's success also depended on illicit anticompetitive conduct, by which it gained market share at the expense of its competitors.

25.     Rather, in the 2019 10-K's "Competition" subsection, Alphabet merely stated the following:

> Competing successfully depends heavily on our ability to deliver and distribute innovative products and technologies to the marketplace across our businesses. Specifically, for advertising, competing successfully depends on attracting and retaining:
>
> •     Users, for whom other products and services are literally one click away, largely on the basis of the relevance of our advertising, as well as the general usefulness, security and availability of our products and services.
>
> •     Advertisers, primarily based on our ability to generate sales leads, and ultimately customers, and to deliver their advertisements in an efficient and effective manner across a variety of distribution channels.
>
> •     Content providers, primarily based on the quality of our advertiser base, our ability to help these partners generate revenues from advertising, and the terms of our agreements with them.

Again, these representations failed to disclose that for Google, "competing successfully" also entailed engaging in illicit anticompetitive conduct.

26.     On April 28, 2020, Alphabet issued a press release announcing the Company's Q1 2020 results.  Quoting Defendant Porat, the press release stated, in relevant part, "[o]ur business, led by Search, YouTube, and Cloud, drove Alphabet revenues to $41.2 billion, up 13% versus last year, or 15% on a constant currency basis," and "[p]erformance was strong during the first two months of the quarter, but then in March we experienced a significant slowdown in ad revenues. We are sharpening our focus on executing more efficiently, while continuing to invest in our long-term opportunities."

27.     That same day, Alphabet hosted an earnings call with investors and analysts to discuss the Company's Q1 2020 results (the "Q1 2020 Earnings Call").  During the scripted portion of the Q1

2020 Earnings Call, Defendant Porat stated, in relevant part, "[w]e are redoubling our efforts to help our advertising customers and partners by sharing insights and developing new tools to keep them connected to their customers and help them be best positioned for recovery."

28.    On April 29, 2020, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2020 (the "Q1 2020 10-Q").  The Q1 2020 10-Q contained a substantively similar recitation of the Company's ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

29.    On July 30, 2020, Alphabet issued a press release announcing the Company's Q2 2020 results.  Quoting Defendant Porat, the press release stated, in relevant part, "[i]n the second quarter our total revenues were $38.3B, driven by gradual improvement in our ads business and strong growth in Google Cloud and Other Revenues" and "[w]e continue to navigate through a difficult global economic environment."

30.    That same day, Alphabet hosted an earnings call with investors and analysts to discuss the Company's Q2 2020 results (the "Q2 2020 Earnings Call").  During the scripted portion of the Q2 2020 Earnings Call, Defendant Pichai stated, in relevant part:

> One area where we have executed really well to improve the user and merchant experience in the last year is shopping. We know that we and merchants face incredible competition for consumer attention and wallets. We are helping merchants lower their costs and improve their reach in a few ways. They can now list their products for free on the Google Shopping tab and on Search helping them drive more traffic and making our results more comprehensive and useful. We also recently announced that sellers on Buy on Google will no longer pay us a commission fee. Plus, we are giving retailers more choice by opening our platform to third-party providers, starting with PayPal and Shopify. Shopping ads also continue to be a great tool for merchants with new visual features for retailers such as smart shopping campaigns that let customers know about free shipping. We are continually adding more ways for advertisers to reach shoppers.

31.     In addition, during the Q&A portion of the Q2 2020 Earnings Call, when asked to comment on the regulatory environment, Defendant Pichai responded, in relevant part:

On the regulatory front, we've obviously been operating under scrutiny for a while, and we realize, at our scale, that's appropriate. And we've engaged constructively across jurisdictions. And from my standpoint, ***I'm confident in the approach we take, our focus on users and in the evidence in almost all areas we operate in. We expand choice or overall lower prices. And it's -- overall, there's a very fast pace of innovation. So it's dynamic and competitive.***

Having said that, obviously, we will operate based on the rules. And so to the extent there are any areas where we need to adapt, we will. And as a company, I think we will be, I think, being flexible around those things is important, I think. I think the scrutiny is going to be here for a while, and so we are committed to working through it.

(Emphasis added).

32.     On July 31, 2020, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "Q2 2020 10-Q").  The Q2 2020 10-Q contained a substantively similar recitation of the Company's ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

33.     Then, in October 2020, the DOJ filed an antitrust lawsuit against Google, alleging that it had abused a monopoly position in the search and search advertising markets.  A press release published by the DOJ stated, in relevant part, "[a]s alleged in the Complaint, Google has entered into a series of exclusionary agreements that collectively lock up the primary avenues through which users access search engines, and thus the internet, by requiring that Google be set as the preset default general search engine on billions of mobile devices and computers worldwide and, in many cases, prohibiting preinstallation of a competitor."

34.     On October 29, 2020, Alphabet issued a press release announcing the Company's Q3 2020 results.  Quoting Defendant Porat, the press release stated, in relevant part, "[t]otal revenues of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

$46.2 billion in the third quarter reflect broad based growth led by an increase in advertiser spend in Search and YouTube as well as continued strength in Google Cloud and Play," and "[w]e remain focused on making the right investments to support long term sustainable value."

35.     That same day, Alphabet hosted an earnings call with investors and analysts to discuss the Company's Q3 2020 results (the "Q3 2020 Earnings Call").  During the scripted portion of the Q3 2020 Earnings Call, Defendant Pichai stated, in relevant part, "[w]e remain committed to investing to build the most helpful, most trusted search experience. Just we have for the last 22 years. On that note regarding the DOJs lawsuit, we believe that our products are creating significant consumer benefits and will confidently make our case. Our company's focus remains on continuing our work to build a search product that people love and value."

36.     In addition, during the Q&A portion of the Q3 2020 Earnings Call, when asked a question regarding the DOJ lawsuit, Defendant Pichai responded, in relevant part:

> We are -- our mission is to provide information, so the competitive environment we face, particularly with mobile and user looking for information, there's – so many choices they have. And so the question is, you know, making should Google is a relevant way by which they get that information. And, you know, you can imagine when people are looking to buy products, or the competitors that exist, travel, booking hotels or any category you take and so for us that's why I talk about holistically competing and making sure we can provide relevant information is both competition we face for mindshare, and that's the opportunity we have ahead.

> In terms of specifics of the DOJ case and stuff and confident, you know, we have approached everything, both with the view of making sure we create the best user experience and be -- we really want, we've always built Google for everyone. So we want it to be available on all platforms and be convenient for users to access our services and as part of that partner with other companies in doing so. And so [we] look forward to making our case there.

37.     On October 30, 2020, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2020 (the "Q3 2020 10-Q").  The Q3 2020 10-Q contained a substantively identical recitation of the Company's

11

ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

38.     On February 2, 2021, Alphabet issued a press release announcing the Company's Q4 and fiscal year 2020 results.  Quoting Defendant Porat, the press release stated, in relevant part, "[o]ur strong fourth quarter performance, with revenues of $56.9 billion, was driven by Search and YouTube, as consumer and business activity recovered from earlier in the year. Google Cloud revenues were $13.1 billion for 2020, with significant ongoing momentum, and we remain focused on delivering value across the growth opportunities we see."

39.     That same day, Alphabet hosted an earnings call with investors and analysts to discuss the Company's Q4 and fiscal year 2020 results (the "Q4 2020 Earnings Call").  During the scripted portion of the Q4 2020 Earnings Call, Defendant Schindler stated, in relevant part, "[w]e've taken significant steps to accelerate an open ecosystem for online retail that benefits businesses of all sizes, from large online household names to your neighborhood store just around the corner. We've long said that we want to make Google the best place for users to start their shopping journeys, regardless of where those journeys end."

40.     On February 3, 2021, Alphabet filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2020 (the "2020 10-K").  The 2020 10-K contained substantively similar descriptions of the Company's ongoing legal matters, competition, and Google's advertising products and services, as discussed, *supra*, in ¶¶ 23-25.

41.     On April 27, 2021, Alphabet issued a press release announcing the Company's Q1 2021 results.  Quoting Defendant Porat, the press release stated, in relevant part, "[t]otal revenues of $55.3 billion in the first quarter reflect elevated consumer activity online and broad based growth in advertiser

revenue. We're very pleased with the ongoing momentum in Google Cloud, with revenues of $4.0 billion in the quarter reflecting strength and opportunity in both GCP and Workspace."

42.    On April 28, 2021, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "Q1 2021 10-Q"). The Q1 2021 10-Q contained a substantively similar recitation of the Company's ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

43.    On July 27, 2021, Alphabet issued a press release announcing the Company's Q2 2021 results. Quoting Defendant Porat, the press release stated, in relevant part, "[o]ur strong second quarter revenues of $61.9 billion reflect elevated consumer online activity and broad-based strength in advertiser spend. Again, we benefited from excellent execution across the board by our teams."

44.    That same day, Alphabet hosted an earnings call with investors and analysts to discuss the Company's Q2 2021 results (the "Q2 2021 Earnings Call"). During the scripted portion of the Q2 2021 Earnings Call, Defendant Pichai stated, in relevant part, "we have sent more traffic to third-party websites than any year prior, in addition to generating billions of direct connections like phone calls, directions, ordering food and making reservations that drove customers and revenue to businesses around the world that are working to get back on their feet."

45.    On July 28, 2021, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "Q2 2021 10-Q"). The Q2 2021 10-Q contained a substantively similar recitation of the Company's ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

46.     On October 26, 2021, Alphabet issued a press release announcing the Company's Q3 2021 results.  Quoting Defendant Porat, the press release stated, in relevant part: "[o]ur consistent investments to support long-term growth are reflected in strong financial performance, with revenues of $65.1 billion in the quarter. We continued to deliver across our business by providing helpful and valuable experiences for both consumers and our partners."

47.     That same day, Alphabet hosted an earnings call with investors and analysts to discuss the Company's Q3 2021 results (the "Q3 2021 Earnings Call").  During the Q&A portion of the Q3 2021 Earnings Call, when asked how "the value proposition of search will change going forward and what can [Alphabet] do even more than [its] done before to take advantage of what looks like real challenges and the ability to target and measure becomes the mobile search," Defendant Porat responded, in relevant part:

> And we're always asking ourselves the same questions, right? How do we drive better answers to queries especially on search, especially including those with commercial intent. How do you use machine learning to deliver even more relevant and higher-quality experiences for users that drive higher clicks and more conversions for advertisers. So really our main goal is to consistently deliver great experiences for users, drive incremental value for partners, and making them successful.

48.     On October 27, 2021, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "Q3 2021 10-Q").  The Q3 2021 10-Q contained a substantively similar recitation of the Company's ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

49.     On February 1, 2022, Alphabet issued a press release announcing the Company's Q4 and fiscal year 2021 results.  The press release stated, in relevant part:

> Sundar Pichai, CEO of Alphabet and Google, said: "Our deep investment in AI technologies continues to drive extraordinary and helpful experiences for people and businesses, across our most important products. *Q4 saw ongoing strong growth in our*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*advertising business, which helped millions of businesses thrive and find new customers*, a quarterly sales record for our Pixel phones despite supply constraints, and our Cloud business continuing to grow strongly."

Ruth Porat, CFO of Alphabet and Google, said: "Our fourth quarter revenues of $75 billion, up 32% year over year, reflected *broad-based strength in advertiser spend* and strong consumer online activity, as well as substantial ongoing revenue growth from Google Cloud. Our investments have helped us drive this growth by delivering the services that people, our partners and businesses need, and we continue to invest in long-term opportunities."

(Emphases added).

50.     That same day, Alphabet hosted an earnings call with investors and analysts to discuss the Company's fiscal and Q4 2021 results (the "Q4 2021 Earnings Call").  During the Q&A portion of the Q4 2021 Earnings Call, when asked where Alphabet "see[s] the most opportunity for innovation to really drive more value for advertisers in nonretail verticals as we go into 2022," Defendant Schindler responded, in relevant part:

So the first one, obviously, are we the best place users turn when they need information or want to discover and be inspired. So things like queries and discover. And we're focused on providing better and more comprehensive answers to more types of questions, and we need to obviously deliver high-quality relevant info for all types of queries, including ones where they may be looking for a specific brand or product or just look for an inspiration. And how people search is changing, and it needs to become more multimodal, more conversational. So what does that mean for ads, for example. So getting user experience right across commercial quarries is essential way beyond, obviously, the area that you mentioned. And there is a lot of innovation that goes into this.

The second part is really are we providing the most relevant ads when and where consumers are. And we only want to show ads when they're helpful to people. On 80% of the searches actually, we show no top ads and most of the ads that you see are on searches with commercial intent. And yes, we're -- for those with commercial interest, the question is really how do we provide the best answer in a way that's meaningful to users and where advertisers actually have something relevant to offer.

51.     On February 2, 2022, Alphabet filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2021 (the "2021 10-K").  The 2021 10-K contained substantively similar descriptions of the Company's ongoing

legal matters, competition, and Google's advertising products and services, as discussed, *supra*, in ¶¶ 23-25.

52.     On April 27, 2022, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2022 (the "Q1 2022 10-Q").  The Q1 2022 10-Q contained a substantively similar recitation of the Company's ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

53.     On July 26, 2022, Alphabet issued a press release announcing the Company's Q2 2022 results.  Quoting Defendant Porat, the press release stated, in relevant part, "[o]ur consistent investments to support long-term growth are reflected in our solid performance in the second quarter, with revenues of $69.7 billion in the quarter, up 13% versus last year or 16% on a constant currency basis. We are focused on responsible capital allocation in support of our growth opportunities."

54.     That same day, Alphabet hosted an earnings call with investors and analysts to discuss the Company's Q2 2022 results (the "Q2 2022 Earnings Call").  During the Q&A portion of the Q2 2022 Earnings Call, when asked to discuss the composition of Alphabet's advertising base, Defendant Schindler responded, in relevant part:

> It's a broad question you're asking, if you're leaning a little bit more towards the total addressable market here. Let me reiterate what I said before. We're not just addressing above-the-line marketing budgets, like traditional advertising or television advertising. There's a lot of upside that we've seen below the line, budgets, whether it's promotional pricing, product placements, sponsorships and so on, and the comps -- we see cuts across the universe of different players, sectors, verticals that I just described. ***But in the end, our mingle is on delivering great experiences for our users and driving incremental ROI for advertisers and then making them successful across all this big universe of sectors I just talked about***. And I'm positive that budget should continue to move our ways as long as we stay focused on this one.

(Emphasis added.)

55.     Later during the Q&A portion of the Q2 2022 Earnings Call, when asked what Alphabet was doing "in search from a product perspective to keep that retail category as strong as it is," Defendant Schindler responded, in relevant part:

> From a trend perspective, you're absolutely right, omnichannel remains the way to win, retailers continue to build their digital presence to drive both online and offline sales, and we're obviously helping them do it. Over the last few quarters, I think I've talked quite a bit about the ways how we're doing this in Q2. **_Like in Q1, we saw a year-over-year increase in adoption of, for example, local inventory ads. These are mobile first and location-based and helping businesses of all sizes showcase their products and stock, in-store, online or available for store, curbside pickup, all different variations_**. Additionally, we're midway through the migration from smart shopping campaigns into Performance Max, which you also mentioned, and advertisers have been pleased with increased reach and the increased performance.
>
> **_And our focus really has always been on building tools and features that help both, offline and online businesses connect directly with these customers across our platforms_**. And we're excited about what's next for retail commerce across our services, especially Search and YouTube. And we will remain focused on building helpful great products and experiences for both, users and these businesses.

(Emphasis added.)

56.     On July 27, 2022, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30 2022 (the "Q2 2022 10-Q"). The Q2 2022 10-Q contained a substantively similar recitation of the Company's ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

57.     On October 25, 2022, Alphabet issued a press release announcing the Company's Q3 2022 results. Quoting Defendant Porat, the press release stated, in relevant part, "[o]ur third quarter revenues were $69.1 billion, up 6% versus last year or up 11% on a constant currency basis. Financial results for the third quarter reflect healthy fundamental growth in Search and momentum in Cloud, while affected by foreign exchange. We're working to realign resources to fuel our highest growth priorities."

58.     On October 26, 2022, Alphabet filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2022 (the "Q3 2022 10-Q").  The Q3 2022 10-Q contained a substantively similar recitation of the Company's ongoing "Legal Matters" as discussed, *supra*, in ¶ 23, which failed to disclose to investors the known specific risks arising from Alphabet's illicit anticompetitive conduct.

59.     In addition, Alphabet's periodic (i.e., annual and quarterly) reports filed with the SEC during the Class Period all contained certifications pursuant to the Sarbanes-Oxley Act of 2002, in which Defendants Pichai and Porat attested to the accuracy of each report.

60.     The statements referenced in ¶¶ 23-32 and 34-59 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Alphabet used its dominance in the field of digital advertising to disadvantage website publishers and advertisers who used competing advertising products; (ii) the foregoing conduct was anticompetitive in nature and likely to draw significant regulatory scrutiny; (iii) Alphabet's revenues were unsustainable to the extent that they were the product of said anticompetitive conduct; (iv) Alphabet's conduct, once revealed, would negatively impact the Company's reputation and expose it to a heightened risk of litigation and regulatory enforcement action; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

61.     On January 24, 2023, the DOJ issued a press release entitled "Justice Department Sues Google for Monopolizing Digital Advertising Technologies."   The DOJ's press release stated, in relevant part:

Today, the Justice Department, along with the Attorneys General of California, Colorado, Connecticut, New Jersey, New York, Rhode Island, Tennessee, and Virginia, filed a civil antitrust suit against Google for monopolizing multiple digital advertising technology products in violation of Sections 1 and 2 of the Sherman Act.

Filed in the U.S. District Court for the Eastern District of Virginia, the complaint alleges that Google monopolizes key digital advertising technologies, collectively referred to as the "ad tech stack," that website publishers depend on to sell ads and that advertisers rely on to buy ads and reach potential customers. Website publishers use ad tech tools to generate advertising revenue that supports the creation and maintenance of a vibrant open web, providing the public with unprecedented access to ideas, artistic expression, information, goods, and services. Through this monopolization lawsuit, the Justice Department and state Attorneys General seek to restore competition in these important markets and obtain equitable and monetary relief on behalf of the American public.

As alleged in the complaint, over the past 15 years, Google has engaged in a course of anticompetitive and exclusionary conduct that consisted of neutralizing or eliminating ad tech competitors through acquisitions; wielding its dominance across digital advertising markets to force more publishers and advertisers to use its products; and thwarting the ability to use competing products. In doing so, Google cemented its dominance in tools relied on by website publishers and online advertisers, as well as the digital advertising exchange that runs ad auctions.

* * * * *

Google now controls the digital tool that nearly every major website publisher uses to sell ads on their websites (publisher ad server); it controls the dominant advertiser tool that helps millions of large and small advertisers buy ad inventory (advertiser ad network); and it controls the largest advertising exchange (ad exchange), a technology that runs real-time auctions to match buyers and sellers of online advertising.



Google's anticompetitive conduct has included:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- **Acquiring Competitors:** Engaging in a pattern of acquisitions to obtain control over key digital advertising tools used by website publishers to sell advertising space;

- **Forcing Adoption of Google's Tools:** Locking in website publishers to its newly-acquired tools by restricting its unique, must-have advertiser demand to its ad exchange, and in turn, conditioning effective real-time access to its ad exchange on the use of its publisher ad server;

- **Distorting Auction Competition**: Limiting real-time bidding on publisher inventory to its ad exchange, and impeding rival ad exchanges' ability to compete on the same terms as Google's ad exchange; and

- **Auction Manipulation:** Manipulating auction mechanics across several of its products to insulate Google from competition, deprive rivals of scale, and halt the rise of rival technologies.

As a result of its illegal monopoly, and by its own estimates, Google pockets on average more than 30% of the advertising dollars that flow through its digital advertising technology products; for some transactions and for certain publishers and advertisers, it takes far more. Google's anticompetitive conduct has suppressed alternative technologies, hindering their adoption by publishers, advertisers, and rivals.

62.     On this news, Alphabet's Class A shares fell $2.09 per share, or 2.09%, to close at $97.70 per share, while its Class C shares fell $2.00 per share, or 1.98%, to close at $99.21 per share, on January 24, 2023.

63.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Alphabet securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

65.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Alphabet securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Alphabet or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

67.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Alphabet;

- whether the Individual Defendants caused Alphabet to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Alphabet securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

70.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Alphabet securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Alphabet securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

71.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

72.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

73.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

74.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

75.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Alphabet securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Alphabet securities and options at artificially inflated prices.  In furtherance of this illicit scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

76.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Alphabet securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Alphabet's finances and business prospects.

77.      By virtue of their positions at Alphabet, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

78.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Alphabet, the Individual Defendants had knowledge of the details of Alphabet's internal affairs.

79.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Alphabet.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Alphabet's businesses, operations, future financial

condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Alphabet securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Alphabet's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Alphabet securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

80.     During the Class Period, Alphabet securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Alphabet securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Alphabet securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Alphabet securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

81.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

82.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and

sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

<u>**COUNT II**</u>

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

83.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     During the Class Period, the Individual Defendants participated in the operation and management of Alphabet, and conducted and participated, directly and indirectly, in the conduct of Alphabet's business affairs.  Because of their senior positions, they knew the adverse non-public information about Alphabet's misstatement of income and expenses and false financial statements.

85.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Alphabet's financial condition and results of operations, and to correct promptly any public statements issued by Alphabet which had become materially false or misleading.

86.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Alphabet disseminated in the marketplace during the Class Period concerning Alphabet's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Alphabet to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Alphabet within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the illicit conduct alleged which artificially inflated the market price of Alphabet securities.

87.    Each of the Individual Defendants, therefore, acted as a controlling person of Alphabet. By reason of their senior management positions and/or being directors of Alphabet, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Alphabet to engage in the illicit acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of Alphabet and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

88.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Alphabet.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 16, 2023                              Respectfully submitted,

                                                   POMERANTZ LLP

                                                   */s/ Jennifer Pafiti*
                                                   Jennifer Pafiti (SBN 282790)
                                                   1100 Glendon Avenue, 15th Floor

Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Orly Guy
Eitan Lavie
Ariel Sharon 4, 34th Floor
Givatayim, Israel 5320047
Telephone: +972 (0) 3 624 0240
Facsimile: +972 (0) 3 624 0111
oguy@pomlaw.com
eitan@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS