BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
ELISE LOPEZ, State Bar No. 324199
elise.lopez@freshfields.com
J. MIA TSUI, State Bar No. 344251
mia.tsui@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants Alphabet Inc., Google LLC,*
*Sundar Pichai, Ruth M. Porat, Philipp Schindler,*
*and Kent Walker*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AMI - GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALPHABET INC., GOOGLE LLC, SUNDAR PICHAI, RUTH M. PORAT, PHILIPP SCHINDLER, and KENT WALKER, <br><br> Defendants. | Case No.: 3:23-cv-01186-RS <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** <br><br> Date:     January 11, 2024 <br> Time:     1:30 p.m. <br> Location:  Courtroom 3 – 17th Floor <br> Judge:    Richard Seeborg |

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.
CASE NO. 3:23-CV-01186-RS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION..................................................................................................................... 1

ARGUMENT............................................................................................................................ 2

    I. THE OPPOSITION FAILS TO CORRECT FATAL FLAWS IN FALSITY THEORY............... 2

        A. Plaintiffs Are Unable to Defend Their Ad Tech Falsity Allegations................................... 2

            1. Pending lawsuits are insufficient to allege falsity................................................ 2

            2. Lack of prefatory words does not convert opinions into fact.............................. 3

            3. Plaintiffs retreat from challenge to statements about helping customers............ 5

            4. Technical explanations did not "tout" details of proprietary ad software............ 6

        B. The Opposition Illuminates the Deficiencies in Plaintiffs' Privacy Allegations................. 7

    II. PLAINTIFFS DO NOT CURE THEIR FAILURE TO PLEAD SCIENTER........................... 8

        A. The Opposition Fails to Defend Scienter as to Defendants' Ad Tech Statements............ 8

            1. Government investigations are insufficient to infer scienter................................ 8

            2. Unadjudicated claims are insufficient to plead scienter...................................... 8

            3. The Opposition ignores that management is not obligated to be prescient.......... 9

            4. The Opposition continues to rely on unparticularized theories of scienter......... 9

        B. The Opposition Fails to Show Scienter as to Defendants' Privacy Statements............... 12

    III. PLAINTIFFS DO NOT CURE THEIR FAILURE TO PLEAD LOSS CAUSATION........... 12

        A. The Opposition Does Not Supply the Missing Causal Link..................................... 13

        B. Allegations Do Not Show New Information Entered the Market or Loss Occurred........... 13

            1. Repeated antitrust allegations are not new information.................................... 13

            2. Even viewed together, Plaintiffs' allegations do not show a loss....................... 14

CONCLUSION...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*,
    1 F.4th 687 (9th Cir. 2021)……………………………………………….………7

*Bien v. LifeLock Inc.*,
    2015 U.S. Dist. LEXIS 196120 (D. Ariz. July 21, 2015) ……………………………….…… 6

*In re Blue Earth, Inc. Sec. Class Action Litig.*,
    2015 U.S. Dist. LEXIS 178032 (C.D. Cal. Nov. 3, 2015) ……………………………….. 14

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) ……………………………………………………… 13, 15

*Brendon v. Allegiant Travel Co.*,
    412 F. Supp. 3d 1244 (D. Nev. 2019) ……………………………………………….. 15

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ……………………………………………11

*In re Credit Suisse First Bos. Corp. Analyst Reports Sec. Litig.*,
    431 F.3d 36 (1st Cir. 2005) ………………………………………………………….4

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) …………………………………………………………13

*Eng v. Edison Int'l*,
    2017 U.S. Dist. LEXIS 69196 (S.D. Cal. May 5, 2017) …………………………………..15

*Erickson v. Corinthian Colls., Inc.*,
    2015 U.S. Dist. LEXIS 193978 (C.D. Cal. Apr. 22, 2015) ……………………………..15

*Evanston Police Pension Fund v. McKesson Corp.*,
    411 F. Supp. 3d 580 (N.D. Cal. 2019) …………………………………………………2

*In re Facebook, Inc. Sec. Litig.*,
    84 F.4th 844 (9th Cir. 2023) …………………………………………...….. 7, 12, 15

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011) ……………………………………………………….. 4

*In re FirstEnergy Corp. Securities Litigation*,
    2022 U.S. Dist. LEXIS 39308 (S.D. Ohio Mar. 7, 2022) …………………………………. 7

*Geinko v. Padda*,
    2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26, 2002) …………………...…………… 13, 14

*Halford v. AtriCure, Inc.*,
    2010 U.S. Dist. LEXIS 144377 (S.D. Ohio Mar. 29, 2010) ……………………………. 3

**Page**

*In re Infineon Technologies Ag Securities Litigation*,
2006 U.S. Dist. LEXIS 32892 (N.D. Cal. May 22, 2006) …………………………………… 5

*In re Intel Corp. Sec. Litig.*,
2019 U.S. Dist. LEXIS 54615 (N.D. Cal. Mar. 29, 2019) …………………………………. 6

*In re Invision Techs., Inc. Sec. Litig.*,
2006 U.S. Dist. LEXIS 12166 (N.D. Cal. Jan. 21, 2006) ……………………………..…….. 10

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
2018 U.S. Dist. LEXIS 149393 (N.D. Cal. Aug. 31, 2018) ……..…………………………11, 14

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*,
998 F.3d 397 (9th Cir. 2021) ……………………………………………………… 12

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) …………………………………………………………..…..7

*Kane v. Madge Networks N.V.*,
2000 U.S. Dist. LEXIS 19984 (N.D. Cal. May 25, 2000),
*aff'd sub nom. Kane v. Zisapel,* 32 F. App'x 905 (9th Cir. 2002) ……………………… 7

*Lako v. Loandepot, Inc.*,
2023 U.S. Dist. LEXIS 13086 (C.D. Cal. Jan. 24, 2023) …………………………………… 15

*Lloyd v. CVB Financial Corp.*,
811 F.3d 1200 (9th Cir. 2016) …………………………………………………….... 13, 15

*Lopes v. Fitbit, Inc.*,
2020 U.S. Dist. LEXIS 52187 (N.D. Cal. Mar. 23, 2020),
*aff'd,* 848 Fed. App'x 278 (9th Cir. 2021) …………………………………………..………13

*Mauss v. NuVasive, Inc.*,
2016 U.S. Dist. LEXIS 90412 (S.D. Cal. July 12, 2016) ………………………………….. 14, 15

*McPhail v. First Command Fin. Planning, Inc.*,
2006 U.S. Dist. LEXIS 104496 (S.D. Cal. July 26, 2006) …………………………………… 2

*Melbourne Mun. Firefighters' Pension Trust Fund v. Jacobs*,
2016 Del. Ch. LEXIS 114 (Aug. 1, 2016) …………………………………………………… 9

*Menkes v. Stolt-Nielsen S.A.*,
2005 U.S. Dist. LEXIS 28208 (D. Conn. Nov. 10, 2005) …………………………………… 5

*In re Merck & Co., Inc. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005) …………………………………..……………………….. 11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) ……………………………………………………… 8, 11

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.        -iii-
CASE NO. 3:23-CV-01186-RS

**Page**

*Miller v. Champion Enters., Inc.*,
346 F.3d 660 (6th Cir. 2003) …………………………………………………………. 6

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) …………………………………………………… 13, 15

*Morse v. McWhorter*,
200 F. Supp. 2d 853 (M.D. Tenn. 1998) ………………………………………….. 14

*In re Musical Instruments and Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) …………………………………………………… 2

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
80 F.4th 158 (2d Cir. 2023) ……………………………………………………... 4

*In re NVIDIA Corp. Securities Litigation*,
768 F.3d 1046 (9th Cir. 2014) …………………………………………………….9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) ……………………………………………………………….. 3, 5

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) …………………………………………………… 10, 12

*Roberti v. OSI Sys. Inc.*,
2015 U.S. Dist. LEXIS 24761 (C.D. Cal. Feb. 27, 2015) …………………………………10

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001) ……………………………………………………... 11

*Shenwick v. Twitter, Inc.*,
282 F. Supp. 3d 1115 (N.D. Cal. 2017) ……………………………………………...10

*Singer v. Reali*,
883 F.3d 425 (4th Cir. 2018) …………………………………………………… 3

*Sneed v. AcelRx Pharms., Inc.*,
2022 U.S. Dist. LEXIS 176319 (N.D. Cal. Sept. 28, 2022) ………………………… 4

*In re Sotheby's Holdings, Inc. Securities Litig.*,
2000 U.S. Dist. LEXIS 12504 (S.D.N.Y. Aug. 30, 2000) ……………………………… 5

*In re Splash Tech. Holdings Sec. Litig.*,
2001 U.S. Dist. LEXIS 16252 (N.D. Cal. Aug. 27, 2001) ………………………..………11

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) …………………………………………… 8

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.      -iv-

CASE NO. 3:23-CV-01186-RS

**Page**

*United States v. Microsoft Corp.,*
    253 F.3d 34 (2001) ……………………………………………………………… 3

*In re Van Wagoner Funds, Inc. Sec. Litig.,*
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ……………………………………… 10

*Veal v. LendingClub Corp.,*
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ……………………………………… 3

*In re VeriFone Holdings, Inc. Sec. Litig.,*
    704 F.3d 694 (9th Cir. 2012) …………………………...………………….…... 2

*Washtenaw County Employees Retirement System v. Avid Technologies, Inc.,*
    28 F. Supp. 3d 93 (D. Mass. 2014) ………………………………………… 8

*Wochos v. Tesla, Inc.,*
    985 F.3d 1180 (9th Cir. 2021) ……………………………...………………… 15

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) …………………………………………….…... 12

**Statutes**

15 U.S.C. § 78j(b) …………………………………………………………………… 6

**Other Authorities**

H.R. Rep. No. 104-369 (1995) (Conf. Rep.) ………………………………………… 1

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| Amended Complaint or ¶ | Plaintiffs' Amended Complaint for Violations of the Federal Securities Laws, filed August 7, 2023 (ECF No. 46) |
| Defendants | Alphabet Inc., Google LLC, Sundar Pichai, Ruth M. Porat, Philipp Schindler, and Kent Walker |
| Motion or MTD | Defendants' Motion to Dismiss Amended Complaint filed September 21, 2023 (ECF No. 58) |
| Opposition or Opp. | Plaintiffs' Opposition to Defendants' Motion to Dismiss Amended Complaint filed November 6, 2023 (ECF No. 60) |
| Plaintiffs | Menora Mivtachim Insurance Ltd., Menora Mivtachim Pensions and Gemel Ltd., AMI - Government Employees Provident Fund Management Company Ltd., City of Fort Lauderdale Police & Fire Retirement System, and More Mutual Funds Management (2013) Ltd. |
| State AGs | The attorneys general representing states and Puerto Rico on a joint complaint in *In re: Google Digital Adv. Antitrust Litig.*, No. 21-md-03010 (S.D.N.Y.), ten of whom brought the initial version of the complaint in *Texas v. Google LLC*, No. 20-cv-00957 (E.D. Tex.) |

**INTRODUCTION**

What is this case about?  Plaintiffs are testing a novel claim: take an unproven antitrust allegation in a separate ongoing lawsuit, argue that Alphabet should have disclosed that allegation in advance as actual fact, and then fault Alphabet and its executives for securities fraud.

No court has ever sustained such a misuse of the federal securities laws.  Companies are not required to self-flagellate in anticipation of future litigation positions that the government might aggressively take in cases of first impression.  MTD at 1, 6.

This lawsuit should have never been brought.  The Motion enumerates the many deficiencies in Plaintiffs' theory.  Sidestepping Defendants' authorities altogether, Plaintiffs' Opposition asks the Court to blind itself to precedent, and inaugurate a new era in which U.S. public companies are required to self-report for speculative violations under unproven legal theories.  This approach would turn the federal securities regime upside down: instead of following the outcomes of regulatory and enforcement actions, securities disclosures would have to precede them, lest companies be threatened with securities lawsuits claiming hefty damages.  That is not what the Private Securities Litigation Reform Act was meant to achieve.  H.R. Rep. No. 104-369 at 31–32 (enacted to "promote public and global confidence in our capital markets" by "protect[ing] investors, issuers, and all who are associated with our capital markets from abusive securities litigation").

As discussed below, the Opposition largely reiterates the allegations of the Amended Complaint, with a heavy reliance on inapposite authorities.  Those authorities involved companies making statements that contradicted already-adjudicated criminal verdicts entered against them or conduct that was plainly illegal under positive statutory law—not so here.

Where the Opposition differs from the Amended Complaint, however, is in its concession that Plaintiffs are unable to plead a scheme claim.  Since that is, quite literally, the crux of the antitrust violation they claim occurred, their entire case collapses as well.  Deprived of the support of scheme allegations, the Opposition makes only a feeble attempt at asserting scienter.  Plaintiffs are not able to plead any facts specific to any individual, as they must, so they simply assert that Defendants "must have known" about this not-quite-pleaded scheme.  Finally, Plaintiffs' claim also fails to allege loss causation: on the days they allege the purported "fraud" was revealed, only speculative or stale

information entered the market.  Unsurprisingly, Plaintiffs fail to plead which, if any, of the stock drops they identify was statistically significant.  The Motion should be granted.

## ARGUMENT

### I.   THE OPPOSITION FAILS TO CORRECT FATAL FLAWS IN FALSITY THEORY

The Opposition simply re-asserted Plaintiffs' falsity allegations about Google's ad tech and privacy statements, without attempting to distinguish *a single one* of Defendants' many authorities. In fact, Plaintiffs abandon one of their claims, after the Motion exposed their complete distortion of the statement.  Opp. at 12 n.11.  And Plaintiffs' remaining falsity allegations should be dismissed.

#### A.  Plaintiffs Are Unable to Defend Their Ad Tech Falsity Allegations

##### 1.   Pending lawsuits are insufficient to allege falsity

Whether Google's ad tech business practices violate antitrust laws is an open question currently in litigation.[1]  MTD at 5-6.  Unable to distinguish Defendants' authorities that *later* lawsuits do not support falsity of *past* statements (*id.*), Plaintiffs invoke inapposite cases where the business practices, by admission or final legal process, *were determined to violate the law*.  Opp. at 9-10.[2]

Plaintiffs also fail to address that *regardless* of the outcome of the pending lawsuits, Google was under no duty to attempt to predict which business practices might face regulatory scrutiny, much less how those business practices would ultimately be adjudicated in a case of first impression.  MTD at 6.  Plaintiffs respond that "Defendants' disclosure obligations are not inextricably tied to an express finding of unlawful conduct" and instead arise out an alleged "'cho[ice] to tout positive information to the market[.]'"  Opp at 10.

---

[1] Google disputes, and is vigorously defending against, the claims in the lawsuits Plaintiffs cite.

[2] *See Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 590 (N.D. Cal. 2019) (plaintiffs could rely on AG complaint to plead the falsity of statements that defendant generic drug manufacturer operated in a competitive environment where there had been "*multiple guilty pleas* [by other companies in the market] and a complaint alleging a *wide-ranging price-fixing conspiracy*" in the generic drug manufacturing market); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) (in financial restatement suit, allowing incorporation of the SEC's complaint concerning related violations to show scienter where "*[t]he falsity of VeriFone's financial reports [wa]s [already] undisputed*"); *In re Musical Instruments and Equip. Antitrust Litig.*, 798 F.3d 1186, 1199 (9th Cir. 2015) (quoting from the *dissent* in an opinion that *affirmed dismissal of an antitrust lawsuit*); *McPhail v. First Command Fin. Planning, Inc.*, 2006 U.S. Dist. LEXIS 104496, at *7-8 (S.D. Cal. July 26, 2006) (permitting reliance on NASD order containing *findings*, not allegations, of wrongdoing, and where defendant company had "[i]n connection with the [NASD and SEC] settlements . . . *consented to the entry of a Cease-and Desist Order by the [SEC]*").

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.            2
CASE NO. 3:23-CV-01186-RS

Plaintiffs' argument fails for two reasons.  First, they do not identify any of the purportedly positive information "touted" in a misleading way.  What Alphabet should have disclosed is never explicitly pleaded.  Second, the authorities Plaintiffs invoke as examples of such misleading statements illustrate the weakness of Plaintiffs' arguments.  Those cases involved business practices known to be illegal at the time that defendants chose to speak.  In *Singer v. Reali*, the company was involved in an unquestionably illegal scheme to secure fraudulent reimbursements from various health insurers and government-funded healthcare programs.  883 F.3d 425, 441-42 (4th Cir. 2018).  In speaking *voluntarily* about its reimbursement practices the company called them "appropriate," triggering a duty to disclose the details of its business practices.  *Id.*  In *Halford v. AtriCure, Inc.*, the court held defendants had a duty to disclose that its drug marketing practices contravened the FDA's prohibition of off-label marketing.  2010 U.S. Dist. LEXIS 144377, at *3 (S.D. Ohio Mar. 29, 2010).  By contrast, "defendant had no duty to disclose" a business practice where, as the *Halford* court held, "the legality of that [challenged] program was a matter of opinion[.]"  *Id.* at *31-32; *see also United States v. Microsoft Corp.*, 253 F.3d 34, 58 (2001) ("Whether any particular act . . . is exclusionary, rather than merely a form of vigorous competition, can be difficult to discern[.]").

Finally, Plaintiffs fail to support their assertion that "independent corroboration [of anonymous and uncontextualized sources from government complaints] is not required."  Opp. at 10 n.7.  They ignore Defendants' ample authorities to the contrary.  MTD at 7.  Further, Plaintiffs' two confidential witnesses do not corroborate Plaintiffs' assertions because they "lack[ed] 'contact with any of the Individual Defendants'" (*id.* at 16-17 (quoting *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal. 2019))), and did not even attend meetings addressing antitrust issues.  *Id.* at 17.

### 2. Lack of prefatory words does not convert opinions into fact

Plaintiffs make a semantic argument, without support, that Defendants' subjective assessments of competition in ad tech are not opinions because they "[were] not preface[d] . . . with words like 'believe' or 'think.'"  Opp. at 8.[3]  That is wrong.  Federal courts have been clear that

[3] Plaintiffs cite *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, but the Supreme Court case nowhere says that prefatory language is necessary to distinguish an opinion from a fact.  Instead, the Court explained that a "fact is 'a thing done or existing' or '[a]n actual happening'" while "[a]n opinion is 'a belief, a view,' or a 'sentiment which the mind forms of persons or things.'"  575 U.S. 175, 183 (2015).

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.        3
CASE NO. 3:23-CV-01186-RS

"[c]ertain statements address issues so plainly subjective . . . that the statement is one of opinion not just by virtue of the words used but also because of the nature of the information conveyed." *New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 170 (2d Cir. 2023) (noting that "not all statements of opinion include . . . qualifying language"); *see also Fait v. Regions Fin. Corp.*, 655 F.3d 105, 111 (2d Cir. 2011) (deeming assessments of goodwill opinions because "the statements . . . are subjective ones rather than' 'objective factual matters.'"); *In re Credit Suisse First Bos. Corp. Analyst Reports Sec. Litig.*, 431 F.3d 36, 47 (1st Cir. 2005) ("Although [stock] ratings are based to some degree on objective facts, they ultimately convey an opinion").

"[T]he inquiry" of whether a statement expresses fact or opinion "turn[s] on whether the relevant statement reflects the speaker's determination of 'a matter of objective fact' or instead expresses the speaker's judgment about a matter that lacks 'any objective standard[;] [t]he latter statement . . . is 'inherently subjective.'" *DeCarlo*, 80 F.4th at 170. Defendants' statements are inherently subjective assessments that Google operated in a competitive ad tech market and did not run afoul of antitrust law. *See* MTD at 4-5, 5 n.12. All but one of the challenged statements were responses to a congressional inquiry specifically soliciting Google's *opinion* of whether its business practices were anticompetitive. *Id.* The other was excerpted from a position paper by an antitrust attorney who represents Google. *Id.* at 5 n.12.

Plaintiffs' argument that even if they are opinion statements, they are "actionably misleading" by "omi[ssion of] material facts" that "Defendants were coercing publishers and advertisers to transact in Google's AdX" is nonsensical. Opp. at 8-9. First, it assumes that the answer to that very question still unanswered by the courts is "yes," and it requires Defendants to be clairvoyant as to that answer. *See supra* 2.[4] Second, the challenged opinion statements addressed competition in the ad tech market generally, not specific business practices. As a result, Alphabet had no duty to disclose the allegedly omitted information. *See Sneed v. AcelRx Pharms., Inc.*, 2022 U.S. Dist. LEXIS 176319, at *13 (N.D. Cal. Sept. 28, 2022) ("the [complaint] does not allege a sufficient nexus

---

[4] Plaintiffs misconstrue Alphabet's disclosure that it was subject to regulatory scrutiny, "including [by] competition . . . and privacy authorities," (MTD at 7-8) as a Safe Harbor argument. *See* Opp. at 11-12. Defendants were actually responding to Plaintiffs' repeated refrain that Google's business practices "created a heightened risk" of regulatory scrutiny undisclosed to investors (MTD at 7) by showing that Google did in fact disclose exactly that risk.

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.    4
CASE NO. 3:23-CV-01186-RS

between the [alleged violations] and the identified statements to investors.").[5]

Unable to plead with particularity how the challenged statements were false, Plaintiffs argue that "a company makes a false statement where . . . it asserts that it operates in a competitive industry while it engages in practices that stymie competition." Opp. at 8.  But almost all of Plaintiffs' authorities involved admissions of guilt for definitively illegal conduct.  In *Menkes v. Stolt-Nielsen S.A.*, the court actually dismissed the entire case with prejudice for failure to plead scienter and held that the majority of the challenged statements were not materially misleading.  2005 U.S. Dist. LEXIS 28208, at *36-37 (D. Conn. Nov. 10, 2005).  The few actionable statements touted renewing a specific contract alleged to be "the direct result of a conspiracy."  *Id.* at *24.  By contrast, "[n]ot one of [the inactionable] statements ha[d] any direct connection to [the conspiracy]; instead, *each statement [wa]s a generic description of the state of the market as a whole*[;] too remote from Stolt's alleged illegal conduct to compel disclosure of this conduct."  *Id.* at *26-27.  So too here.[6]

### 3.  Plaintiffs retreat from challenge to statements about helping customers

With respect to the challenged statements concerning helping ad tech customers (MTD at 8), half of which are excised from earnings calls without context (*id*. at 9-10), Plaintiffs *abandon one* (Opp. at 12 n.11) and barely defend the rest.  They should be dismissed.

**Excised earnings call statements.** Plaintiffs abandon their challenge of the October 26, 2021 earnings call statement after the Motion exposed Plaintiffs' complete distortion of it.  Opp. at 12 n.11. (referencing MTD at 9-10).  As to the rest of the earnings call statements, Plaintiffs make no effort to distinguish Defendants' legal authority *and* offer none of their own.  Instead, they make the conclusory assertion that "the remaining statements are at the very least ambiguous when viewed in

[5] Even if the allegedly omitted information *was* related to the challenged statements, "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts[.]" *Omnicare*, 575 U.S. at 189-90.  "A reasonable investor does not expect that *every* fact known to an issuer supports its opinion statement." *Id.* at 190.

[6] Plaintiffs' other authorities are no better.  In *In re Infineon Technologies Ag Securities Litigation*, prospectus statements regarding competition were allegedly false in light of the guilty plea and sentencing of the company and multiple executives for criminal price-fixing during the class period. 2006 U.S. Dist. LEXIS 32892, at *6-7 (N.D. Cal. May 22, 2006).  In *In re Sotheby's Holdings, Inc. Securities Litigation*, the company's statements about competition in the international art market were contradicted by receiving "conditional amnesty" after "report[ing] 'illegal activity'" in the DoJ's investigation of an "illegal antitrust conspiracy."  2000 U.S. Dist. LEXIS 12504, at *2, 7 (S.D.N.Y. Aug. 30, 2000).

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.     5
CASE NO. 3:23-CV-01186-RS

context." Opp. at 12 n.11. But that does not satisfy the requirement that falsity be pleaded *with particularity*. *See* MTD at 3-4.

**Remaining opinion statements:** As to the remaining challenged statements attesting that Google helps its ad tech customers (MTD at 8-9), Plaintiffs make the same losing semantic argument addressed above (*see supra* 3-4) that they are not "accompanied by qualifying language." Opp. at 12. Plaintiffs also fail to cite a single case in support of their conclusion *or* address any of Defendants' legal support explaining why these statements are inactionable. *Id.*

### 4.  Technical explanations did not "tout" details of proprietary ad software

The Opposition clarifies that Plaintiffs do not directly challenge the veracity of Defendants' explanations of ad auction operation and how Google's ad tech products work but instead argue they were misleading because "Defendants failed to disclose" further alleged details of their business practices. Opp. at 12-13. But they do not address Defendants' point (or *any* of the legal support analyzed in the Motion) that Defendants had no such disclosure duty, and that even if they did, their statements were not misleading by omission. *See* MTD at 10-12.

Plaintiffs also stretch beyond its breaking point the requirement that challenged statements be made "in connection with the purchase or sale of a[] security" (15 U.S.C. § 78j(b)) by asserting that "[D]efendants cho[]se to tout positive information to the market." Opp. at 13 (referring to ¶¶ 138 and 144). Those statements were ***compelled testimony to the House Judiciary Committee***; not voluntarily "tout[ed] positive information" to investors. *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 682-83 (6th Cir. 2003) (omission argument failed where "topics discussed during the conference call were not things that *defendants* chose to discuss[; t]hey were asked questions . . . which it appears they endeavored to answer truthfully");[7] *see also In re Intel Corp. Sec. Litig.*, 2019 U.S. Dist. LEXIS 54615, at *31 n.14 (N.D. Cal. Mar. 29, 2019) (statements inactionable where "the [complaint] does not allege that [they] were directly targeted to investors or the investment community"); *Bien v. LifeLock Inc.*, 2015 U.S. Dist. LEXIS 196120, at *32-34 (D. Ariz. July 21, 2015) (same).[8]

---

[7] By contrast, defendants in *Schueneman v. Arena Pharms., Inc.*, made *voluntary* statements to investors (in SEC filings and earnings calls) that their drug was not carcinogenic despite knowing for years that rats receiving the drug were getting cancer. 840 F.3d 698, 702 (9th Cir. 2016).

[8] This same point applies to Google's other statement to Congress. ¶ 134.

**B.  The Opposition Illuminates the Deficiencies in Plaintiffs' Privacy Allegations**

**WhatsApp statements were not Google's.**  Plaintiffs' allegation that "Google was violating the privacy of over 750 million Android users" (Opp. at 14) boils down to their unsupported assertion that the word "private" is synonymous with "end-to-end encryption."  That is incorrect: a document can still be private, without being encrypted via a specific method.  Plaintiffs double down on this fallacy when they argue that it was incumbent on Google to explain that WhatsApp's own end-to-end encryption was lost when users backup data to any third party apps (including, among many others, Google Drive), even though it was *WhatsApp's own messaging* that omitted that information.[9]  Opp. at 14.  Once again, Plaintiffs completely ignore Defendants' authorities.  MTD at 12 n.14.  They ask the Court to attribute *another company's* allegedly incomplete statements to Google.  It is well settled that companies are not responsible for statements of third parties.  *Kane v. Madge Networks N.V.*, 2000 U.S. Dist. LEXIS 19984, at *12 n.4 (N.D. Cal. May 25, 2000), *aff'd sub nom. Kane v. Zisapel*, 32 F. App'x 905 (9th Cir. 2002); *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011) ("For purposes of [liability under § 10(b) and] Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement").

**Plaintiffs also fail to challenge expressions of support for online privacy.**  Plaintiffs again claim that the challenged statements were not opinions because they were not prefaced by "we believe."  Opp. at 16.  That argument fails.  *Supra* 3-4; MTD at 12-13.  Nor do they confront Defendants' authorities that a company's position towards *specific* privacy legislation does not negate its broader expressions of support for online privacy.  *See* MTD at 12.[10]

[9] Plaintiffs ignore that the loss of encryption was true of *any* third-party backup app and was not specific to GDrive.  MTD at 13.  The cases they cite are distinguishable: both involved alleged third-party access to user data.  *See Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*, 1 F.4th 687, 695 (9th Cir. 2021) ("a bug in an application programming interface for Google+" allegedly made "private profile data" accessible to "third-party developers"); *In re Facebook, Inc. Sec. Litig.*, 84 F.4th 844, 850-51 (9th Cir. 2023) (Cambridge Analytica "improperly harvested personal data from millions of unwitting Facebook users" and "Facebook surreptitiously allowed certain whitelisted third-party apps to access users' Facebook friend data without the users' friends' consent.").  By contrast, Plaintiffs do not allege that the WhatsApp data Android users chose to back up to Google Drive was accessible to third parties, and Plaintiffs do not plead that Google used the data for advertising or other purposes.

[10] *In re FirstEnergy Corp. Securities Litigation*, is inapposite: defendants disclosed that they were "pursui[ng] . . . '[l]egislative or regulatory solutions'" but failed to disclose that that included bribery of public officials.  2022 U.S. Dist. LEXIS 39308, at *4-8 (S.D. Ohio Mar. 7, 2022).  Google has engaged in no illegal activity; it is well within its right to support or oppose legislation.  MTD at 25.

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.    7
CASE NO. 3:23-CV-01186-RS

## II.    PLAINTIFFS DO NOT CURE THEIR FAILURE TO PLEAD SCIENTER

### A.  The Opposition Fails to Defend Scienter as to Defendants' Ad Tech Statements

Plaintiffs abandon their scheme liability claim, which directly overlaps with scienter.  *See* Opp. at 25 n.29.  Their remaining allegations collapse as well.

### 1.  Government investigations are insufficient to infer scienter

The Opposition seeks to infer scienter from the mere existence of government investigations. Opp. at 19.  But antitrust investigations are not evidence of securities fraud.  MTD at 14-15.  Unable to refute Defendants' authorities, the Opposition argues that such investigations—insufficient on their own—can serve as "one more piece of the scienter puzzle."  Opp. at 19.  Here, these investigations are the ***only*** piece of the puzzle.  By contrast, Plaintiffs' authority *Thomas v. Magnachip Semiconductor Corp.* involved not just an SEC *securities* investigation, but also a restatement that "dramatically affected" financial results, the firing of the principal accounting officer, and "sham" roundtrip transactions.  167 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016).  Similarly, *Washtenaw County Employees Retirement System v. Avid Technologies, Inc.* involved massive financial restatements covering "a large number of transactions over . . . five years" due to disregard of "fundamental accounting rules applicable to . . . Avid's core business."  28 F. Supp. 3d 93, 113 (D. Mass. 2014).

The Opposition fails to identify a single instance in which Defendants knew of an undisclosed investigation that ***rendered any challenged statement false or misleading***.  MTD at 15 (*citing Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008)).  This dooms any inference of scienter.  Plaintiffs try to distinguish *Metzler*, arguing the allegations there amounted to "mere disagreement with a technical GAAP violation and involved a statement [] subject to multiple interpretations."  Opp. at 18 n.17.  But just as Plaintiffs claim that Defendants schemed to destroy header bidding, *Metzler* plaintiffs alleged defendants "deceptive[ly] scheme[d]" to obtain federal funding.  540 F.3d at 1055.  Plaintiffs' allegations, however, are weaker than those in *Metzler* that at least identified an incontestable accounting violation.  Here, Plaintiffs cannot point to any concrete violation or "aware[ness] of wrongdoing" implicating any Individual Defendant.  *Cf. id.* at 1058.

### 2.  Unadjudicated claims are insufficient to plead scienter

The Opposition reiterates that government antitrust allegations can be used to infer

wrongdoing.  Opp. at 19.  It tries to distinguish Defendants' authorities (MTD at 5-7) by arguing that, while plaintiffs in those cases also referred to allegations from pending suits, their scienter allegations only amounted to "general assertions" of defendants' "hands-on management" and "roles and responsibilities" that "merely speculated" about defendants' knowledge.  Opp. at 19 n.19.

But this is precisely all that Plaintiffs did here as well.  Plaintiffs seek to infer scienter from one CW's banal assertion that Mr. Schindler "led Ad Council meetings, where Google planned its response to antitrust charges," which took "'weeks or months' of preparation."  *Id.* at 19.  That is exactly what one would expect from a company responding to regulatory investigations.  *Melbourne Mun. Firefighters' Pension Trust Fund v. Jacobs*, 2016 Del. Ch. LEXIS 114, at *35 (Aug. 1, 2016) (refusing to infer scienter from board's review of, and decision to contest, regulator's determinations).  If Google had *not* prepared, Plaintiffs would likely claim Defendants were reckless.

### 3.  The Opposition ignores that management is not obligated to be prescient

The Opposition continues to rely on fraud-by-hindsight.  That theory *presupposes* that executives knew that Google's business practices were unlawful despite a lack of well-pleaded allegations supporting that conclusion.  Opp. at 18 n.17.  It is also inconsistent with the Opposition's ***concession that Plaintiffs do not plead a scheme***.  *Id.* at 25 n.29.  The Opposition also misconstrues *In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046, 1051 (9th Cir. 2014).  MTD at 15. Plaintiffs argue that *NVIDIA* is inapposite because Nvidia "properly" investigated and ultimately disclosed product defects after determining that its liability would exceed normal reserves, whereas Google failed to disclose the purported heightened regulatory risk associated with the not-quite-alleged scheme to destroy header bidding.  Opp. at 18 n.17.  But Nvidia disclosed a liability risk *that had already materialized*, whereas Plaintiffs expect Defendants to have predicted the future by anticipating *unmaterialized* liability risks based on conduct that no court has deemed unlawful.

### 4.  The Opposition continues to rely on unparticularized theories of scienter

**Group pleading.**  The Opposition routinely ignores the PSLRA's mandate that scienter be pleaded individually, and with particularity, as to *each* Defendant.  MTD at 24.  It makes generalized assertions that (unidentified) "top executives" and "senior employees" knew of a "plan" to destroy header bidding (Opp. at 17), yet fails to explain what each Individual Defendant knew, how they

knew it, and how such knowledge contradicted any of the challenged statements at the time they were made. Similarly, it seeks to infer scienter by asserting that an employee—who *is not even a defendant*—once said that header bidding was a threat, yet fails to explain how the employee's statement (and further, his state of mind) can be attributed to any of the Defendants. Such tactics are in clear contravention of the PSLRA and the Ninth Circuit's rejection of group pleading. *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) (affirming dismissal where plaintiffs failed to "allege scienter with respect to each of the individual defendants").

**Defendants' roles.** The Opposition fails to respond to Defendants' argument that scienter cannot be inferred from Defendants' mere involvement in operations and executive roles. *In re Invision Techs., Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 12166, at *21 (N.D. Cal. Jan. 21, 2006) (declining to infer that CEO and CFO "had knowledge of certain information merely by virtue of their position within the company"); *see also* MTD at 19-20.

**Familiarity with general topics.** "[F]amiliarity with the company's business" does not equate to knowledge of "specific facts that made certain []actions suspicious." *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1185-86 (N.D. Cal. 2004). In both *Roberti v. OSI Sys. Inc.*, 2015 U.S. Dist. LEXIS 24761, at *12 (C.D. Cal. Feb. 27, 2015) and *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1147 (N.D. Cal. 2017) the challenged statements reflected knowledge of discrete issues and were directly contradicted by contemporaneous facts. *See* Opp. at 19-20. *OSI* defendants emphasized product testing success and commercial readiness despite having detected material product issues, "cherry-picked" functioning machines to conceal such issues, and sought an extension to complete their contract. 2015 U.S. Dist. LEXIS 24761, at *30. In *Twitter*, defendants "emphasized the importance" of a certain user engagement metric that was trending up, while omitting that the engagement metric the company used internally was trending down. 282 F. Supp. 3d at 1145. By contrast, Plaintiffs broadly allege that because Defendants spoke about ad tech, they must have known their ad tech practices were anti-competitive. These do not constitute "detailed factual statement[s] contradicting important data to which [defendants] had access." *Id*. at 1147.

**Alleged motive.** As a last resort, the Opposition raises a new (two-sentence) argument that scienter can be inferred by Defendants' purported motive to avoid regulatory scrutiny. Opp. at 20.

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.        10
CASE NO. 3:23-CV-01186-RS

But "Ninth Circuit case law makes clear that [] 'motive and opportunity' evidence alone is insufficient to establish scienter," *City of Royal Oak Retirement System v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012), and Plaintiffs' other scienter allegations fail. *Supra* 8-10.

**Uncorroborated and de-contextualized sources cannot support scienter.** The Opposition reiterates that Mr. Pichai was "personally briefed" on a plan against header bidding and that "knowledge of this plan was widespread among the top executives and senior employees." Opp. at 17. Plaintiffs rely on an ***unnamed*** "planning document" (with no details as to content) from 2019 concerning predictive bidding, as well as "emails from November 2017" from ***unidentified Google employees*** discussing an anticipated decrease in exchange margins. *Id.* Setting aside the fact that none of the alleged content (even taken at face value) indicates misconduct, the Opposition's failure to identify its sources limits their corroborative value. *In re Splash Tech. Holdings Sec. Litig.*, 2001 U.S. Dist. LEXIS 16252, at *36 (N.D. Cal. Aug. 27, 2001) (no scienter where complaint "d[id] not identify . . . internal corporate documents['] . . . 'contents, who prepared them, [who] … reviewed them and from whom [plaintiffs] obtained the information"); MTD at 7, 14.

The Opposition also argues that scienter can be inferred because Google's supposed statement "we don't see header bidding as a threat to our business" contradicted "Google executives[']" alleged view that header bidding posed an "existential threat." Opp. at 16. (citing ¶ 58).[11] Tellingly, the Amended Complaint provides ***no source for the alleged quote***: it is unclear when it was made, by whom, and in what context. An internet search reveals that Plaintiffs copied and pasted that allegation from a lawsuit by Texas Attorney General Ken Paxton, where it was also unsourced and unattributed. The quote is *not* among the statements Plaintiffs challenge as false. ¶¶ 127-168. Because Plaintiffs must connect their scienter allegations to actual public disclosures in order to allege fraud, these allegations fail. *Metzler*, 540 F.3d 1049 at 1071.

---

[11] Plaintiffs also allege the Header Bidding Observatory evinced a scheme (Opp. at 17), but concede that it preceded the Class Period (*id.* at 17 n.14), and should not even be considered. *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 2018 U.S. Dist. LEXIS 149393, at *10 (N.D. Cal. Aug. 31, 2018) (refusing to consider pre-class period statements). *In re Merck & Co., Inc. Securities Litigation*, 432 F.3d 261 (3d Cir. 2005) and *In re Scholastic Corp. Securities Litigation*, 252 F.3d 63 (2d Cir. 2001) are inapposite. *Merck* affirmed a full dismissal. Both cases held that pre-class period allegations are relevant only if they show that the challenged statements were misleading. But the Opposition does not tie scienter allegations to a challenged statement.

The Opposition's citations to Plaintiffs' two CWs are equally unavailing. Unable to rebut the Motion's point that the CWs fail to meet the credibility standards set forth by controlling authority *Zucco Partners, LLC v. Digimarc Corp.*, the Opposition simply ignores *Zucco* altogether. *See* MTD at 16-17 (*citing* 552 F.3d 981 (9th Cir. 2009)). The Opposition's claim that it need not cite CWs that directly report to Defendants when "Google's own documents demonstrate [Defendants'] knowledge" (Opp. at 17 n.15) is a circular argument. As explained, the "documents" that Plaintiffs cite are inadequately identified and/or simply lack content to support an inference of knowledge.

### B. The Opposition Fails to Show Scienter as to Defendants' Privacy Statements

The Opposition argues that scienter may be inferred because Mr. Walker "gave the marching orders to defeat privacy protection regulations." Opp. at 20. As with its previous scienter arguments, it fails to make individualized allegations, instead conflating Walker with all other Defendants through impermissible group pleading. *See Apollo*, 774 F.3d at 607. The Opposition does not name Ms. Porat even once in the entire brief, nor does it name Mr. Schindler in any of its privacy-related scienter arguments. Its sole reference to Mr. Pichai is to assert that because Walker reported to him, he must have known about the supposed plan to undermine privacy. Opp. at 20. But executives' roles alone are not enough to plead scienter. *Supra* 10.

Even assuming that any Defendants sought to prevent certain privacy regulations, this in no way contradicts any statements concerning the importance of customer privacy and the enactment of federal privacy regulations. *Supra* 7. Finally, the Opposition is silent as to the Motion's observation that *all* corporate meetings are "closed door," and that the desire to coordinate with peer companies or donate to lobbying groups are well within Google's First Amendment Rights. MTD at 25.

### III.  PLAINTIFFS DO NOT CURE THEIR FAILURE TO PLEAD LOSS CAUSATION

Rather than supply the building blocks of loss causation missing from their Amended Complaint, the Opposition disavows any obligation to plead loss causation at all. Opp. at 21-22 ("[I]t is generally inappropriate to dismiss for failure to establish loss causation").[12] Though Plaintiffs may

---

[12] *Facebook*, 84 F.4th 844, from which Plaintiffs draw this concept, oddly reflects on Rule 8 pleading requirements, although it is settled law in the Ninth Circuit that "Rule 9(b) applies to . . . loss causation." *Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, 998 F.3d 397, 404 (9th Cir. 2021). In any case, Plaintiffs concede that Rule 9(b) applies to their claims. Opp. at 21.

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.        12
CASE NO. 3:23-CV-01186-RS

wish otherwise, loss causation is a required element of securities fraud.  *See* MTD at 3.[13]

### A. The Opposition Does Not Supply the Missing Causal Link

Though Plaintiffs concede that they are required to provide "some indication of the . . . causal connection," between the alleged fraud and their alleged loss (Opp. at 21 (*citing Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 405 (2005))), they decline to supply any.  MTD at 20-21.  Instead they attempt to distinguish their argument from that in *Uber*, in which "plaintiff attempted to prove loss causation by . . . arguing that 'mere [stock price] inflation is enough to show loss causation.'"  Opp. at 23 n.25.  But Plaintiffs' theory is *exactly that*: they allege they "purchased or otherwise acquired Alphabet securities . . . at prices that were inflated by the fraud described herein."  *See* ¶ 204.

### B. Allegations Do Not Show New Information Entered the Market or Loss Occurred

Plaintiffs were required to allege (1) "new information" entered "the market" and (2) "caused an economic loss."  *Lopes v. Fitbit, Inc.*, 2020 U.S. Dist. LEXIS 52187, at *36 (N.D. Cal. Mar. 23, 2020), *aff'd,* 848 Fed. App'x 278 (9th Cir. 2021); *Dura*, 544 U.S. at 338.  They did neither.

#### 1. Repeated antitrust allegations are not new information

Plaintiffs concede they cannot rely on unadjudicated claims from other proceedings if they do not plead that "anything new [was disclosed] to the market."  Opp. at 22 nn.23-24.  Plaintiffs also admit that particularized *facts* make the difference between adequately-pleaded corrective disclosures and "the mere announcement of an SEC investigation" or complaints of "outsiders who lacked any firsthand knowledge of the company's practices."  Opp. at 22 n.23.  But the Opposition still does not "make clear what Plaintiffs directly allege as fact, and what [they] merely are asserting that someone else has alleged[,]" a "pervasive defect in [their pleadings]."  *Geinko v. Padda*, 2002 U.S. Dist.

---

[13] Plaintiffs regale the Court with recitations of the legal standard that they do not meet.  Both *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 752 (9th Cir. 2018) and *In re BofI Holding, Inc. Sec. Litig.*, only confirm "the rule that 'drawing a causal connection between the facts misrepresented and the plaintiff's loss'" is required.  977 F.3d 781, 794 (9th Cir. 2020) (loss causation pleaded where, unlike here, distinct sources corroborated falsity and loss causation allegations).  *Lloyd v. CVB Financial Corp.* also does not help Plaintiffs.  811 F.3d 1200 (9th Cir. 2016).  Central to the *Lloyd* court's holding was the fact that plaintiffs "allege[d] a subsequent corrective disclosure *by the defendant*."  *Id.* at 1210.  Defendants have made no such disclosure.

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.        13
CASE NO. 3:23-CV-01186-RS

LEXIS 3316, at *20-21 (N.D. Ill. Feb. 26, 2002).  Each of their corrective disclosures fails.[14]

**State AGs and European Publishers Council complaints.** Plaintiffs already conceded that these alleged corrective disclosures consist of third parties "target[ing] Google" and "accus[ing] Google" of misconduct.  ¶¶ 205, 214.  But as the Motion made clear, and Plaintiffs fail to contest, untested allegations and accusations do not corrective disclosures make.  MTD at 21-22.[15]

**News and press releases about DoJ actions.** Plaintiffs also fail to rehabilitate their argument that *news* "the [DoJ] was *readying* an antitrust lawsuit" is a corrective disclosure.  Opp. at 23.  They fail to identify *what facts* rendered *what previous statements* allegedly false or misleading.  Stock drops precipitated by risks, fears, or bad news are not actionable, and press releases about future DoJ litigation 'reveals' information only about the Department's activities.  MTD at 21-22.

**April 2023 announcement that "nine more State [AGs]" joined the DoJ lawsuit.** The addition of parties to the lawsuit did not "reveal," as a "corrective disclosure must[,] new information concerning the alleged misrepresentation." *In re Blue Earth, Inc. Sec. Class Action Litig.*, 2015 U.S. Dist. LEXIS 178032, at *6 (C.D. Cal. Nov. 3, 2015).  The DoJ's allegations remained the same.

The closest the Opposition comes to identifying any "new" "facts" "disclose[d] . . . to the market" is an oblique reference to Defendants' "documents."  Opp. at 22 & n.23.  Without explaining what "documents" they refer to, what those documents say, or how they expose *securities fraud*, Plaintiffs "fail[] to add the requisite particularity" to their claims.  *Uber*, 398 F. Supp. 3d at 560.

### 2.  Even viewed together, Plaintiffs' allegations do not show a loss

Attempting to bootstrap their deficient their loss causation argument, Plaintiffs assert that

---

[14] Plaintiffs argue that an "announcement of investigation [can be] corrective *when combined with other disclosures*" (Opp. at 22 n.24), but Plaintiffs have pleaded no corroborative disclosure supporting their "announcements."  *See also supra* 13 n.13 (*Lloyd* plaintiffs alleged "much more" "tha[n] the 'announcement of a government investigation'").  Similarly, after the plaintiffs in *Mauss v. NuVasive, Inc.* repeatedly failed to plead loss causation, the court generously permitted them to amend their complaint a *fifth* time.  2016 U.S. Dist. LEXIS 90412, at *3 (S.D. Cal. July 12, 2016).  Unlike *NuVasive*, Plaintiffs plead no corrective statements by Defendants, "analysts' remarks" demonstrating the market absorbed underlying facts, C-suite resignations, or subsequent government proceedings that allowed the *NuVasive* claims to proceed.  *Id*. at *36.

[15] The October 22, 2021 unsealing of the Attorney Generals' complaint (which consists only of unproven allegations) is the sole disclosure Plaintiffs cite that addresses, however minimally, *any* privacy-related conduct.  ¶ 211.  Google is not required to disclose its lobbying activity.  *Morse v. McWhorter*, 200 F. Supp. 2d 853, 900 (M.D. Tenn. 1998) (Defendant's lobbying activity "permissible conduct covered by the First Amendment."); *see also supra* 7 n.10.

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.        14
CASE NO. 3:23-CV-01186-RS

"announcement[s]" and "lawsuit[s]" can "qualif[y] as a corrective disclosure, *particularly when combined* with the remaining disclosures." Opp. at 23. But there are no such "remaining disclosures," and all circumstances around the relevant dates run counter to Plaintiffs' speculations.

**No statistical significance.** Plaintiffs' own case concedes that, "[t]o adequately plead loss causation[,] a plaintiff must allege that the 'share price fell significantly after the truth became known.'" *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1198 (9th Cir. 2021) (affirming dismissal with prejudice for failure to plead loss causation). Unlike every case they cite,[16] Plaintiffs still do not allege that the stock drops they reference were statistically significant relative to the Nasdaq index.[17]

**Price rebounds cut against Plaintiffs' loss causation claims.** A "'modest' drop in" stock price followed by "recover[y] very shortly after," "refutes the inference that the alleged concealment of [a] particular fact *caused* any material drop in the stock price." *Tesla*, 985 F.3d at 1198. Plaintiffs try to distract the Court from the absence of any meaningful stock drop by misrepresenting Ninth Circuit precedent, proclaiming it "requires" an "immediate" or "'sustained' price recovery" "to defeat loss causation." Opp. at 23. But neither case Plaintiffs invoke held so. *Tesla*, 985 F.3d at 1197 (quick price recovery one "example" of a fact negating loss causation); *Loandepot*, 2023 U.S. Dist. LEXIS 13086, at *30 (noting *Tesla* "found" a "sustained price recovery," not that it required one).

While there may be "an 'infinite variety' of causation theories" (Opp. at 21), Plaintiffs have failed to plead any of them for a simple reason: there was no securities fraud to reveal.

## CONCLUSION

Defendants respectfully request the Court dismiss this action with prejudice.

---

[16] *See BofI*, 977 F.3d at 792 (stock dropped over **30%** on a single day); *First Solar*, 881 F.3d at 752 (**$300 to $50** per-share drop over course of class period); *Lloyd*, 811 F.3d at 1210 ("stock dropped over **20%** [in a] day"); *Facebook*, 84 F.4th at 856 (**19%** stock drop within a single day); *Erickson v. Corinthian Colls., Inc.*, 2015 U.S. Dist. LEXIS 193978, at *47-48 (C.D. Cal. Apr. 22, 2015) (multiple "**plung[es]**" including 6%, 8%, and 12%); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244,1264 (D. Nev. 2019) (drops "ranging from 2% to 8.59%"); *NuVasive*, 2016 U.S. Dist. LEXIS 90412, at *28 (**22%** drop within a day); *Lako v. Loandepot, Inc.*, 2023 U.S. Dist. LEXIS 13086, at *11 (C.D. Cal. Jan. 24, 2023) (**47%** drop over ten days). Plaintiffs may not be required to introduce expert testimony to substantiate their allegations of loss, but surely they can allege it—assuming such allegations are consistent with the strictures of Rule 11. Plaintiffs also do not attempt to distinguish *Eng v. Edison Int'l*, 2017 U.S. Dist. LEXIS 69196 (S.D. Cal. May 5, 2017) (complaint dismissed for failure to plead statistically significant loss).

[17] While Plaintiffs, who carry the burden of pleading loss causation with particularity (MTD at 22), point out that the Nasdaq rises and falls, they fail to allege that any stock drop they reference does *not* correspond with fluctuation in the market. Opp. at 25 n.27.

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.        15
CASE NO. 3:23-CV-01186-RS

Dated: December 11, 2023                    FRESHFIELDS BRUCKHAUS DERINGER US LLP

By: _/s/ Boris Feldman_____
Boris Feldman
Doru Gavril
Elise Lopez
J. Mia Tsui
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250
boris.feldman@freshfields.com
doru.gavril@freshfields.com
elise.lopez@freshfields.com
mia.tsui@freshfields.com

Susannah Benjamin
601 Lexington Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 277-4001
susannah.benjamin@freshfields.com

*Attorneys for Defendants*

DEFENDANTS' REPLY ISO MTD AMEND. COMPL.      16
CASE NO. 3:23-CV-01186-RS