UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMI - GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALPHABET INC., et al.,<br><br>Defendants. | Case No. 23-cv-01186-RFL<br><br>**NOTICE OF QUESTIONS FOR HEARING**<br><br>Re: Dkt. No. 58 |

The Court requests that the parties be prepared to address the following questions at the hearing on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, set for hearing on April 16, 2024, at 10:00 a.m., in Courtroom 15 at the San Francisco Courthouse:

1. Plaintiffs rely on Google's written responses to questions from the House Judiciary Committee. On what basis should the Court infer that these statements were made in connection with the purchase or sale of a security? Are Plaintiffs aware of cases treating congressional testimony as statements made in connection with the purchase or sale of a security?

2. On September 14, 2020, in response to Rep. David Cicilline's question, "[W]hat percentage of bids does Google win on its own ad exchanges?" Google allegedly described Google Ad Manager's "unified auction" process as being one in which "no auction participant receives any information about any other party's bids prior

        to completion of the auction." (Am. Compl. ¶ 138.)  By that time, Google had allegedly replaced Last Look with Smart Bidding. (Am. Compl. ¶ 68.)  To predict future bids with Smart Bidding, was Google only alleged to be looking at bids from prior auctions, not bids in the uncompleted auction?

3.       In that same answer, Google allegedly said that "[t]he channel through which a bid is received does not otherwise affect the determination of the winning bidder." (Am. Compl. ¶ 138.)  However, Project Poirot allegedly reduced DV360 bids by 10% to 90% when placed on rival ad exchanges that appeared to use header bidding, while never applying such decreases to Google's own ad exchange. (*See* Am. Compl. ¶¶ 68, 74.)  Similarly, Elmo allegedly decreased DV360 bids where a bid was sent to multiple exchanges, suggesting the use of header bidding. (*See* Am. Compl. ¶¶ 68, 80.)  If those allegations are true, would that create a situation in which the channel through which the bid was received (i.e., through rival ad exchanges employing header bidding) affected the determination of the winning bid?

4.       To satisfy the requirement of scienter regarding the statement quoted in Question 3, Plaintiffs allege that some of the Defendants spoke about advertising to investors and also that Google's product leadership recommended trying to weaken header bidding.  But what allegations show that Defendants were aware that this was accomplished through Poirot and Elmo's reduction of DV360 bids to rival advertising exchanges likely to use header bidding?

    At the hearing, each side will address each question in the sequence stated above, and then at the end, the parties will have additional time to present any additional argument that they wish the Court to hear.  The parties **shall not** file written responses to this Notice of Questions.  If the parties intend to rely on legal authorities not cited in their briefs, they shall read those citations into the record at the hearing and email rflcrd@cand.uscourts.gov with a courtesy copy

of the list of those citations (**not** the actual cases, just the citations) immediately after the hearing.

**IT IS SO ORDERED.**

Dated: April 10, 2024

RITA F. LIN
United States District Judge