BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
ELISE LOPEZ, State Bar No. 324199
elise.lopez@freshfields.com
J. MIA TSUI, State Bar No. 344251
mia.tsui@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants Alphabet Inc.,*
*Google LLC, Sundar Pichai, Ruth M. Porat,*
*Philipp Schindler, and Kent Walker*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMI **-** GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALPHABET INC., GOOGLE LLC, SUNDAR PICHAI, RUTH M. PORAT, PHILIPP SCHINDLER, and KENT WALKER, <br><br> Defendants. | Case No.: 3:23-cv-01186-RFL <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> Date:  Tuesday, March 4, 2025 <br> Time:  10:00 AM <br> Location:  Courtroom 15 – 18th Floor <br> Judge:  Rita F. Lin |

DEFS' REPLY ISO MTD
CASE NO. 3:23-CV-01186-RFL

**TABLE OF CONTENTS**

**Page**

INTRODUCTION..................................................................................................................... 1

ARGUMENT.............................................................................................................................2

    I. OPPOSITION FAILS TO PATCH THE HOLES IN FALSITY THEORIES................................2

        A. Plaintiffs Misleadingly Mix What Happens Before a Bid with What Happens After.............2

        B. The Opposition Is Unable to Resuscitate the Complaint's Underlying Allegations...............3

            1. Opposition Backpedals on the 2018 Facebook Agreement Allegations............................3

            2. Poirot Allegations Do Not Show Contemporaneous Falsity................................................ 4

            3. Additional Elmo Allegations Did Not Cure FAC Deficiencies...........................................6

        C. Plaintiffs Cannot Fabricate the Materiality of the Word "Equally"........................................6

    II. OPPOSITION IS UNABLE TO DEFEND DEFICIENT SCIENTER ALLEGATIONS..............7

        A. The Opposition Tries to Water Down Scienter Requirement......................................................8

        B. Unparticularized Allegations about Facebook Negotiations Remain Inadequate....................9

        C. The Opposition Is Unable to Reconstitute Remaining Scienter Claims................................ 11

    III. PLAINTIFFS HAVE NOT CURED FAC'S FAILURE TO PLEAD LOSS CAUSATION.......12

CONCLUSION.........................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

*In re Activision Sec. Litig.*,
  621 F. Supp. 415 (N.D. Cal. 1985)....................................................................................5

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021)...........................................................................................7

*In re Ashworth, Inc. Sec. Litig.*,
  2001 U.S. Dist. LEXIS 27498 (S.D. Cal. Nov. 29, 2001)..............................................4

*AT&T Sec. Litig.*,
  480 F. Supp. 3d 507 (S.D.N.Y. 2020).............................................................................7

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).......................................................................................................7

*In re Bofl Holding, Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020).........................................................................................12

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  692 F. Supp. 2d 1181 (N.D. Cal. 2010).........................................................................11

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017).........................................................................................10

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017).......................................................................................12

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005).......................................................................................................12

*E. Öhman J v. NVIDIA Corp.*,
  81 F.4th 918 (9th Cir. 2023)..........................................................................................11

*Erickson v. Corinthian Colls., Inc.*,
  2015 U.S. Dist. LEXIS 193978 (C.D. Cal. Apr. 22, 2015)...........................................12

*In re Facebook, Inc. Sec. Litig.*,
  405 F. Supp. 3d 809 (N.D. Cal. 2019) ...........................................................................5

*Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*,
  501 F. Supp. 3d 735 (N.D. Cal. 2020)............................................................................9

*In re Google Digit. Advert. Antitrust Litig.*,
  627 F. Supp. 3d 346 (S.D.N.Y. 2022).............................................................................4

*Haw. Structural Ironworkers Pension Trust Fund v. AMC Ent. Holdings, Inc.*,
  422 F. Supp. 3d 821 (S.D.N.Y. 2019).............................................................................9

*Hewlett Packard Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017)...................................................................................................7

*In re Intel Corp. Sec. Litig.*,
    2019 U.S. Dist. LEXIS 54615 (N.D. Cal. Mar. 29, 2019)..........................................................2

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021)....................................................................................................12

*Lako v. Loandepot*,
    2023 U.S. Dist. LEXIS 13086.................................................................................................. 12

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016)................................................................................................. 12

*Lowe v. Tandem Diabetes Care Inc.*,
    2024 U.S. Dist. LEXIS 79006 (S.D. Cal. Apr. 29, 2024)..........................................................3

*In re Manulife Fin. Corp. Sec. Litig.*,
    2012 U.S. Dist. LEXIS 134172 (S.D.N.Y. Sept. 19, 2012)....................................................... 6

*Mauss v. NuVasive, Inc.*,
    2016 U.S. Dist. LEXIS 90412 (S.D. Cal. July 12, 2016)......................................................... 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008)........................................................................................8, 10, 11

*Morgan v. AXT, Inc.*,
    2005 U.S. Dist. LEXIS 42346 (N.D. Cal. Sept. 23, 2005)......................................................... 7

*In re Nektar Therapeutics Sec. Litig.*,
    34 F.4th 828 (9th Cir. 2022) ……………………………………..…………………………7

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004).................................................................................................. 11

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*,
    2024 U.S. Dist. LEXIS 177589 (N.D. Cal. Sept. 30, 2024)........................................................ 7

*Pampena v. Musk*,
    705 F. Supp. 3d 1018 (N.D. Cal. 2023)....................................................................................11

*Plumley v. Sempra Energy*,
    2018 U.S. Dist. LEXIS 49799 (S.D. Cal. Mar. 26, 2018)...........................................................8

*Prodanova v. H.C. Wainwright & Co., LLC*,
    993 F.3d 1097 (9th Cir. 2021)....................................................................................................9

*Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*,
    2021 U.S. Dist. LEXIS 68415 (M.D. Tenn. Apr. 8, 2021)......................................................... 9

*Reckstin Fam. Tr. v. C3.Ai, Inc.*,
 718 F. Supp. 3d 949 (N.D. Cal. 2024)................................................................................ 9

*Reese v. Malone*,
 747 F.3d 557 (9th Cir. 2014)..............................................................................................10

*In re Regulus Therapeutics Inc. Sec. Litig.*,
 406 F. Supp. 3d 845 (S.D. Cal. 2019)................................................................................. 6

*Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*,
 2024 U.S. Dist. LEXIS 125258 (N.D. Cal. July 16, 2024).............................................2, 3

*In re Rigel Pharms., Inc. Sec. Litig.*,
 697 F.3d 869 (9th Cir. 2012)................................................................................................2

*In re Robinhood Ord. Flow Litig.*,
 2022 U.S. Dist. LEXIS 190496 (N.D. Cal. Oct. 13, 2022)..................................................7

*Roofers Loc. No. 149 Pension Fund v. Dreamworks Animation SKG, Inc.*,
 677 F. App'x 376 (9th Cir. 2017)........................................................................................12

*Sakkal v. Anaplan Inc.*,
 557 F. Supp. 3d 988 (N.D. Cal. 2021)................................................................................. 9

*In re Silicon Graphics Sec. Litig.*,
 183 F.3d 970 (9th Cir. 1999)...............................................................................................11

*Sneed v. AcelRx Pharms., Inc.*,
 2022 U.S. Dist. LEXIS 176319 (N.D. Cal. Sept. 28, 2022)................................................ 8

*In re SolarCity Corp. Sec. Litig.*,
 274 F. Supp. 3d 972 (N.D. Cal. 2017)................................................................................. 2

*Stephens v. Big Spring Herald, Inc.*,
 2020 U.S. Dist. LEXIS 258975 (N.D. Tex. Aug. 19, 2020)............................................... 10

*In re Stratosphere Corp. Sec. Litig.*,
 66 F. Supp. 2d 1182 (D. Nev. 1999)....................................................................................6

*In re Tesla Motors, Inc. Sec. Litig.*,
 75 F. Supp. 3d 1034 (N.D. Cal. 2014)................................................................................. 6

*Thomas v. Magnachip Semiconductor Corp.*,
 167 F. Supp. 3d 1029 (N.D. Cal. 2016)...............................................................................11

*In re Toyota Motor Corp. Sec. Litig*,
 2011 U.S. Dist. LEXIS 75732 (C.D. Cal. July 7, 2011)..................................................... 11

*TSC Indus., Inc. v. Northway, Inc.*,
 426 U.S. 438 (1976)..............................................................................................................7

DEFS' REPLY ISO MTD                                    -iv-
CASE NO. 3:23-CV-01186-RFL

*In re Twitter, Inc. Sec. Litig.*,
    2020 U.S. Dist. LEXIS 252718 (N.D. Cal. Apr. 20, 2020)...........................................................8

*United States v. Smith*,
    389 F.3d 944 (9th Cir. 2004)......................................................................................................5

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
    2017 U.S. Dist. LEXIS 66037 (D.N.J. Apr. 28, 2017)................................................................9

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004).....................................................................................10

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019)..................................................................................... 3, 5

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021).................................................................................................. 12

*Wozniak v. Align Tech., Inc.*,
    850 F. Supp. 2d 1029 (N.D. Cal. 2012).................................................................................... 9

**TABLE OF ABBREVIATIONS**

| Abbreviation | Meaning |
|---|---|
| AdX | Google's ad exchange |
| Agreement or NBA | September 2018 Network Bidding Agreement |
| Class Period | February 4, 2020 through January 23, 2023 |
| CMA | The United Kingdom's Competition and Markets Authority |
| Defendants | Alphabet Inc., Google LLC, Sundar Pichai, Ruth M. Porat, Philipp Schindler, and Kent Walker |
| DoJ Complaint or DoJ ¶ | Complaint, *U.S. v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va.), filed Jan. 24, 2023 [ECF No. 1] |
| DV360 | Display & Video 360 |
| FAC | Amended Complaint for Violations of the Federal Securities Laws, *AMI - Government Employees Provident Fund Management Company Ltd. v. Alphabet Inc. et al*, No. 3:23-cv-01186-RFL (N.D. Cal), filed August 7, 2023 [ECF No. 46] |
| Individual Defendants | Defendants Sundar Pichai, Ruth M. Porat, Philipp Schindler, and Kent Walker |
| MTD or Motion | Defendants' Notice of Motion and Motion to Dismiss Second Amended Complaint, *AMI - Government Employees Provident Fund Management Company Ltd. v. Alphabet Inc. et al*, No. 3:23-cv-01186-RFL (N.D. Cal.), filed November 8, 2024 [ECF No. 93] |
| Opp. or Opposition | Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, *AMI - Government Employees Provident Fund Management Company Ltd. v. Alphabet Inc. et al*, No. 3:23-cv-01186-RFL (N.D. Cal.), filed December 23, 2024 [ECF No. 98] |
| Order | Order Granting Motion to Dismiss and Denying Requests for Judicial Notice as Moot, *AMI - Government Employees Provident Fund Management Company Ltd. v. Alphabet Inc. et al*, No. 3:23-cv-01186-RFL (N.D. Cal.), filed September 3, 2024 [ECF No. 86] |
| Plaintiffs | Menora Mivtachim Insurance Ltd., Menora Mivtachim Pensions and Gemel Ltd., AMI - Government Employees Provident Fund Management Company Ltd., City of Fort Lauderdale Police & Fire Retirement System, and More Mutual Funds Management (2013) Ltd. |
| SAC or ¶ or Complaint | Second Amended Complaint for Violations of the Federal Securities Laws, *AMI - Government Employees Provident Fund Management Company Ltd. v. Alphabet Inc. et al*, filed September 24, 2024 [ECF No. 87] |
| State AGs ¶ | Complaint, *The State Of Texas, et al v. Google, LLC*, No. 4:20-cv-00957-SDJ (E.D. Tex.), filed Dec. 16, 2020 [ECF No. 1] |

| Abbreviation | Meaning |
|---|---|
| State AGs Case | *The State Of Texas, et al v. Google, LLC*, No. 4:20-cv-00957-SDJ (E.D. Tex.), later conditionally transferred to the S.D.N.Y. via Multidistrict Litigation Panel order as *In re: Digital Advertising Antitrust Litigation*, No. 1:21-md-03010-PKC (S.D.N.Y.) on August 12, 2021, then transferred back to the E.D. Tex. on October 27, 2023 under the original case name and docket number. All of Defendants' references herein are to the E.D. Tex. docket. |

Herein, emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphases have been omitted.

**INTRODUCTION**

Plaintiffs attempt to contrive a securities fraud lawsuit out of antitrust actions. Yet the Opposition makes clear they are unable to plead one despite three opportunities to do so.

**No materially misleading statements or omissions:** When their lawsuit started, Plaintiffs challenged a litany of statements that Alphabet and its officers had made. Those have now dwindled to just two narrow technical statements. Opp. at 1. Both were truthful. One of the statements is merely a one-word variation from a statement that the Court already dismissed for lack of falsity. MTD at 6. Plaintiffs fail to plead how that word makes the statement false, much less materially so. *Id.* at 9–10.

Plaintiffs are unable to defend the key claims in their lawsuit, which range from unsupported to self-contradictory. With respect to the 2018 Facebook Network Bidding Agreement, the Opposition now speculates that some of its terms must not have been memorialized simply because they cannot be found in the Agreement itself. Next, realizing they are wrong, Plaintiffs try to dodge their earlier claim that Google gave Facebook a "guaranteed 'win rate.'" *E.g.*, ¶¶ 170, 183, 186. Plaintiffs also fail to clarify how their Project Poirot allegations show that any statements were false when made. Last, Plaintiffs fail to plead their Project Elmo allegations with particularity, or how they show falsity.

Desperate to make their securities fraud case stick, the Opposition mines the dockets of the ad tech antitrust suits for additional material. Plaintiffs still come up empty handed, citing only temporally and topically irrelevant information. *See* Opp. at 2 n.1 (citing a trial exhibit dated 2018); Opp. at 2 (dredging up an irrelevant Deceptive Trade Practices claim urged by the States). All of this serves to avoid connecting the dots and pleading their *securities* claims *with particularity*.

**No scienter:** The Opposition abandons Plaintiffs' scienter allegations for all but one Individual Defendant—Mr. Pichai. Plaintiffs' allegations as to Mr. Pichai largely echo those rejected by the Court in the FAC. Others center on an unsupported, speculative inference of his involvement in negotiations.

**No loss causation:** The Opposition tries to avoid Plaintiffs' burden to plead loss causation *and* explain how government lawsuits, without more, were corrective of any of Defendants' statements.

The purpose of a private securities fraud cause of action is to allow shareholders to recover losses incurred as the result of materially misleading disclosures, not to attempt to ride the coattails of ongoing antitrust lawsuits. This case should be dismissed with prejudice.

**ARGUMENT**

## I.     OPPOSITION FAILS TO PATCH THE HOLES IN FALSITY THEORIES

Plaintiffs challenge two statements[1] as false and misleading. They fail for three reasons.

### A.     Plaintiffs Misleadingly Mix What Happens Before a Bid with What Happens After

Plaintiffs challenge two statements, both excerpted from the same section of a webpage and both concerning Google Ad Manager's "determination of the winning bidder" *after* bids are submitted to a *single* unified auction. MTD at 6, 10. Plaintiffs cannot dispute that "[t]he highest net bid [in a unified auction] . . . wins" (*i.e.*, "participants in the unified auction compete equally"), regardless of "[t]he channel through which a bid is received." *See* Lopez Decl., Ex. E, at 2. Therefore Plaintiffs try to use allegations about pre-unified auction events to suggest—erroneously—that the source of bids in a unified auction affects Google Ad Manager's selection of the winner. Opp. at 8–10.

The law is clear that "***companies can control what they have to disclose under [the securities laws] by controlling what they say to the market***." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012); *Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, 2024 U.S. Dist. LEXIS 125258, at *11–13 (N.D. Cal. July 16, 2024) (dismissing where "context" and "form" of statements showed they addressed "*existing* [] clients . . . [not] *prospective* [] consumers"); *In re Intel Corp. Sec. Litig.*, 2019 U.S. Dist. LEXIS 54615, at *31 (N.D. Cal. Mar. 29, 2019) (dismissing where "the relevant context undermines plaintiff's allegations of falsity"). Because the challenged statements concerned only what happens after bids are submitted to a unified auction, they did not implicate a discussion of pre-unified auction events in order not to mislead.

*Stitch Fix* is instructive. Plaintiffs there alleged "internal test results" revealed that the subscription-based retail clothing company's new "'Direct Buy'" option "would cannibalize the [existing subscription-based] Fix business." 2024 U.S. Dist. LEXIS 125258 at *2–3. They alleged this made statements that "Direct Buy would be additive and complementary to Fix" false. *Id.* In rejecting their claims, Judge Pitts held that "the negative internal tests identified by plaintiffs measured the effects of Direct Buy on *prospective* . . . consumers[,]" and the challenged statements were limited to

---

[1] Because "Plaintiffs' [O]pposition abandon[s]" all other challenged statements by "omit[ting] any reference to the allegations[,]" those "claim[s] . . . [are] subject to dismissal with prejudice." *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 991 (N.D. Cal. 2017).

DEFS' REPLY ISO MTD                                              -2-
CASE NO. 3:23-CV-01186-RFL

"*existing* Fix clients." *Id.* at \*10–11. "Accordingly, even if plaintiffs' allegations . . . [we]re accepted as true, they d[id] not contradict the statements made[.]" *Id.* at \*15. So too here: Plaintiffs de-emphasize and omit language within the challenged statements and surrounding sentences that limit the statements to *post*-submission to a unified auction,[2] just as they rely on meaningless allegations concerning *pre*-submission to a unified auction.[3] MTD at 7–8; 11.

**B.    The Opposition Is Unable to Resuscitate the Complaint's Underlying Allegations**

**1.   Opposition Backpedals on the 2018 Facebook Agreement Allegations**

The Motion exposed Plaintiffs' misrepresentations of the terms of the Agreement. MTD at 6–8. Plaintiffs respond by impermissibly modifying their allegations.[4] *Lowe v. Tandem Diabetes Care Inc.*, 2024 U.S. Dist. LEXIS 79006, at \*21 n.2 (S.D. Cal. Apr. 29, 2024) ("Plaintiffs cannot amend their complaint in an opposition brief"). Even as altered, their allegations fail to support falsity.

**Plaintiffs minimize their incorrect "guaranteed 'win rate'" allegation.** Plaintiffs' SAC relies heavily on their allegation that "Facebook was given a guaranteed fixed 'win rate' by Google." *E.g.*, ¶¶ 170, 183, 186. Because the actual Agreement term reveals this to be incorrect, MTD at 6–7, Plaintiffs attempt to deflect. First, they minimize Judge Castel's holding that Google did not give Facebook a guaranteed win rate by pointing out the irrelevant fact that it was in the context of ruling on a claim under §1 of the Sherman Act. Opp. at 9. Second, they quibble that "whether Facebook or Google were 'guaranteed' to win is not the point." *Id.* at 7. But this is not a straw man argument concocted by Defendants: it is the heart of Plaintiffs' complaint. Plaintiffs avoid confronting the fatal flaw that this Agreement term was not a "perk," *id.* at 1, given by Google to Facebook that assisted

---

[2] *See* Opp. at 7 (emphasizing word "affect" instead of qualifying phrase "is received" in challenged statement "the channel through which a bid is received [in a unified auction] does not otherwise ***affect*** the determination of the winning bidder"), 7–8 (emphasizing "***compete equally***" while ignoring that the subject was limited to "[a]ll participants in the unified auction"). *Compare* Lopez Decl., Ex. E, at 2 *with, e.g.*, ¶ 179 (omitting directly preceding clarifying sentence: "The highest net bid [in the unified auction] wins").

[3] *See* Opp. at 2 (Poirot allegation regarding bids submitted to various exchanges *prior* to submission to a unified auction), 5 (Elmo allegations regarding budget allocation), 7–9 (Facebook agreement allegations regarding purported *pre*-unified auction advantages).

[4] The Opposition restates that "Google agree[d] to give Facebook the same benefits it maintained over other bidding participants[,]" Opp. at 1, but declines to respond to the Motion's point that these "benefits" and their bases are not pleaded with particularity. MTD at 9 n.7; *see also Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 812 (N.D. Cal. 2019) ("Plaintiffs may not rely on facts alleged in the [government] Action without providing any independent corroboration.").

DEFS' REPLY ISO MTD                                    -3-
CASE NO. 3:23-CV-01186-RFL

Facebook in winning auctions. MTD at 6–7. Instead it was a commitment *by Facebook* to endeavour to win a certain percentage of auctions in which it participated. *Id.*

**Opposition tries to allege for the first time that "not all terms were memorialized."** The Opposition tries to replace, by sleight of hand, the SAC's allegation that "[t]he negotiations *culminated in an agreement executed between Facebook and Google* in September 2018[,]" ¶ 108, with one that "*not all terms were memorialized*."[5] Opp. at 9 n.7.

Contrary to Plaintiffs' cherry-picking of the docket, the Eastern District of Texas's grant of the States' request for discovery to support their Deceptive Trade Practices claims does not support the existence of these imaginary terms. Opp. at 10. The opinion hinged on the liberal "relevance" standard of Federal Rule of Civil Procedure 26(b)(1) (*i.e.*, "if there is *any* possibility that the information sought may be relevant to the claim or defense of any party."), State AGs Case ECF No. 327 at 3, a far more lenient standard than the particularity required by the PSLRA. Next, Judge Jordan did not permit discovery in order to confirm additional Agreement terms, as the Opposition seeks to imply. Rather, it was to allow the States to attempt to marshall evidence for the "scienter requirements" unique to "[a]t least some of the DTPA statutes invoked by [the] States[.]" *Id.* at 4. Specifically, he contemplated discovery into "additional information *about the [Agreement]*, such as the circumstances of its negotiation, drafting, and execution" that "may be relevant to the elements of proof [the] States must meet[.]" *Id.* Nowhere does the opinion refer to any unmemorialized terms.

### 2. Poirot Allegations Do Not Show Contemporaneous Falsity

**Plaintiffs fail to explain *how* Poirot favored AdX post-2019.** MTD at 11–13. The Opposition responds with unparticularized allegations that "after its initial adoption, Google expanded Poirot to first-price auctions, and that Poirot was applied throughout the Class Period." Opp. at 4 (citing ¶¶ 87, 90). But AdX *was* a first-price auction by the time the challenged statements were made, ¶¶ 114–116, which only supports that Poirot lowered bids to AdX as well. *In re Ashworth, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 27498, at *65 (S.D. Cal. Nov. 29, 2001) (rejecting "allegation [that] belie[d] Plaintiffs' contention, and support[ed] the opposite conclusion"). Google never claimed that it stopped

---

[5] Notably, Judge Castel held that "the [States] . . . d[id] not plausibly allege the existence of side deals, winks or nods that augment the terms of the NBA[.]" *In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346, 376 (S.D.N.Y. 2022).

DEFS' REPLY ISO MTD                                -4-
CASE NO. 3:23-CV-01186-RFL

offering bid optimization tools in DV360. Defendants are left to confront the incorrect assertion that Poirot affected AdX differently than other first-price auction exchanges.[6]

**Neither the CMA's Statement of Objections, nor the DoJ lawsuit, show any challenged statements were false when made.** Opp. at 4–5. The CMA did not "f[i]nd that Google *still* preferences its AdX by 'manipulating advertiser bids so that they have a higher value when submitted into AdX's auction[.]'" *Id.* at 4 (emphasis in original). Rather, the CMA declined to tie the alleged practice to any particular time period, stating vaguely that the purported offending practices "have evolved over time." ¶ 11 (quoting CMA press release).

Similarly, the Opposition's conclusion that the DoJ complaint supports that Poirot disadvantaged other exchanges during the Class Period is a leap. Opp. at 4. The DoJ alleged "Poirot . . . continues **in some form** today," and spoke in the *past tense* about its purported effects. *Compare* Opp. at 4 *with* DoJ ¶ 230. This fails to plead contemporaneous falsity with particularity. *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 838 (N.D. Cal. 2019) (dismissing for failure to plead statements were false when made: "what happened in 2015 is irrelevant, the Class Period starts in February 2017").

**Realizing that they cannot defend their Poirot allegations, Plaintiffs now try to dim them.** Defendants did not "concoct" the allegation that Poirot "ensured" AdX would win unified auctions, Opp. at 4. This was Plaintiffs' own characterization: "This manipulation of advertiser bids virtually **ensured** that Google's ad exchange would win the relevant auction[.]" ¶ 85. Regardless, Plaintiffs fail to plead how Poirot "affect[ed]" the outcome of a unified auction. MTD at 12; *see also LendingClub*, 423 F. Supp. 3d at 812 ("[The government] allegations (even if proven) do not automatically become [a] basis for securities fraud—Plaintiffs must plead specific facts indicating why each statement at issue was false" when made).

---

[6] Plaintiffs' "law of the case" argument, Opp. at 3, is an attempt to avoid defending their unparticularized and illogical pleadings. The Ninth Circuit has held that "[t]he law of the case doctrine is 'not an inexorable command,' . . . , nor is it 'a limit to [a court's] power.' . . . Rather, '[a]pplication of the doctrine is discretionary.'" *United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004). Moreover, "[t]he law of the case doctrine is 'wholly inapposite' to circumstances where a district court seeks to reconsider an order over which it has not been divested of jurisdiction." *Id.* Further, the "argument appears disingenuous inasmuch as [P]laintiffs cite the law of the case doctrine when they agree with [the Court's] rulings and ignore it when they disagree[,]" *In re Activision Sec. Litig.*, 621 F. Supp. 415, 420 (N.D. Cal. 1985), by repleading numerous dismissed allegations without alteration. MTD at 5–6.

DEFS' REPLY ISO MTD                                         -5-
CASE NO. 3:23-CV-01186-RFL

### 3. Additional Elmo Allegations Did Not Cure FAC Deficiencies

Plaintiffs' new allegation that Elmo "worked by using 'cookies' to detect when a single impression was being routed to multiple exchanges at the same time," Opp. at 5, does not answer "how Project Elmo reduced the 'overall ad spend' on . . . rival exchanges[,]" Order at 10 n.3. First, Plaintiffs cite only pre-Class Period documents. ¶¶ 92–94.[7] But even overlooking this failure, explaining the mechanics of how Elmo adjusted budget with respect to a single impression fails to support with particularity the conclusion that "overall ad spend" was reduced on "rival" exchanges. *In re Tesla Motors, Inc. Sec. Litig.*, 75 F. Supp. 3d 1034, 1047 (N.D. Cal. 2014) ("three . . . fires [involving Model Ss] in the prior six weeks" did "not establish falsity, even facially" of statement "that the Model S is less likely to experience a fire than a gasoline car"). Last, it does not address how this causes the statements regarding *bids* in a unified auction to be false. MTD at 13.

### C. Plaintiffs Cannot Fabricate the Materiality of the Word "Equally"

Having neglected to plead the materiality of the word "equally" on the Google Ad Manager Help page, MTD at 9–10, Plaintiffs now attempt to argue it in their Opposition. Opp. at 11. They argue in circular fashion that the challenged statement's materiality is evinced by its being "center-stage in several government lawsuits and . . . also the subject of Congressional scrutiny," *id.*, and that "[c]ourts routinely find website statements actionable," *id.* at 12 n.12.

**First, materiality is not determined with the benefit of hindsight, but rather "*at the time [the statement was] made*."** *See In re Regulus Therapeutics Inc. Sec. Litig.*, 406 F. Supp. 3d 845, 857 (S.D. Cal. 2019); *In re Stratosphere Corp. Sec. Litig.*, 66 F. Supp. 2d 1182, 1198 (D. Nev. 1999) (same). That the States' complaint later quoted the statement for narrative effect, once *and* out of context, does not confer materiality.[8] State AGs ¶ 195; *see In re Manulife Fin. Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 134172, at *13 (S.D.N.Y. Sept. 19, 2012) (allegations "derived from [a *Financial Post*] article" were "insufficient to demonstrate materiality, as they—still—only demonstrate fraud by

---

[7] Plaintiffs cite one 2020 document (without specifying whether it fell inside the Class Period beginning February 4, 2020, or more importantly, whether it coincided with the date of the first surviving challenged statement—Google's submission to the House Judiciary Committee on September 14, 2020) for the vague assertion that at that time it "describe[d] Elmo as a program that used cookies to throttle ad spend budgets." ¶ 92.
[8] Neither the DoJ complaint nor congressional testimony quoted in the SAC contain this statement.

hindsight"). Plaintiffs' reliance on *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) is misplaced. In that case, the court held "increased regulatory and governmental scrutiny . . . alleged by the complaint to have occurred ***after disclosure***" of the privacy bug was one factor supporting materiality. *Id.* Here, Plaintiffs argue the reverse: that the States' inclusion of the statement in their complaint *caused* it to be material. Opp. at 11.

**Second, the statement's immateriality is not due to the medium in which it arises but to its lack of relevance *to investors*.**[9] Opp. at 12 n.12. It does not "significantly alter[] the 'total mix' of information made available" to investors, *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988), because its purported materiality hinges on a single word ("equally") in a technical sentence contained on a support page for a single one of Alphabet's many products, MTD at 9–10, *and* it is accurate, *supra* 2–3.[10] That Plaintiffs only challenged the statement in the *third* iteration of their complaint, despite it being quoted in the States' complaint four years ago, only confirms its lack of materiality.[11]

## II.    OPPOSITION IS UNABLE TO DEFEND DEFICIENT SCIENTER ALLEGATIONS

The Opposition drops all references to Ms. Porat, makes only two threadbare references to Mr. Schindler,[12] and fails to cure the SAC's deficient allegations as to Mr. Pichai—largely unchanged from

---

[9] Plaintiffs' legal authorities regarding website statements, which do not even address materiality, are therefore irrelevant. *Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 177589, at *33 (N.D. Cal. Sept. 30, 2024) (holding only that a statement need not be contained in a "market-related document[]" to be actionable); *In re Robinhood Ord. Flow Litig.*, 2022 U.S. Dist. LEXIS 190496, at *18–19 (N.D. Cal. Oct. 13, 2022) (addressing falsity (not materiality) of the subject matter of the alleged omission, *not* the fact that it was omitted from a webpage).

[10] Plaintiffs superficially distinguish the facts of Defendants' materiality cases without addressing the legal analysis. Opp. at 12 n.13. They cite the falsity, rather than the materiality, portion of *Hewlett Packard Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276–77 (9th Cir. 2017). But as in *Hewlett*, "there [was] nothing unusual about" the technical description of winning bid selection in a unified auction. *Id.* Similarly, Plaintiffs restate the facts of *In re Nektar Therapeutics Sec. Litig.*, Opp. at 12 n.13, rather than addressing the Ninth Circuit's materiality analysis that with "statements based on highly technical information," plaintiffs must not "fail[] to explain why" the information "would be material to a reasonable investor." 34 F.4th 828, 837 (9th Cir. 2022). As to *AT&T Sec. Litig.*, 480 F. Supp. 3d 507 (S.D.N.Y. 2020), they superficially distinguish the facts about a drug's clinical trial without addressing the *legal* point that a court must "contextualize the scale of [the defendant company's] business" in assessing materiality. *Id.* at 527.

[11] Plaintiffs' reliance on *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976) and *Morgan v. AXT, Inc.*, 2005 U.S. Dist. LEXIS 42346, at *10 (N.D. Cal. Sept. 23, 2005) is misplaced. Opp. at 12 n.11. *TSC Industries* came out in favor of *defendants* and concerned a Section 14a-9 claim. 426 U.S. at 441–43, 463–64. *AXT* addressed materiality in the context of a puffery argument, in which it would have been much harder to assess materiality. 2005 U.S. Dist. LEXIS 42346, at *28–31.

[12] The Opposition's two cursory allegations addressing Mr. Schindler—that he (1) reported to Mr. Pichai, Opp. at 17, and (2) was a participant in negotiations with Facebook, *id.* at 15—are a far cry from the particularized "allegations of specific contemporaneous statements or conditions" "the

the FAC's. Ms. Porat, Mr. Schindler, and Mr. Walker—whom the "[O]pposition does not even address"—should be dismissed from this lawsuit on that basis alone. *Plumley v. Sempra Energy*, 2018 U.S. Dist. LEXIS 49799, at *9–10 (S.D. Cal. Mar. 26, 2018) (dismissing undefended claims with prejudice). As to Mr. Pichai, the Opposition does not dispute that the "speculat[ion]" and "unspecified adverse undisclosed information" on which it relies fail to plead scienter. MTD at 14.[13] Instead, it doubles down on generalized allegations that he "must have" known of, Opp. at 15–16, and had "access to" information, *id.* at 12–15. These allegations do "not rise to the required strong inference" of scienter. MTD at 14.

### A.    The Opposition Tries to Water Down Scienter Requirement

**Opposition attempts to lower particularity requirement.** Plaintiffs do not contest the deficiency of their "[c]laims that [Mr. Pichai] 'could have' or 'should have' known that the statements were false[,]" and instead endeavour to dispel the high pleading standard they cannot meet. *Compare* MTD at 14–16 *with* Opp. at 16; *see also infra* 10 n.19. Plaintiffs misdirect the Court as to their pleading burden by invoking an order deciding expert testimony motions. Opp. at 16 ("[c]ustom and practices information is relevant to scienter."). But the PSLRA's exacting *particularity* standard demands far more than the "broad latitude" of *relevance* permitted under Rule 702. *See In re Twitter, Inc. Sec. Litig.*, 2020 U.S. Dist. LEXIS 252718, at *8, 35–36 (N.D. Cal. Apr. 20, 2020) (defendants were permitted expert testimony on disclosure "customs and practices of large public companies").

**Plaintiffs cannot bootstrap scienter from deficient falsity claims.** The Opposition's circular argument that challenged statements themselves provide "indicia" of scienter does not rescue failing scienter claims. Opp. at 16. Instead, its repeated insistence that "topics" Mr. Pichai was "expected to" have been briefed on "included, but were not limited to, how the determination of the winning bidder is made[,]" *id.*, is as hypothetical and conclusory as allegations the Court has already rejected. Order at 11 (Plaintiffs failed to plead what information "allege[d]. . . briefing" "contained").[14]

complaint must contain" to meet the PSLRA's exacting pleading requirement. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1066 (9th Cir. 2008).

[13] Scienter cannot be imputed to Google, *see* Opp. at 18, where it has not been pleaded as to any "any Individual Defendant[.]" *Sneed v. AcelRx Pharms., Inc.*, 2022 U.S. Dist. LEXIS 176319, at *16–17 (N.D. Cal. Sept. 28, 2022).

[14] Neither of Plaintiffs' out-of-circuit cases counsels otherwise. In both *Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, and *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, unlike here, plaintiffs pleaded multiple

DEFS' REPLY ISO MTD                    -8-
CASE NO. 3:23-CV-01186-RFL

**Continued reliance on existence of information fails to support scienter.** The Opposition continues to rely wholly on "refer[ences] to the existence of" information, which are "insufficient to plead scienter[.]" *Compare Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012) *with* Opp. at 16 (referencing "documents" Plaintiffs do not allege Mr. Pichai even accessed).[15] Asserting without support that Mr. Pichai had "actual *exposure*" to information, Opp. at 16, does not mask Plaintiffs' inability to plead what any "Individual Defendant[] actually *accessed*." *Ferraro Fam. Found., Inc. v. Corcept Therapeutics Inc.*, 501 F. Supp. 3d 735, 768 (N.D. Cal. 2020). The SAC's "new allegations" "do not include data or other detail[,]" thus "fail for the same reason as" "those the Court found inadequate in the FAC[.]" *Align Tech.*, 850 F. Supp. 2d at 1035, 1042.

**B.     Unparticularized Allegations about Facebook Negotiations Remain Inadequate**

Plaintiffs retreat from their incorrect allegation that Mr. Pichai executed the Agreement. MTD at 16. Simply repeating instead that Mr. Pichai had an "active role" in its "negotiation[,]" Opp. at 13, still lacks sufficient "factual support for a plausible inference of scienter." MTD at 16 (quoting *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1110 (9th Cir. 2021))[16]; *see also Reckstin Fam. Tr. v. C3.Ai, Inc.*, 718 F. Supp. 3d 949, 984 (N.D. Cal. 2024) ("'extensive' but unspecified involvement" "too general of an allegation 'to plead scienter with the requisite specificity.'").[17]

---

bases for scienter, sufficient to plead scienter *in combination with* their theories about congressional hearings. Opp. at 16; *see* 2021 U.S. Dist. LEXIS 68415, at *21 (M.D. Tenn. Apr. 8, 2021) (multiple "red flags" indicating scienter, including that defendants knew of, but failed to disclose, issues with accounts receivable); ¶¶ 387–400, 2017 U.S. Dist. LEXIS 66037 (D.N.J. Apr. 28, 2017) (congressional testimony allegations accompanied by a litany of additional facts evincing scienter: particularized allegations of what was discussed at timestamped meetings, contents of a short report, and affirmative statements about the CEO's religious tracking of important metrics).

[15] Plaintiffs' self-referential theory that scienter may be pleaded by vague hypotheticals regarding Mr. Pichai's response to a broad question about what percentage of bids Google wins on its exchanges, is unlike the detailed allegations in *Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc.*, 422 F. Supp. 3d 821, 836 (S.D.N.Y. 2019) (due diligence defendants performed on the acquisition of a small regional theatre alerted them to underinvestment in those facilities).

[16] Of Defendants' myriad authorities supporting the absence of Mr. Pichai's scienter, MTD at 14–19, Plaintiffs attempt to distinguish only one–and fail. Opp. at 13 n.14. *Prodanova* plaintiffs failed *both* to plead individual defendants' involvement in the alleged misstatement, which Plaintiffs acknowledge, *and* facts showing a defendant's knowledge of information contradicting such a statement. 993 F.3d at 1109–10. Just like in *Prodanova*, Plaintiffs' allegations of Mr. Pichai's alleged involvement in "negotiat[ions] . . . lack[] facts reflecting" resulting knowledge contradicting his public statements. *Id.*

[17] Conclusory assertions that Mr. Pichai was involved in "important decisions" and was a "micromanage[r,]" Opp. at 15, do not cure this deficiency. *Sakkal v. Anaplan Inc.*, 557 F. Supp. 3d 988, 999 (N.D. Cal. 2021) ("allegations of micromanagement and involvement" "do not suggest Defendants had 'actual access' to the relevant information[.]").

**Unsupported and rejected assertions repeated from the FAC are too vague to plead scienter.** MTD at 16–17. Plaintiffs attempt to construct scienter, Opp. at 12–15, out of broad references to Mr. Pichai's alleged "familiarity" with generalized topics that fall short of the "specific facts" required. *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1185–86 (N.D. Cal. 2004). First, the Opposition offers no explanation of how Mr. Pichai would have been aware of *Facebook*'s internal memos "memorializing" the Agreement's "significance[,]" Opp. at 15, much less how they would bear on *his* state of mind.[18] Next, it fails to explain why allegations that Google "extend[ed] *Facebook* special bidding advantages" would "necessarily [have] alerted" Mr. Pichai to unspecified "advantages" *Google* had, Opp. at 14—none of which Plaintiffs have adequately alleged. *Supra* 3 n.4. *See Metzler*, 540 F.3d at 1068 (no scienter "absent some additional allegation of specific information conveyed to management"). Last, recycling the FAC's assertion that Mr. Pichai was aware of efforts to "weaken the header bidding narrative in the marketplace[,]" Opp. at 14, adds nothing to an allegation this Court already dismissed for lack of particularity. MTD at 17 (quoting Order at 11).[19]

**Reliance on inapposite case law fails to cure this deficiency.** Opp. at 14–16. *Reese v. Malone* dealt with the alleged scienter of a "Unit Leader" of the specific region in which a 200,000-gallon oil spill occurred—a situation it explicitly distinguished from one like here, involving "the CEO of a large enterprise." 747 F.3d 557, 564, 572, 576 (9th Cir. 2014) (complaint rife with "additional facts" absent here: *e.g.*, contents of internal reports describing "objectively alarming" corrosion rates; multiple executives' awareness that BP verified corrosion rates "at a rate that fell significantly below industry standards[;]" and BP's guilty pleas). Plaintiffs' theory also lacks the specificity in *Reese*, where detailed allegations linked "corrosion rate data" that the Unit Leader accessed to her later public statements "specifically address[ing]" "conditions found in the pipelines." *Id.* at 572, 577.

---

[18] Repeating conclusorily that Facebook and Google "compete[d]" "equal[ly]" likewise bears no relation to scienter. Opp. at 14.

[19] That the States were allowed to depose Mr. Pichai also does not advance scienter. Opp. at 13. First, the court expressly limited its scope to "his one-on-one discussion with Mr. Zuckerberg," and "significant corporate acquisitions, meetings, and policies," neither of which bears on any challenged statement. State AGs Case, ECF No. 535 at 16, 22. Second, depositions require only "reasonable [] belie[f]" of "personal involvement," *Stephens v. Big Spring Herald, Inc.*, 2020 U.S. Dist. LEXIS 258975, at *6–8 (N.D. Tex. Aug. 19, 2020), far less stringent than the PSLRA's high standard for pleading scienter. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619–20 (9th Cir. 2017).

DEFS' REPLY ISO MTD                                                    -10-
CASE NO. 3:23-CV-01186-RFL

**Generalizations about Facebook negotiations do not negate any challenged statement.** The Opposition's loose gestures do "not adequately tie the specific contents of any" allegedly available materials "to particular statements so as to" plead scienter. *E. Öhman J v. NVIDIA Corp.*, 81 F.4th 918, 924 (9th Cir. 2023). For example, allegations that an internal memo discussed "issues relating to the Facebook deal" and "deal terms[,]" Opp. at 14–15, do not negate any challenged statement—none of which address terms of the Agreement. *Supra* 2.[20] Further, Plaintiffs make no allegation that Mr. Pichai even *read* such a memo, absent which there is no basis for an inference that he was aware of its contents. Opp. at 13–15. "In the absence of such specifics, [the Court] cannot ascertain whether there is any basis for the allegations that [Mr. Pichai] had actual or constructive knowledge[.]" *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999).

**C.      The Opposition Is Unable to Reconstitute Remaining Scienter Claims**

**No contemporaneous knowledge of regulatory proceedings.** MTD at 19. Plaintiffs' own case, *Thomas v. Magnachip Semiconductor Corp.*, forecloses their effort to base scienter wholly on allegations drawn from regulatory proceedings. Opp. at 17 (citing 167 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (such allegations "themselves are not sufficient to plead scienter")).

**Alleged absence of chats fails to plead scienter as a matter of law.** MTD at 18. Plaintiffs' inability to allege the "*contents* of" chats that Mr. Pichai neither sent nor received, Opp. at 18 n.17, defeats scienter. *Compare Metzler*, 540 F.3d at 1068 *with In re Toyota Motor Corp. Sec. Litig*, 2011 U.S. Dist. LEXIS 75732, at *10 (C.D. Cal. July 7, 2011) (internal emails specifically addressed a potentially fatal malfunction plaguing vehicles *and* Toyota's efforts to "keep[] this [issue] quiet.").

**Unsupported allegations about website statements do not advance scienter.** MTD at 17–18. The Opposition offers no support for repeated circular arguments that Mr. Pichai must have had

---

[20] Plaintiffs offer no authority to the contrary. Opp. at 13. Unlike the challenged statements here, which do not relate to the Agreement, alleged misstatements in each case to which Plaintiffs cite *referred* to defendants' contractual obligations. *See, e.g., Pampena v. Musk*, 705 F. Supp. 3d 1018, 1049 (N.D. Cal. 2023) (defendant "bought Twitter personally and thus was the only person with knowledge about all the facts of the [Merger Agreement]."); *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004) (Oracle CEO made public statements that he could "see every deal out there that my reps around the world are working" "up to the minute at any level of detail"). Further, each of Plaintiffs' authorities offers extensive additional scienter allegations absent from their own, including "specific admissions from [] top executive officers," *id.* at 1234, suspicious stock sales, *id.* at 1228–29, and new confidential witnesses, *In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181, 1187 (N.D. Cal. 2010) (plaintiffs added "eight additional confidential witnesses").

scienter because "website statements [could] be attributed to [him]" or that such statements were "made with scienter because Pichai knew facts[.]" Opp. at 18, 18 n.17.[21]

### III.   PLAINTIFFS HAVE NOT CURED FAC'S FAILURE TO PLEAD LOSS CAUSATION

Plaintiffs attempt to disclaim their burden to particularly plead loss causation. *Compare* Opp. at 19 *with Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021).

**Still no casual link.** Conclusory assertions that their "disclosures" are "causally connected," Opp. at 19, remain devoid of particularized facts. MTD at 19 (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)). As in the FAC, Plaintiffs still fail to "show[] that the market reacted to" "fraudulent acts themselves[]" rather than to their "purported impact[.]" *Roofers Loc. No. 149 Pension Fund v. Dreamworks Animation SKG, Inc.*, 677 F. App'x 376, 377 (9th Cir. 2017) (dismissing despite stronger causal link than here).[22]

**Announcements alone insufficient for loss causation.** The Opposition identifies no corrective disclosures "other" than actions filed against Defendants and media announcing the same, Opp. at 19 n.19; the SAC pleaded none. *See* ¶¶ 259–278.[23] On their own, such announcements do "not reveal to the market [a] pertinent truth" "previously concealed[,]" thus fail to plead loss causation. MTD at 20.[24]

### CONCLUSION

For the foregoing reasons, the SAC should be dismissed with prejudice.

---

[21] Plaintiffs do not rebut that their confidential witnesses fail the Ninth Circuit's requirements, MTD at 18–19, and do not address their privacy allegations in the Opposition at all, *id.* at 19; *see supra* 2 n.1. Plaintiffs also do not offer a single fact in support of their cursory motive claim. *See* Opp. at 19 n.18.

[22] As with "news articles, the Waymo lawsuit, and the government investigations" in *Uber*, *see* Opp. at 20 n.20, Plaintiffs attempt to attribute a "general decline" in valuation to "lump[ed] together" events but "d[o] not adequately and with particularity allege that these revelations caused the resulting drop[.]" *Uber*, 998 F.3d at 407, 409; *see also Curry v. Yelp Inc.*, 875 F.3d 1219, 1225 (9th Cir. 2017) ("particularized allegations" not pleaded by lawsuits indicating "risk or potential for fraud").

[23] Unlike the cases they cite, Plaintiffs' allegations lack detailed disclosures *corroborating* regulatory proceedings. Opp. at 18–19 n.19; *see In re Bofl Holding, Inc. Sec. Litig.*, 977 F.3d 781, 792 (9th Cir. 2020) (alleging "highly detailed and specific" "descriptions of wrongdoing"); *Erickson v. Corinthian Colls., Inc.*, 2015 U.S. Dist. LEXIS 193978, at *49 (C.D. Cal. Apr. 22, 2015) (similar); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1211 (9th Cir. 2016) (similar); *Mauss v. NuVasive, Inc.*, 2016 U.S. Dist. LEXIS 90412, at *38 (S.D. Cal. July 12, 2016) (alleging "combination" of disclosures).

[24] Contrary to the Opposition's protestations, Opp. at 20, Plaintiffs' own case concedes that a "'modest' drop in" stock price followed by "recover[y] very shortly after," "refutes the inference that the alleged concealment of [a] particular fact caused any material drop in the stock price." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197–98 (9th Cir. 2021); *see also Lako v. Loandepot*, 2023 U.S. Dist. LEXIS 13086, at *30 (C.D. Cal. Jan. 24, 2023) (noting *Tesla* "found" "sustained price recovery," not that it required one).

Dated: January 21, 2025

FRESHFIELDS US LLP

By: */s/ Boris Feldman*
      Boris Feldman

*Attorneys for Defendants Alphabet Inc.,*
*Google LLC, Sundar Pichai, Ruth M. Porat,*
*Philipp Schindler, and Kent Walker*

DEFS' REPLY ISO MTD
CASE NO. 3:23-CV-01186-RFL

-13-