BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
ELISE LOPEZ, State Bar No. 324199
elise.lopez@freshfields.com
ELENA HADJIMICHAEL, State Bar No. 355715
elena.hadjimichael@freshfields.com
J. MIA TSUI, State Bar No. 344251
mia.tsui@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMI - GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., et al.,<br><br>     Plaintiffs,<br><br>   v.<br><br>ALPHABET INC., et al.,<br><br>     Defendants. | Case No.: 3:23-cv-01186-RFL<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO CERTIFY QUESTIONS FOR INTERLOCUTORY APPEAL**<br><br>Date:   June 17, 2025<br>Time:   10:00 AM<br>Location: Courtroom 15 – 18th Floor<br>Judge:  Rita F. Lin |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................................. 1

ISSUES TO BE DECIDED................................................................................................... 1

INTRODUCTION................................................................................................................. 1

ARGUMENT......................................................................................................................... 3

    I. THE ORDER HINGES ON TWO CONTROLLING QUESTIONS OF LAW............................ 3

    II. THERE IS SUBSTANTIAL DIVISION AMONG DISTRICT COURTS ON EACH
    QUESTION................................................................................................................... 5

        A. District Courts Are Split in Their Interpretation of Tellabs' Scienter Pleading Requirements
        5

            1. Courts disagree as to whether holistic review can overlook the lack of particularized
            individual scienter allegations.................................................................................6

            2. Courts are split on whether unparticularized allegations can create an inference of
            scienter more compelling than an alternative innocent explanation..................................... 9

            3. Ninth Circuit review is appropriate because the Court's decision on scienter creates new
            law....................................................................................................................10

        B. District Courts Are Divided Regarding the Application of the Ninth Circuit's Directive to
        Evaluate a Disclosure's Falsity in Context..................................................................11

            1. Courts inconsistently analyze how a challenged statement's context impacts falsity
            determination.......................................................................................................11

            2. Courts differ in their consideration of market understanding to clarify a challenged
            statement's context..............................................................................................13

            3. Without clarity about how a statement's surrounding context will be considered in
            litigation, companies will not know how to draft public disclosures...............................14

    III. AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE TERMINATION OF
    THIS CASE..................................................................................................................15

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*,
    2006 WL 2850017 (N.D. Cal. Oct. 4, 2006).................................................................4

*Bao v. SolarCity Corp.*,
    2016 WL 54133 (N.D. Cal. Jan. 5, 2016)......................................................................8

*Batterton v. Dutra Grp.*,
    2015 WL 13752889 (C.D. Cal. Feb. 6, 2015)................................................................6

*Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011),
    *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012)..................8

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008).........................................................................................6

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981)...................................................................................3, 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017)....................................................................................... 12

*City of Oakland v. Wells Fargo Bank, N.A.*,
    2018 WL 7575537 (N.D. Cal. Sept. 5, 2018)................................................................4

*Colyer v. AcelRx Pharms., Inc.*,
    2015 WL 7566809 (N.D. Cal. Nov. 25, 2015).........................................................9, 10

*Doe 1 v. GitHub, Inc.*,
    2024 WL 4336532 (N.D. Cal. Sept. 27, 2024)..........................................................5, 15

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................................... 13

*In re Dynex Cap., Inc. Sec. Litig.*,
    2006 WL 1517580 (S.D.N.Y. June 2, 2006)..................................................................5

*Eden Alpha CI LLP v. Polished.com Inc.*,
    2025 WL 296998 (E.D.N.Y. Jan. 24, 2025)...................................................................9

*Espy v. J2 Glob., Inc.*,
    99 F.4th 527 (9th Cir. 2024).......................................................................................6, 9

*Facebook Inc. v. Namecheap Inc.*,
    2021 WL 961771 (D. Ariz. Mar. 15, 2021)...............................................................14, 15

*Finder v. Leprino Foods Co.*,
  2016 WL 4095833 (E.D. Cal. Aug. 1, 2016)...............................................................................15

*Garcia v. J2 Glob., Inc.*,
  2022 WL 22717936 (C.D. Cal. Aug. 8, 2022).............................................................................8

*In re GenesisIntermedia, Inc. Sec. Litig.*,
  2007 WL 1953475 (C.D. Cal. June 28, 2007)...........................................................................10

*In re Gentiva Sec. Litig.*,
  932 F. Supp. 2d 352 (E.D.N.Y. 2013).........................................................................................8

*Hemmer Grp. v. SouthWest Water Co.*,
  527 Fed. App'x 623 (9th Cir. 2013)..........................................................................................10

*Huang v. Higgins*,
  2019 WL 1245136 (N.D. Cal. Mar. 18, 2019).............................................................................7

*ICTSI Or., Inc. v. Int'l Longshore and Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022).....................................................................................................3

*Joyce v. Amazon.com*,
  2025 WL 835054 (W.D. Wash. Mar. 17, 2025)..........................................................................7

*Kinkead v. Humana, Inc.*,
  2016 WL 9453808 (D. Conn. Oct. 13, 2016).............................................................................14

*Luo v. Spectrum Pharms., Inc.*,
  2024 WL 4443323 (D. Nev. Oct. 7, 2024)................................................................................12

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
  876 F.3d 541 (4th Cir. 2017).......................................................................................................8

*Mehedi v. View, Inc.*,
  2024 WL 3748012 (N.D. Cal. Aug. 8, 2024)...............................................................................4

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022)......................................................................................................11

*New Mexico State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011)...............................................................................................6, 10

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*,
  2024 WL 4353049 (N.D. Cal. Sept. 30, 2024).............................................................................6

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
  774 F.3d 598 (9th Cir. 2014)................................................................................................10, 15

*Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*,
  2024 WL 4251896 (N.D. Cal. Sept. 17, 2024)...........................................................................12

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
  521 F. Supp. 3d 265 (E.D.N.Y. 2021)........................................................................14

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011)..........................................................................5, 11, 12

*Republic Maximal LLC v. Romulus Cap. Partners II, LLC*,
  2024 WL 3169798 (D. Mass. June 25, 2024).............................................................5

*Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*,
  2024 WL 3447524 (N.D. Cal. July 16, 2024).............................................................12

*Rollins v. Dignity Health*,
  2014 WL 6693891 (N.D. Cal. Nov. 26, 2014)........................................................5, 11

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
  485 F. Supp. 3d 1113 (N.D. Cal. 2020)....................................................................12

*In re SentinelOne, Inc. Sec. Litig.*,
  2024 WL 3297150 (N.D. Cal. July 2, 2024)..............................................................10

*Smilovits v. First Solar Inc.*,
  119 F. Supp. 3d 978 (D. Nev. 2015).....................................................................5, 15

*Smith v. United HealthCare Servs.*,
  2003 WL 22834865 (D. Minn. Nov. 26, 2003)............................................................9

*Sneed v. AcelRx Pharmaceuticals, Inc.*,
  2023 WL 4412164 (N.D. Cal. July 7, 2023)...............................................................7

*Somers v. Dig. Realty Tr., Inc.*,
  2015 WL 4481987 (N.D. Cal. July 22, 2015)..............................................................9

*Stebbins v. Rebolo*,
  2023 WL 2699982 (N.D. Cal. Mar. 28, 2023)...........................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................................*passim*

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016).......................................................................6

*In re Wash. Mut., Inc. Sec.*,
  694 F. Supp. 2d 1192 (W.D. Wash. 2009).................................................................11

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 6466264 (N.D. Cal. Dec. 18, 2017)
  *aff'd*, 765 F. App'x 239 (9th Cir. 2019)...............................................................8, 12

*Y-Gar Cap. LLC v. Credit Suisse Grp. AG*,
  2020 WL 71163 (S.D.N.Y. Jan. 2, 2020)...................................................................10

*Yaron v. Intersect ENT, Inc.*,
  2020 WL 6750568 (N.D. Cal. June 19, 2020).......................................................12, 13

*York Cnty. v. HP Inc.*,
  2024 WL 4831889 (N.D. Cal. June 3, 2024)..............................................................6

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)...........................................................................6, 7 10

**Statutes**

15 U.S.C. § 77k...............................................................................................10, 11

28 U.S.C. § 1292(b)..............................................................................................1, 3

Private Securities Litigation Reform Act of 1995, *i.a.*, 15 U.S.C. § 78j ...............................*passim*

**Rules**

N.D. Cal. L.R. 7–9(b)(1)–(3)...................................................................................15

Rule 10b-5 and § 10(b).........................................................................................10

**Other Authorities**

16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3930
(3d ed. 1998)....................................................................................................... 14

H.R. Conf. Rep. No. 104–369 (1995).......................................................................4, 6

S. Rep. No. 104-98 (104th Cong.)............................................................................14

**TABLE OF ABBREVIATIONS**

| Abbreviation | Meaning |
|---|---|
| Defendants | Alphabet Inc., Google LLC, Sundar Pichai, Ruth M. Porat, Philipp Schindler, and Kent Walker |
| NBA | September 2018 Network Bidding Agreement |
| MTD SAC | Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint for Violations of the Federal Securities Laws, filed November 8, 2024 (ECF No. 93) |
| Order | Order granting in part and denying in part Defendants' motion to dismiss, filed March 24, 2025 (ECF No. 108) |
| Plaintiffs | Plaintiffs Menora Mivtachim Insurance Ltd., Menora Mivtachim Pensions and Gemel Ltd., AMI - Government Employees Provident Fund Management Company Ltd., City of Fort Lauderdale Police & Fire Retirement System, and More Mutual Funds Management (2013) Ltd. |
| PSLRA | Private Securities Litigation Reform Act of 1995 as codified in, *i.a.*, 15 U.S.C. § 78j |
| SAC | Plaintiffs' Second Amended Complaint for Violations of the Federal Securities Laws, filed September 24, 2024 (ECF No. 87) |

Herein, emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphases have been omitted.

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at the time and place noted above, Defendants will and hereby do move for an order certifying this Court's March 24, 2025 order (the "Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## ISSUES TO BE DECIDED

1. Whether the Court should certify the following questions for interlocutory appeal:

   a. How should courts apply the scienter pleading requirements articulated in *Tellabs* when plaintiffs plead a series of unparticularized allegations? Specifically: (1) whether holistic review can overcome an absence of particularized facts to support scienter, (2) whether a series of unparticularized allegations can create a strong inference of scienter, and (3) if so, whether that creates new law effectively converting Section 10(b) to a strict liability claim.

   b. When evaluating the falsity of a challenged statement, may a court read the statement broadly if that interpretation is inconsistent with the statement's context?

2. Whether, in the alternative, the Court should reconsider its holding that Plaintiffs sufficiently alleged (a) the falsity of Google's September 14, 2020 statement and (b) a strong inference of scienter with respect to that statement.

## INTRODUCTION

Defendants respectfully request that the Court certify its recent Order partially denying the motion to dismiss for interlocutory appeal to the Ninth Circuit, under 28 U.S.C. § 1292(b).

Defendants believe the Order erred in two significant ways regarding scienter and falsity. But Defendants' request is not about whether the Order is right or wrong. Rather, it concerns the necessity for immediate Ninth Circuit clarification of a deepening split among district courts in this Circuit on controlling issues of securities law.

There are two overarching issues for appeal. First, can a securities plaintiff's allegations, lacking in particularity when examined individually, somehow amount to a strong inference of scienter in the aggregate? Second, when examining the falsity of a challenged statement, is the context of the statement controlling or can the district court give it its own interpretation? The Court's resolution of

DEFS' MOTION TO CERTIFY QUESTIONS                    -1-
FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

these questions was not isolated. To be sure, there are certain other district courts that are in agreement. The weight of authority, however, points the opposite way. This division among district courts undermines Congress's goals in passing securities laws: to provide a predictable and uniform federal securities regime affecting nationwide securities markets. That district courts are divided should not be surprising, given the absence of specific Ninth Circuit guidance on each topic.

We note that some of these divisions exist in some of the other circuits, as well. This split is not the fault of district courts, which work hard to make the right calls within the unusual litigation structure Congress created for securities litigation. Nor is it the fault of circuit courts, which often do not even get to rule on these issues because more than 99% of securities cases either are dismissed at the pleading stage or settle before an appeal can be taken as of right.

In other words, without the Court's certification of an interlocutory appeal the issues would be lost to appellate review. The uniformity and predictability Congress sought would remain elusive.

These are also questions of significant national importance in the legal field. Combined, Nasdaq and NYSE trade securities valued at over $32 trillion. Because Congress created an unusually high pleading standard for securities class actions, court orders on motions to dismiss are the key means by which securities common law is made. Motion to dismiss orders are scrutinized by practitioners and regulators alike to inform advice given to securities issuers. This weight on motions to dismiss makes inconsistencies between courts problematic in a way that is without equivalent in other areas of law. It also places a burden on district courts to delve deeply into factual analysis at a procedural stage at which Congress prohibited discovery.

As if this was not enough, the emerging split on the two questions noted above concerns two of the largest technology companies in the world today. This Court's Order affects Alphabet, with a market capitalization of $2 trillion, and its statements about compliance with antitrust laws. It is directly at odds with another ruling—only a week apart—involving Amazon (market cap of $1.97 trillion), from the Western District of Washington. The Amazon ruling involved a securities class action with very similar facts, involving congressional testimony concerning antitrust compliance. That court granted the motion to dismiss on nearly identical facts; this Court denied it.

This is just the most recent illustration of the split among district courts. As described below,

DEFS' MOTION TO CERTIFY QUESTIONS                    -2-
FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

other district court rulings fall on each side of the divide. That the divide has not healed over the years through the work of district courts alone strongly militates in favor of interlocutory appeal.

Defendants are aware of the import of their request. They are also grateful for the Court's careful analysis of the issues—even when they disagree with it. The present case easily meets the criteria for interlocutory appeal in 28 U.S.C. § 1292(b), as discussed below. Defendants respectfully ask that the Court certify these critical questions of securities laws to the Ninth Circuit for its review and clarification.

**ARGUMENT**

Section 1292(b) allows this Court to certify its Order for interlocutory review by the Ninth Circuit. 28 U.S.C. § 1292(b). The statute requires three conditions to be met, all of which are present here. *Id.* The Court's Order presents (1) "controlling question[s] of law," for which there are (2) "substantial grounds for difference of opinion," and (3) "an immediate [resolution of those questions] may materially advance the ultimate termination of the litigation." *ICTSI Or., Inc. v. Int'l Longshore and Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).

## I.    THE ORDER HINGES ON TWO CONTROLLING QUESTIONS OF LAW

A controlling question of law exists where "resolution of [either] issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).

The Court held that Plaintiffs adequately pleaded scienter and falsity as to the sole remaining challenged statement. The Court's ruling impacts the pleading requirements for both elements:

- As to **scienter**, the Order presents several related questions: (1) whether holistic review can overcome an absence of particularized facts to support scienter, Order at 10–12, (2) whether a series of unparticularized allegations can create a strong inference of scienter, *id.*, and (3) if so, whether that creates new law effectively converting Section 10(b) to a strict liability claim.

- As to **falsity**, the Order raises the question whether a disclosure's falsity may be evaluated outside of the disclosure's textual context. *Id.* at 9–10.

These legal questions are controlling for three reasons.

First, because "reversal on appeal" as to either element "would require dismissal of the entire action," each question of law is controlling. *Mehedi v. View, Inc.*, 2024 WL 3748012, at *1 (N.D. Cal. Aug. 8, 2024) (granting certification as to whether a 10(b) plaintiff that cannot plead loss causation nonetheless has standing); *see also Advanced Analogic Techs., Inc. v. Linear Tech. Corp.*, 2006 WL 2850017, at *2 (N.D. Cal. Oct. 4, 2006) ("it is clear that [each] question of law is 'controlling'. . . ." if "reversal of the district court's order would terminate the action"). As Judge Chen observed when analyzing proximate cause in the context of securities claims about allegedly unlawful loan practices, uncertainty about the "contours" of each element of the claim presents a "dispositive question of law and therefore controlling." *City of Oakland v. Wells Fargo Bank, N.A.*, 2018 WL 7575537, at *1 (N.D. Cal. Sept. 5, 2018) (certification appropriate where "lower courts ha[d] issued varying opinions").

Second, the aforementioned questions have ramifications well beyond the present case. Securities litigation is often decided at the motion to dismiss. Lopez Decl., Ex. 1, at 19 ("From 2014 to 2021, 52% of [] federal [securities class action] filings have been dismissed"). This is the product of a deliberate statutory scheme, through which Congress imposed high pleading standards that every private securities action must meet at the pleading stage, and without the benefit of discovery. H.R. Conf. Rep. No. 104–369, at 37, 41 (1995) (imposing "stringent pleading requirements to curtail the filing of meritless lawsuits" and "[l]imits on abusive discovery to prevent 'fishing expedition' lawsuits"). The rationale is simple: the federal securities laws affect national securities markets and, therefore, require uniformity and predictability in application. *Id.* at 31–32, 41. Practitioners often review rulings on motions to dismiss to guide proactively the advice they give to issuers of securities. *See, e.g.*, Lopez Decl., Ex. 2, at 7–8 (concluding that a company's "risk factor language becomes more heavily borrowed by peer firms in the years immediately following a judicial assessment that the firm's risk factor language is adequate"). In short, motions to dismiss make or break much of the fabric of the federal securities laws.

Third, given Alphabet's size as one of the largest companies in history, any rulings affecting its securities implicate trillions of dollars in market capital, and are bound to be intensely scrutinized.

In similar circumstances involving securities cases, district courts have opted to certify legal questions for review by the Ninth Circuit. By certifying the Order's decision on these issues, this

DEFS' MOTION TO CERTIFY QUESTIONS                    -4-
FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

Court would join other district courts that have certified controlling questions of law concerning the elements of a Section 10(b) claim. *See In re Dynex Cap., Inc. Sec. Litig.*, 2006 WL 1517580, at *3 (S.D.N.Y. June 2, 2006) ("permissibility of pleading corporate or collective scienter"); *Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 992 (D. Nev. 2015) ("the correct test for loss causation in the Ninth Circuit"); *Republic Maximal LLC v. Romulus Cap. Partners II, LLC*, 2024 WL 3169798, at *7 (D. Mass. June 25, 2024) ("whether non-reliance clauses preclude sophisticated plaintiffs from establishing reliance").

## II.    THERE IS SUBSTANTIAL DIVISION AMONG DISTRICT COURTS ON EACH QUESTION

"[U]ncertainy" surrounding an issue "over which reasonable judges might differ . . . provides a credible basis for a difference of opinion." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts *have*, in fact, disagreed." *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014).

Substantial grounds for difference of opinion exist here. Several "district courts have reached differing conclusions" with respect to each of the two questions presented for certification. *Doe 1 v. GitHub, Inc.*, 2024 WL 4336532, at *2 (N.D. Cal. Sept. 27, 2024). We discuss each in turn.

### A.  District Courts Are Split in Their Interpretation of *Tellabs'* Scienter Pleading Requirements

The Court held that the SAC presented a viable theory of scienter because its claims, "[t]aken *together*," "provide sufficient *circumstantial evidence* to create a strong inference of scienter." Order at 10–12. This holding presents three related questions: **first**, whether holistic review can overcome an absence of particularized facts to support scienter; **second**, whether such allegations are sufficient to satisfy the requirement that an inference of scienter is at least as compelling as an alternative innocent explanation; **third**, whether the Court's ruling reduces the pleading requirements for scienter so much that it converts Section 10(b) into a strict liability claim.

#### 1.  Courts disagree as to whether holistic review can overlook the lack of particularized individual scienter allegations

In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, the Supreme Court required plaintiffs to "state *with particularity* facts giving rise to a strong inference" of scienter. 551 U.S. 308, 326 (2007). The Supreme Court instructed that such allegations should not be "scrutinize[d] in isolation," but instead

"assess[ed] . . . holistically." *Id*. The Ninth Circuit notes that "insufficient allegations [can] combine to create a strong inference of intentional conduct or deliberate recklessness." *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011) (citing *Tellabs*).

The Order appears to have interpreted *Tellabs* to mean that multiple allegations, each unsupported by particularized facts, may nevertheless overcome a lack of particularity when combined together. Order at 10–12. As shown below, the Court's reasoning is consistent with that of a handful of courts in this Circuit and others. But its "[O]rder is 'in tension' with a number of cases" that have declined to consider multiple unparticularized allegations holistically. *York Cnty. v. HP Inc.*, 2024 WL 4831889, at *2 (N.D. Cal. June 3, 2024) ("tension" between courts is sufficient grounds for difference of opinion). Such inconsistency warrants interlocutory review, precisely to provide the uniformity and predictability in the application of federal securities laws that Congress requires. *Batterton v. Dutra Grp.*, 2015 WL 13752889, at *2 (C.D. Cal. Feb. 6, 2015) (interlocutory appeal is appropriate where there is a "split in this circuit among the district courts regarding this issue" and "conflict both inside and outside the circuit"); H.R. Conf. Rep. No. 104–369, at 41.

***Division within the Ninth Circuit:*** Some district courts in this Circuit agree that combining generalized allegations about a topic "significant" to the corporation into "a broader picture" is enough to plead an inference of scienter. *E.g.*, *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1042–43 (N.D. Cal. 2016); *Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, 2024 WL 4353049, at *17–18 (N.D. Cal. Sept. 30, 2024) (defendants' congressional testimony "publicly and directly address[ing]" "issues . . . of significant prominence" "suggested that they had access to the relevant information"). There is even disagreement among panels of the Ninth Circuit on this issue. *Compare, e.g.*, *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, at 987 (9th Cir. 2008) (plaintiffs "allege[d] no particular facts indicating that [defendants] actually knew about stop-work orders," yet the court permitted an "infer[ence] that these high-level managers must have known about the orders"), *with Espy v. J2 Glob., Inc.*, 99 F.4th 527, 539 (9th Cir. 2024) (allegations that defendants "signed off on every acquisition" fell short of the "specific admissions" required to support "a strong inference that they had knowledge of the alleged omitted information about particular underperforming acquisitions"); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir.

DEFS' MOTION TO CERTIFY QUESTIONS                    -6-
FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

2009) (pleading scienter requires "specific admissions from top executives that they are involved in every detail").

But the weight of authority goes the other way. Just one week before the Court issued its Order, Judge Chun of the Western District of Washington rejected scienter allegations that closely paralleled the ones here. *Joyce v. Amazon.com*, 2025 WL 835054, at *10–11 (W.D. Wash. Mar. 17, 2025) (dismissing with prejudice). There, plaintiffs[1] urged the court to infer, from the fact that "Amazon prepared written testimony for Congress about third-party sellers," that Amazon's executives *must have* been "aware of practices intended to eliminate competition from third-party sellers." *Id.* The court declined. In the absence of particularized allegations "related to the allegedly anticompetitive conduct," the court rejected plaintiffs' scienter allegations—"even" when they were "considered holistically." *Id.* at 11, 14. The court reasoned that an "infer[ence] that Amazon would have collected relevant information and familiarized itself with the relevant evidence before submitting this testimony" was no substitute for particularized allegations explaining how "any Individual Defendants were exposed to facts that would have contradicted their later public statements." *Id.* at 11.

Two very large U.S. companies, both located within the Ninth Circuit, with trillions of dollars in market capitalization are now subject to different standards of conduct. Regardless of which district court was right or wrong, the law requires uniformity and that can only be obtained through interlocutory review.

Other district courts in this Circuit have reached conclusions similar to *Amazon*:

- *Sneed v. AcelRx Pharms., Inc.*, 2023 WL 4412164, at *10–11 (N.D. Cal. July 7, 2023) (defendants' alleged "aware[ness]" of information was "not enough to raise a strong inference that [defendants] intended to deceive investors" with respect to that information);

- *Huang v. Higgins*, 2019 WL 1245136, at *16 (N.D. Cal. Mar. 18, 2019) (allegations that defendants would consider certain conduct "improper" were insufficient to allege defendants' awareness that such conduct "occurred");

---

[1] One plaintiff in *Amazon* is also a plaintiff in this case and represented by the same counsel, Pomerantz LLP.

DEFS' MOTION TO CERTIFY QUESTIONS                    -7-
FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

- *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at \*16, \*21 (N.D. Cal. Dec. 18, 2017) (plaintiffs failed to support that "Defendants had actual access to information" where "allegations from confidential witnesses, internal emails or memoranda, or any contemporaneous facts that shed light on what was actually going on" were "[n]otably absent");

- *Bao v. SolarCity Corp.*, 2016 WL 54133, at \*4–5 (N.D. Cal. Jan. 5, 2016) (assertions that defendants were "involved in financial and accounting policy decisions" were "too conclusory, speculative, and/or vague to" support hypothetical allegations that they "*would have been aware* of" accounting changes);

- *Garcia v. J2 Glob., Inc.*, 2022 WL 22717936, at \*6 (C.D. Cal. Aug. 8, 2022) (allegations that defendants were "involved in . . . acquisition strategy," "signed off on every acquisition," and "received weekly performance reports" were too "vague regarding the [actual] information to which Defendants allegedly had access" to support a claim of scienter).

***Division in other circuits:*** Courts outside this Circuit have also reached conclusions on holistic review of scienter allegations that differ from this Court's, marking a potential circuit split, not just a district-level split:

- *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) (affirming dismissal because "stacking inference upon inference . . . [would] violate[] the [PSLRA]'s mandate that the strong inference of scienter be supported by *facts*, not *other inferences*");

- *Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 872 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012) (rejecting "circumstantial allegations pertaining to the Individual Defendants' knowledge" "in the absence of Second Circuit guidance" on how to perform a "holistic assessment" on those allegations);

- *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 383 (E.D.N.Y. 2013) (following the Second Circuit's affirmance in *Mechel* and dismissing scienter claims where "factual allegations [were] lacking," "even when viewing all of the allegations of scienter as a whole");

- *Eden Alpha CI LLP v. Polished.com Inc.*, 2025 WL 296998, at \*27 (E.D.N.Y. Jan. 24, 2025) (dismissing in the absence of facts "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged").

As Judge Chen reasoned in similar circumstances, interlocutory review is therefore warranted in light of the "significant number of courts (including at least one from this District) [that] have reached the opposite conclusion" from the Court's. *Somers v. Dig. Realty Tr., Inc.*, 2015 WL 4481987, at \*2 (N.D. Cal. July 22, 2015) (certifying questions regarding the scope of whistleblower protections).

### 2. Courts are split on whether unparticularized allegations can create an inference of scienter more compelling than an alternative innocent explanation

*Tellabs* further explains that "[t]he strength of an inference cannot be decided in a vacuum . . . the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs,* 551 U.S. at 324. Courts across the country agree that certification is warranted where judicial interpretations of a statute "create[] an environment ripe for confusion and divergent opinions." *Smith v. United HealthCare Servs.*, 2003 WL 22834865, at \*1 (D. Minn. Nov. 26, 2003) (certifying a question about restitution under ERISA).

The Order permitted a sequence of inferences, rather than particularized facts, to support a "strong inference of scienter," including: that the NBA included unmemorialized terms; that Mr. Pichai was involved in negotiating the NBA; that his involvement with negotiations would have alerted him to the purported terms, memorialized and unmemorialized; and, that he must have also been briefed in connection with his testimony before Congress on facts contradicting the challenged statement. Order at 9–11.

In contrast to the Order, other courts have held that allegations lacking particularized facts can not support an inference *more compelling* than alternative innocent explanations. *See*, *e.g.*, *Espy*, 99 F.4th at 539 (holistic review did not alter the conclusion that "[t]he *competing innocuous inferences*—that a company might want to keep a lid on lower-level employees speaking publicly about inside information or that the company did not want to invite unfounded speculation on individual acquisitions—are much more compelling"); *Colyer v. AcelRx Pharms., Inc.*, 2015 WL

7566809, at *14 (N.D. Cal. Nov. 25, 2015) ("opposing inference of nonfraudulent intent is equally if not more compelling" than allegations of scienter "[c]onsidered holistically").

Guidance from the Ninth Circuit would help to resolve the existing difference of opinion as to when a court may permit a "malicious inference" to overcome "any opposing innocent inference." *Ernst & Young*, 641 F.3d at 1095 (9th Cir. 2011) (citing *Tellabs*, 551 U.S. at 324); *see also Zucco*, 552 F.3d 991 (similar). The Ninth Circuit's direction is essential to "create[] a consistent standard through which to assess pleadings in 10(b) actions." *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).

### 3.   Ninth Circuit review is appropriate because the Court's decision on scienter creates new law

The Court's holding runs the risk of transforming Section 10(b) into a strict liability cause of action, similar to Section 11 of the Securities Act. *Compare*, *In re GenesisIntermedia, Inc. Sec. Litig.*, 2007 WL 1953475, at *12 (C.D. Cal. June 28, 2007) ("Rule 10b-5 and § 10(b) do not impose strict liability for fraudulent misrepresentations."), *with Hemmer Grp. v. SouthWest Water Co.*, 527 Fed. App'x 623, 625–26 (9th Cir. 2013) ("Section 11 is a strict liability statute and does not require fraudulent intent."). In contrast to Section 10(b), "scienter or fraudulent intent . . . are not elements of a § 11 claim." *Y-Gar Cap. LLC v. Credit Suisse Grp. AG*, 2020 WL 71163, at *7–8 (S.D.N.Y. Jan. 2, 2020) ("heightened scienter pleading requirements" . . . requiring . . . facts that give rise to a 'strong inference' of scienter" govern Section 10(b) and not Section 11 claims).

Here, rather than adhere to the requirement that scienter be pleaded as an element distinct from falsity, the Court permitted allegations of falsity to contribute to an inference of scienter. *Compare*, Order at 9–11, *with Zucco*, 552 F.3d 1004 (9th Cir. 2009) (rejecting an "invitation to undermine the PSLRA's distinct requirements for pleading falsity and scienter"). Specifically, the Court held that plaintiffs pleaded scienter for the same reason they pleaded falsity: that competition from Facebook presented an "existential threat," such that "drawing Facebook into Open Bidding was allegedly a top priority for Google in 2017." Order at 10–11. In so doing, the Court departs from existing interpretations of *Tellabs* that maintain the barrier between Section 10(b) and Section 11 claims. *In re SentinelOne, Inc. Sec. Litig.*, 2024 WL 3297150, at *7 (N.D. Cal. July 2, 2024) ("infer[ring] scienter

based on an inference that the *statements were false and misleading*" is not permitted). Ninth Circuit review is therefore warranted to avoid blurring the distinction between Section 10(b) and Section 11.

In summary, the Court's treatment of scienter pleading standards in this case—whether right or wrong—is at odds with considerable authority and creates a fissure in the federal securities regime. To restore certainty and uniformity, the Ninth Circuit should be afforded the opportunity to undertake an interlocutory review of the issues and clarify them.

**B. District Courts Are Divided Regarding the Application of the Ninth Circuit's Directive to Evaluate a Disclosure's Falsity in Context**

The Order's conclusions as to falsity also reflect "uncertainty" about an "issue over which reasonable judges might differ," *Reese*, 643 F.3d at 688, and "have, in fact, disagreed." *Rollins*, 2014 WL 6693891, at *3. The Order highlights disagreement as to how courts interpret the Ninth Circuit's directive that "context matters in determining the falsity of statements based on highly technical information." *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 837 (9th Cir. 2022).

**1. Courts inconsistently analyze how a challenged statement's context impacts falsity determination**

The Court held that Plaintiffs adequately pleaded that a technical statement about ad auction mechanics was false. Order at 10. The Court took a broad interpretation of that challenged statement, emphasizing the alleged ultimate outcome: a purported *correlation* between a channel and a winning bid resulting from the application of neutral auction rules. *See* Order at 9–10 (reasoning that plaintiffs alleged falsity because one channel was "significantly more *likely* to win the unified auction than" another). But the context in which Alphabet made that statement described the lack of any *causal* relationship between the algorithm's selection of the highest net bid and the channel submitting it. *See* MTD SAC at 10 (explaining that, in context, that statement described one step in a sequence of events in an ad auction). The discrepancy between the Court's interpretation of the challenged statement and the context in which it was made reflects a difference in opinion throughout this Circuit.

Indeed, other district courts within this Circuit have interpreted challenged statements in ways that depart from their initial context:

- *In re Wash. Mut., Inc. Sec.*, 694 F. Supp. 2d 1192, 1209 (W.D. Wash. 2009) (declining to "examine the 'context' of each of the statements Killinger made to find that they were not misleading or false");

- *Luo v. Spectrum Pharms., Inc.*, 2024 WL 4443323, at *7 (D. Nev. Oct. 7, 2024) (accepting plaintiff's reading to conclude that challenged statements "were misleading, even in context").

By contrast, other courts in this Circuit give context a central role when analyzing the falsity of a challenged statement:

- *Plumbers & Steamfitters Loc. 60 Pension Tr. v. Meta Platforms, Inc.*, 2024 WL 4251896 at *20 (N.D. Cal. Sept. 17, 2024) (defendants' statements "must be analyzed with the greater 'context';" it would "strain[] credulity" to think "reasonable investors would interpret" statements made in a specific context to carry a meaning beyond that context);

- *Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, 2024 WL 3447524, at *5 (N.D. Cal. July 16, 2024) (allegations that challenged statements misled investors about a new program's impact on *prospective* clients failed to plead falsity when, considered in context, those statements addressed the impact on *existing* clients);

- *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1126 (N.D. Cal. 2020) ("Plaintiff's theory of falsity" was "illogical" and "implausible as a matter of law" because it interpreted a narrowly-tailored "respon[se] to a [specific] question" as a "blanket statement about the state of competition");

- *Welgus v. TriNet Group., Inc.*, 2017 WL 6466264 at *32 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) (rejecting plaintiffs' attempts to "take[] pieces of Defendants' 'admissions' out of context . . . [r]ather than plead specific facts that render Defendants' representations false or misleading").

The Ninth Circuit itself is clear that a plaintiff pleads falsity only through particularized facts considering the alleged misstatement "fairly and in context." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017). Yet inconsistency among district courts persists, supporting certification. *See Reese*, 643 F.3d at 688.

### 2. Courts differ in their consideration of market understanding to clarify a challenged statement's context

At the motion to dismiss stage, the understanding of key market participants is often a valuable indicator of what a disclosure conveys to the public. *See Yaron v. Intersect ENT, Inc.*, 2020 WL

DEFS' MOTION TO CERTIFY QUESTIONS                    -12-
FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

6750568, at *4 (N.D. Cal. June 19, 2020) (considering analyst reports "to determine the information available to the market" and what the "market understood").

Here, stock drops could only have caused the alleged loss had the market shared the Court's broad understanding of the challenged statement, and then learned new information contradicting that understanding. Despite the extensive media coverage of Google's activities, there is no evidence that either market analysts or the media interpreted the challenged statement to mean anything beyond a description of a step in a unified auction—either before or after any alleged corrective disclosure. *See, e.g.*, Lopez Decl., Ex. 3 (market analysts did not consider Q3 2020 Congressional testimony a factor in favorable Alphabet rating); Lopez Decl., Ex. 4 (extensive media coverage of Congressional testimony by multiple tech CEOs, including Mr. Pichai, did not attribute broad meaning to (nor even address) the challenged statement).

Tech blogs likewise registered no change in their understanding of unified auction mechanics and strategies for winning auctions between the making of the challenged statement and the alleged corrective disclosure. For example, a digital marketing analytics blog described "10 current bidding strategies" for Google Ads users in October 2020, with no indication that new information about the platform had emerged the previous month. *See generally* Lopez Decl., Ex. 5; *see also* Lopez Decl., Ex. 6 (describing Google Ads features released in 2020 and 2021, including cross-channel options, with no mention of the possibility that different channels are treated differently in a unified auction); Lopez Decl., Ex. 7 (published well after the alleged "revelation" of the challenged statement's falsity, yet still expressing an understanding of unified auction mechanics consistent with the challenged statement's).[2]

Pleading the market's reaction to a challenged statement, and to a disclosure allegedly correcting it, is essential to a securities fraud claim. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (plaintiffs did not plead a securities fraud claim where they "failed to" allege market reaction "after the [alleged] truth became known"). The absence of any indication that market participants

---

[2] The lack of any recognition within the tech community that the challenged statement allegedly was intended to comment broadly on the fairness of the unified auction is especially notable given tech culture's strong foundation of open source dialogue and forum-based troubleshooting. *See* Lopez Decl., Ex. 8 (discussing the spurring effect of Big Tech's open source approach to innovation even where it poses a risk to those companies' competitive advantage).

allegedly digesting the challenged statement shared the Court's broad reading of it further underscores the need for a clear directive from the Ninth Circuit on the types of context courts should consider.

### 3. Without clarity about how a statement's surrounding context will be considered in litigation, companies will not know how to draft public disclosures

The Court's broad interpretation of a narrow technical statement has the potential to disincentivize clear disclosures of specific facts or processes in favor of more generalized, less detailed information. *Supra* 11. Passed in an environment in which "company's counsel advis[ed their] clients to say as little as possible," the PSLRA was designed to counter exactly such practices. S. Rep. No. 104-98 (104th Cong.) at 16 (describing unfavorably the "'legions of lawyers [needed to] scrub required filings to ensure that disclosures are as milquetoast as possible, so as to provide no grist for the litigation mill'"). A shift in how companies perceive the risk of liability of public statements could undermine the PSLRA's legislative aim of promoting "one of the underpinnings of the Federal securities laws—disclosure to investors." *Id.* at 9.

If there is to be a change in the federal securities laws, then it would benefit from immediate appellate review. As now Chief-Judge Brodie of the Eastern District of New York has explained, certification is especially well-suited to cases with the potential for "broad-reaching ramifications" on an entire industry. *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 277 (E.D.N.Y. 2021) (certifying because a question about proper accounting for Medicare or Medicaid funds "ha[d] broad-reaching implications for medical facilities in the Second Circuit, and indeed, nationwide"); *see also Kinkead v. Humana, Inc.*, 2016 WL 9453808, at *3 (D. Conn. Oct. 13, 2016) ("consider the system-wide costs and benefits of allowing . . . appeal" of the scope of overtime protections under the Fair Labor Standards Act).

That is especially true when, as here, the chances of appellate review after trial are slim—99% of securities class actions are either dismissed or settle. *Supra* 2. If the Court does not certify the questions for Ninth Circuit review now, the opportunity will be lost, and fragmentation will be further amplified, contrary to the statutory goals. 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3930 (3d ed. 1998) (courts should consider "the opportunity to achieve appellate resolution of an issue important to other cases" in deciding whether to certify a question for interlocutory appeal); *see also See Facebook Inc. v. Namecheap Inc.*, 2021 WL 961771, at *2–3 (D.

Ariz. Mar. 15, 2021) (courts should certify an interlocutory appeal where it would advance "resolution of [an] issue" that "impact[s] . . . other cases").

## III.    AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE TERMINATION OF THIS CASE

"[R]esolution of a question materially advances the termination of litigation if it 'facilitate[s] disposition of the action by getting a final decision on a controlling legal issue sooner.'" *Finder v. Leprino Foods Co.*, 2016 WL 4095833, at *4 (E.D. Cal. Aug. 1, 2016). Interlocutory review is appropriate because "the Court and the parties w[ould] benefit from definitive guidance from the Ninth Circuit at the outset, before time and resources are invested." *GitHub*, 2024 WL 4336532, at *2.

Reversal by the Ninth Circuit on either question presented would end this case, because Plaintiffs' failure to plead any element of their claim "is an independent basis" for dismissal. *Apollo Grp.*, 774 F.3d at 607. A contrary appellate decision as to *either* scienter or falsity would thus do more than just save litigation expenses—it would dispose of this litigation altogether. *Cf. Smilovits*, 119 F. Supp. 3d at 992 ("no[] [expensive expert discovery] will be necessary if the Ninth Circuit concludes that *Metzler* and its progeny represent the correct loss causation test"). "[A]llowing an interlocutory appeal" would save both the Court's and parties' resources by "avoid[ing] protracted and expensive litigation." *GitHub*, 2024 WL 4336532, at *1 (quoting *Cement Antitrust Litig.*, 673 F.2d at 1027).[3]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court certify both questions presented for interlocutory review.

Dated: May 12, 2025

FRESHFIELDS US LLP

By: */s/ Boris Feldman*
Boris Feldman

*Attorneys for Defendants*

---

[3] In the alternative, Defendants respectfully move for reconsideration of the Order. Pursuant to Local Rule 7–9(b), this Court may revisit its Order to consider whether it "fail[ed] . . . to consider material facts or dispositive legal arguments that were presented to the Court before issuance of such order." *Stebbins v. Rebolo*, 2023 WL 2699982, at *1 (N.D. Cal. Mar. 28, 2023) (citing N.D. Cal. Civ. L.R. 7–9(b)(1)–(3)). Defendants request that the Court reconsider its holdings on Mr. Pichai's alleged misstatement, Order at 8–10, and related scienter, *id.* at 9–12, for the reasons set forth in Defendant's Motion to Dismiss the SAC. ECF No. 93 (November 8, 2024).