# EXHIBIT 1



# Securities Class Action Filings

**2024 YEAR IN REVIEW**

CORNERSTONE RESEARCH

# Table of Contents

| | |
|---|---|
| Executive Summary | 1 |
| Key Trends in Federal and State Filings | 2 |
| Featured: Annual Rank of Filing Intensity | 3 |
| Combined Federal and State Filing Activity | 4 |
| Summary of Core Federal Trend Filings | 5 |
| Status of Core Federal Filings by Trend Category | 6 |
| Market Capitalization Losses for Federal and State Filings | 8 |
| Mega Filings | 11 |
| Classification of Federal Complaints | 12 |
| U.S. Exchange-Listed Companies | 13 |
| Heat Maps: S&P 500 Securities Litigation™ for Federal Core Filings | 14 |
| Status of Core Federal Securities Class Action Filings | 16 |
| 1933 Act Filings in State Courts | 17 |
| Dollar Loss on Offered Shares™ (DLOS Index™) in Federal Section 11–Only and State 1933 Act Filings | 18 |
| IPO Activity and Federal and State 1933 Act Filings | 19 |
| Lag Between IPO and Federal Section 11 and State 1933 Act Filings | 20 |
| Non-U.S. Core Federal Filings | 21 |
| Industry Comparison of Core Filings | 22 |
| Core Federal Filings by Circuit | 23 |
| Filings Referencing Short-Seller Reports by Plaintiff Counsel | 24 |
| New Developments | 25 |
| Glossary | 26 |
| Additional Notes to Figures | 28 |
| Appendices | 30 |
| Research Sample | 35 |

# Table of Figures

Figure 1: Federal and State Class Action Filings Summary    1

Figure 2: Annual Rank of Measurements of Federal and State Filing Intensity    3

Figure 3: Federal Filings and State 1933 Act Filings by Venue    4

Figure 4: Summary of Trend Filings—Core Federal Filings    5

Figure 5: Status of Core Federal Artificial Intelligence–Related Filings    6

Figure 6: Status of Core Federal COVID-19-Related Filings    7

Figure 7: Disclosure Dollar Loss Index® (DDL Index®)    8

Figure 8: Median Disclosure Dollar Loss    9

Figure 9: Maximum Dollar Loss Index® (MDL Index®)    10

Figure 10: Mega Filings    11

Figure 11: Allegations Box Score—Core Federal Filings    12

Figure 12: Percentage of U.S. Exchange-Listed Companies Subject to Federal or State Filings    13

Figure 13: Heat Maps of S&P 500 Securities Litigation™ Percentage of Companies Subject to Core Federal Filings    14

Figure 14: Heat Maps of S&P 500 Securities Litigation™ Percentage of Market Capitalization Subject to Core Federal Filings    15

Figure 15: Status of Filings by Year—Core Federal Filings    16

Figure 16: State 1933 Act Filings by State    17

Figure 17: Dollar Loss on Offered Shares™ (DLOS Index™) for Federal Section 11–Only and State 1933 Act Filings    18

Figure 18: Number of IPOs on Major U.S. Exchanges and Number of Filings of Federal and State 1933 Act Claims    19

Figure 19: Lag Between IPO and Federal Section 11 and State 1933 Act Filings    20

Figure 20: Annual Number of Class Action Filings by Location of Headquarters—Core Federal Filings    21

Figure 21: Filings by Industry—Core Filings    22

Figure 22: Filings by Circuit—Core Federal Filings    23

Figure 23: Core Federal Filings Referencing Short-Seller Reports by Plaintiff Counsel    24

Appendix 1: Basic Filings Metrics    30

Appendix 2A: S&P 500 Securities Litigation—Percentage of S&P 500 Companies Subject to Core Federal Filings    31

Appendix 2B: S&P 500 Securities Litigation—Percentage of Market Capitalization of S&P 500 Companies Subject to Core Federal Filings    31

Appendix 3: M&A Federal Filings Overview    32

Appendix 4: Status by Year—Core Federal Filings    32

Appendix 5: Filings by Industry—Core Filings    33

Appendix 6: Filings by Circuit—Core Federal Filings    34

Appendix 7: Type of Security Issuance Underlying Federal Section 11 and State 1933 Act Filings    34

# Executive Summary

In 2024, overall filing volume increased to 225 filings from 215 in 2023. The number of "core" filings—those excluding M&A filings—was 14% higher than the historical average and increased relative to 2023. The size of core filings when measured by Disclosure Dollar Loss (DDL) rose 23%, but filing size when measured by Maximum Dollar Loss (MDL) fell 52%.[1]

The number of 1933 Act filings in state courts continued to decline in 2024, falling to the lowest level since 2014. There were 21 combined federal and state 1933 Act filings in 2024, down 34% relative to 2023 and down 67% relative to 2022.

## Number and Size of Filings

- Plaintiffs filed 225 **new securities class action filings** (filings) in 2024, despite a continued decline year-over-year in federal and state filings with **claims under the Securities Act of 1933** (1933 Act). (page 4)

- The **DDL Index** rose from $355 billion in 2023 to $438 billion in 2024, far above the historical annual average of $237 billion. The **MDL Index** fell sharply from $3.3 trillion in 2023 to $1.6 trillion in 2024, a decline of nearly 52%. (pages 8, 10, and 11)

- The number of operating company initial public offerings (**IPOs**) increased by 33% in 2024, but **filings with 1933 Act claims** decreased by 34%, likely driven by decreased operating company IPO activity over the last three years and favorable overall stock market performance. (pages 4 and 19)

*In 2024, the number of core filings increased by 5% and total DDL increased by 23%, but MDL decreased by 52%.*

Figure 1: **Federal and State Class Action Filings Summary**

(Dollars in 2024 billions)

| | Annual (1997–2023) | | | 2023 | 2024 |
| --- | --- | --- | --- | --- | --- |
| | Average | Maximum | Minimum | | |
| Class Action Filings | 227 | 427 | 120 | 215 | 225 |
| *Core Filings* | *193* | *267* | *120* | *209* | *220* |
| Disclosure Dollar Loss (DDL) | $237 | $636 | $74 | $355 | $438 |
| Maximum Dollar Loss (MDL) | $1,198 | $3,582 | $287 | $3,340 | $1,618 |

Note: This figure presents data on a combined federal and state filings basis. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–6, 11, 13–17, 20, and 22–23, or Appendices 2–7. See Additional Notes to Figures for Counts and Totals Methodology.

[1] Reported MDL, DDL, and Dollar Loss on Offered Shares (DLOS) numbers are inflation-adjusted to 2024 dollars and will not match prior reports. See Glossary for definitions of MDL, DDL, and DLOS.

# Key Trends in Federal and State Filings

In 2024, tracking of the Artificial Intelligence (AI) trend category began, with 15 filings in 2024 up from seven such filings in 2023. The number of COVID-19-related filings also rose, while the number of special purpose acquisition company (SPAC) and cryptocurrency-related filings fell. DDL increased by 23% to the third-highest total on record, while MDL fell by 52%.

## Core Filings

- The number of filings in 2024 increased from 2023 while **federal and state 1933 Act filings** continued to decline. (page 4)

- There were 220 **core filings** in federal and state courts in 2024, an increase from 2023. (page 4)

- In 2024, **federal Section 10(b)–only filings** increased to 198 from 177 in 2023, which is the highest level on record. (page 4)

## Trend Filings

- The number of **AI-related filings** more than doubled, from seven in 2023 to 15 in 2024. (page 5)

- The number of **COVID-19-related filings** increased by 36%, from 11 in 2023 to 15 in 2024, but was still below the high of 20 filings in 2022. (page 5)

- The number of filings related to **SPACs**, **cybersecurity**, and **cryptocurrency** fell in 2024. (page 5)

## DDL Index® and MDL Index®

- The **DDL Index®** increased by 23% from 2023 to 2024, reaching the third-highest total on record. (page 8)

- The **MDL Index®** fell to $1.6 trillion, a 52% decrease from 2023. (page 10)

## Mega Filings

- The count of **mega DDL filings** in 2024 was the highest on record, and the total index value of **mega DDL filings** was the third-highest on record. (page 11)

- There were 35 **mega MDL filings** in 2024 with a total mega MDL of $1.3 trillion, a 58% decrease from $3.0 trillion in 2023. (page 11)

## U.S. Issuers

- The likelihood of **core filings** targeting **U.S. exchange-listed companies** increased from 3.2% in 2023 to 3.9% in 2024 in part due to the higher number of filings but also due to fewer companies listed on U.S. exchanges. (page 13)

- The likelihood of an **S&P 500 company** being the subject of a core federal filing fell from 7.1% in 2023 to 6.1% in 2024. (pages 14–15)

## By Industry

- Of the 15 **AI-related filings** in 2024, eight were in the **Technology sector**, four were in the **Communications sector**, two were in the **Industrial sector**, and one filing was in the **Consumer Non-Cyclical sector**. (page 22)

- The number of filings in the **Consumer Non-Cyclical sector** increased from 54 in 2023 to 67 in 2024, which was largely driven by an increase in filings against **Biotechnology companies** in 2024 H2. (page 22)

## By Circuit

- Core federal filings in the **Second Circuit** increased by 31%, from 49 in 2023 to 64 in 2024, whereas core federal filings in the **Ninth Circuit** only increased by 5%, from 66 in 2023 to 69 in 2024. (page 23)

- Core federal filings in the **Ninth Circuit** remained relatively stable in 2024 compared to 2023. While total MDL in the **Ninth Circuit** decreased significantly, total DDL in the **Ninth Circuit** increased significantly from 2023 to 2024. (page 23)

# Featured: Annual Rank of Filing Intensity

- In 2024, total core filing activity increased relative to the last three years, and total DDL rose by 23% relative to 2023, largely driven by an increase in the number of mega DDL filings. See Figure 10 for more details on mega filings.

- The MDL Index fell to $1.6 trillion in 2024, decreasing by 52% from $3.3 trillion in 2023.

.......................................................

*The number of core filings in 2024 increased relative to the previous three years, and total DDL was the third-highest on record, largely driven by an increase in the number of mega DDL filings.*

.......................................................

- The number of 1933 Act filings in state and federal courts declined by 34% relative to 2023 to the lowest number since 2013, continuing its decline from 2022.

- The number of M&A filings decreased 17% to the lowest level on record, from six in 2023 to five in 2024.

- The rate of filings against U.S. exchange-listed companies increased in 2024.

- The percentage of S&P 500 companies subject to a core filing decreased from 7.1% in 2023 to 6.1% in 2024, but still remained high relative to 2020–2022 levels.

Figure 2: Annual Rank of Measurements of Federal and State Filing Intensity

| | 2022 | 2023 | 2024 |
|---|---|---|---|
| **Number of Total Filings** | 16th | 14th | 8th |
| Core Filings | 14th | 11th | 8th |
| M&A Filings | 13th | 15th | 16th |
| **Size of Core Filings** | | | |
| Disclosure Dollar Loss | 1st | 5th | 3rd |
| Maximum Dollar Loss | 4th | 2nd | 7th |
| **Percentage of U.S. Exchange-Listed Companies Sued** | | | |
| Total Filings | 16th | 13th | 8th |
| Core Filings | 17th | 12th | 6th |
| **Percentage of S&P 500 Companies Subject to Core Federal Filings** | 17th | 6th | 10th |

Note: This figure presents combined federal and state data in the rankings in all categories beginning in 2010, except the Percentage of S&P 500 Companies Subject to Core Federal Filings, which excludes state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, the filing counts determining the rankings in this figure may not match those in Figures 4–6, 11, 13–17, 20, and 22–23, or Appendices 2–7. Rankings cover 1997 through 2024 with the exceptions of M&A filings, which have been tracked as a separate category since 2009, and analysis of the litigation likelihood of S&P 500 companies, which began in 2001. M&A filings are securities class actions filed in federal courts that have Section 14 claims, but no Rule 10b-5, Section 11, or Section 12(a) claims, and involve merger and acquisition transactions. Core filings are all state 1933 Act class actions and all federal securities class actions excluding those defined as M&A filings.

# Combined Federal and State Filing Activity

- Plaintiffs filed 225 new securities class actions in federal and state courts in 2024, an increase from 2023 (215 filings) and 2022 (208 filings).

- There were 21 combined federal and state 1933 Act filings in 2024, down 34% relative to 2023 (32 filings) and down 67% relative to 2022 (64 filings).

*Relative to 2022–2023, the total number of filings increased while combined federal and state 1933 Act filings continued to decline.*

- In 2024, federal Section 10(b)–only filings increased to 198 from 177 in 2023, which is the highest level on record.

- The number of state court–only filings decreased by one, from four filings in 2023 to three filings in 2024.

- Federal court–only filings comprised 81% of federal and state 1933 Act filings in 2024. The number of parallel filings decreased to a 10-year low of only one filing, down from two filings in both 2022 and 2023.

- Federal M&A filing activity since 2022 remained low, with only five filings in 2024, matching similar totals in 2023 (six) and 2022 (seven).

Figure 3: Federal Filings and State 1933 Act Filings by Venue 2015–2024



| Federal and State 1933 Act Filings | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
| Federal Courts Only | 21 | 12 | 13 | 19 | 16 | 25 | 25 | 51 | 26 | 17 |
| State Courts Only | 11 | 13 | 3 | 16 | 28 | 14 | 7 | 11 | 4 | 3 |
| Parallel Filings | 6 | 14 | 13 | 16 | 25 | 8 | 5 | 2 | 2 | 1 |
| Total | 38 | 39 | 29 | 51 | 69 | 47 | 37 | 64 | 32 | 21 |

Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Bloomberg Law; Institutional Shareholder Services' Securities Class Action Services (ISS' SCAS)

Note: This figure presents combined federal and state data. 1933 Act filings include federal and state filings with Section 11 and/or Section 12 allegations. Federal Section 10(b)–only filings may have non–Section 11 or non–Section 12 allegations. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–6, 11, 13–17, 20, and 22–23, or Appendices 2–7. See Additional Notes to Figures for more detailed information and Counts and Totals Methodology.

# Summary of Core Federal Trend Filings

This figure highlights recent trend categories that have appeared in core federal filing activity. See the Glossary for the definition of each trend category.

- In 2024 H1, tracking of filings with allegations related to AI began. While AI-related filings are not new, the growing prominence of AI in the business models of many companies may lead to an increase of such filings in the future.

- The number of AI-related filings more than doubled, from seven in 2023 to 15 in 2024.

- The number of COVID-19-related filings increased by 36% from 11 in 2023 to 15 in 2024, but was still below the high of 20 filings in 2022.

- The number of filings in the top three trend categories—Artificial Intelligence (15 filings), COVID-19 (15 filings), and SPAC (11 filings)—comprised nearly 20% of core federal filings in 2024.

*The number of filings related to AI surged while filings related to SPACs, cybersecurity, and cryptocurrency fell.*

- The number of core SPAC filings fell by 59%, from 27 in 2023 to 11 in 2024—one-third of the peak of 33 core SPAC filings in 2021.

- The number of cryptocurrency-related filings fell by more than 50%, from 15 in 2023 to seven in 2024—about one-third of the peak of 23 filings in 2022.

- There were two cybersecurity-related filings in 2024, down from three in 2023. The number of cybersecurity filings has fallen each year since the peak of seven in 2021.

Figure 4: Summary of Trend Filings—Core Federal Filings 2020–2024





Note: All trend categories only count core federal filings. As such, this figure excludes M&A SPAC filings. From 2020 through 2023 there was one such filing per year and in 2024 there were none. Some filings may be included in more than one trend category. See Additional Notes to Figures for trend category definitions, more detailed information, and Counts and Totals Methodology.

# Status of Core Federal Filings by Trend Category

This analysis compares filing groups to determine whether filing outcomes of core federal artificial intelligence and COVID-19-related trend category filings differ from outcomes of other types of core federal filings.

The figure below compares the outcomes as of 2024 of AI-related filings that were filed in 2020–2023 to the outcomes of all other core federal filings in the same period. As each cohort ages, a larger percentage of filings are resolved—whether through dismissal, settlement, remand, or by trial.

*For each cohort of filings since 2020, AI-related filings have been dismissed at a lower rate.*

- AI-related filings in cohorts from 2020 to 2022 were settled at slightly higher rates than all other core federal filings.

- AI-related filings in 2020–2023 were resolved at a lower rate than all other core federal filings.

Figure 5: Status of Core Federal Artificial Intelligence–Related Filings 2020–2023

Legend: Dismissed, Settled, Remanded, Continuing, Trial

**2020–2021**

AI Filings: Dismissed 38%, Settled 38%, Continuing 23%
All Others: Dismissed 54%, Settled 31%, Continuing 14%

**2022**

AI Filings: Dismissed 17%, Settled 17%, Continuing 67%
All Others: Dismissed 36%, Settled 16%, Continuing 47%

**2023**

AI Filings: Dismissed 14%, Continuing 86%
All Others: Dismissed 20%, Settled 6%, Continuing 74%

Note: Percentages may not sum to 100% due to rounding. Because a high percentage of lawsuits in 2024 are ongoing, this figure excludes the 2024 cohort.

Status of Core Federal Filings by Trend Category (continued)

This figure compares the outcomes of core federal COVID-19-related filings to the outcomes of all other core federal filings from 2021 to 2023.

- Early outcomes for the 2023 COVID-19-related filing cohort indicate a much higher dismissal rate than for all other core federal filings.

- No COVID-19-related filings in the 2023 cohort have settled as of the end of 2024, compared to 6% of all other core federal filings in the 2023 cohort.

- On average, COVID-19-related filings have had higher resolution rates than all other core federal filings

*For each cohort from 2021 to 2023, COVID-19-related filings have been dismissed at a higher rate than all other core federal filings.*

Figure 6: Status of Core Federal COVID-19-Related Filings 2021–2023



Note: Percentages may not sum to 100% due to rounding. Because a high percentage of lawsuits in 2024 are ongoing, this figure excludes the 2024 cohort.

# Market Capitalization Losses for Federal and State Filings

**Disclosure Dollar Loss Index® (DDL Index®)**

This index measures the aggregate annual DDL for all federal and state filings. DDL is the dollar-value change in the defendant firm's market capitalization between the trading day immediately preceding the end of the class period and the trading day immediately following the end of the class period. DDL is inflation-adjusted to 2024 dollars. See the Glossary for additional discussion on market capitalization losses and DDL.

*The DDL Index increased by 23% from 2023 to 2024, reaching the third-highest total on record.*

- DDL levels were relatively low from 2010 to 2017, but then surged in 2018. Since then, DDL levels have remained elevated despite decreasing core filing activity. This is likely driven by the market capitalization of companies increasing on average.

- In 2024, the DDL Index increased by 23% relative to 2023, with median DDL increasing by 12% (see Figure 8). See Appendix 1 for DDL totals, averages, and medians from 1997 to 2024.

Figure 7: Disclosure Dollar Loss Index® (DDL Index®)
2010–2024

(Dollars in 2024 billions)



Note: This figure begins including DDL associated with state 1933 Act filings in 2010. As a result, this figure's DDL Index will not match those in Appendices 6–7, which summarize federal filings. DDL associated with parallel class actions is only counted once. There are core filings for which data are not available to estimate DDL accurately; these filings are excluded from the DDL analysis. The numbers shown in this figure have been inflation-adjusted to 2024 dollars and will not match prior reports. See Additional Notes to Figures for Counts and Totals Methodology.

Market Capitalization Losses for Federal and State Filings (continued)

- As shown by the gold line in the figure below, from 2014 to 2023, the typical (i.e., median) percentage stock price drop at the end of the class period had oscillated between about 15% and 20% of the predisclosure market capitalization. That measure was 21% in 2024, the highest percentage since 2013.

- In 2024, for the largest issuers—those with market capitalization above $10 billion—median DDL as a percentage of predisclosure market capitalization was nearly 13%, lower than the median of all issuers (21%).

*Median DDL in 2024 grew by 12% from its 2023 measure and is the second-highest median DDL in the past 15 years.*

Figure 8: Median Disclosure Dollar Loss
2010–2024

(Dollars in 2024 millions)



Note: This figure begins including DDL associated with state 1933 Act filings in 2010. As a result, this figure's DDL Index will not match those in Appendices 6–7, which summarize federal filings. DDL associated with parallel class actions is only counted once in this figure. There are core filings for which data are not available to estimate DDL accurately; these filings are excluded from the DDL analysis. The numbers shown in this figure have been inflation-adjusted to 2024 dollars and will not match prior reports. See Additional Notes to Figures for Counts and Totals Methodology.

Market Capitalization Losses for Federal and State Filings (continued)

**Maximum Dollar Loss Index® (MDL Index®)**

This index measures the aggregate annual MDL for all federal and state core filings. MDL is the dollar-value change in the defendant firm's market capitalization from the trading day with the highest market capitalization during the class period to the trading day immediately following the end of the class period. MDL is inflation-adjusted to 2024 dollars. See the Glossary for additional discussion on market capitalization losses and MDL.

- The MDL Index fell to $1.6 trillion in 2024, a 52% decrease from 2023. See Appendix 1 for MDL totals, averages, and medians from 1997 to 2024.

- The substantial divergence between MDL and DDL in 2024 is due to the difference in methodology; DDL captures the market capitalization losses at the end of the class period, whereas MDL captures the market capitalization difference between the highest point during the class period and the end of the class period.

- While mega MDL filings comprised nearly 80% of total MDL in 2024, the total MDL from mega MDL filings decreased substantially from 2023 to 2024, driving the significant decrease in total MDL. See Figure 10.

- This was the seventh consecutive year in which the MDL Index exceeded $1 trillion. See Appendix 1.

*The MDL Index fell to $1.6 trillion, a 52% decrease from 2023.*

Figure 9: Maximum Dollar Loss Index® (MDL Index®)
2010–2024

(Dollars in 2024 billions)



Note: This figure begins including MDL associated with state 1933 Act filings in 2010. As a result, this figure's MDL Index will not match those in Appendices 6–7, which summarize federal filings. MDL associated with parallel class actions is only counted once in this figure. There are core filings for which data are not available to estimate MDL accurately; these filings are excluded from the MDL analysis. The numbers shown in this figure have been inflation-adjusted to 2024 dollars and will not match prior reports. See Additional Notes to Figures for Counts and Totals Methodology.

0013

# Mega Filings

Mega DDL filings have a DDL of at least $5 billion. Mega MDL filings have an MDL of at least $10 billion. MDL and DDL are inflation-adjusted to 2024 dollars.

- There were 35 mega MDL filings in 2024 with a total mega MDL of $1.3 trillion, a 58% decrease from $3.0 trillion in 2023 but still 34% above the 1997–2023 annual average.

- There were 27 mega DDL filings in 2024, up from 17 in 2023. Total mega DDL increased 44% from $227 billion to $328 billion.

- The percentage of total DDL represented by mega filings rose from 64% in 2023 to 75% in 2024, well above the 1997–2023 average.

- Mega filings against companies in the Consumer Non-Cyclical sector made up 27% of both mega DDL filings and mega MDL filings, and 31% and 20% of total mega DDL and total mega MDL, respectively.

- Mega filings against companies in the Technology sector made up 27% of mega DDL filings and 24% of mega MDL filings, and 22% of both total mega DDL and total mega MDL.

- AI-related mega filings made up 12% of mega DDL filings and 9% of mega MDL filings, and 15% of total mega DDL and 8% of total mega MDL.

................................................................

*The count of mega DDL filings in 2024 was the highest on record, and the total index value of mega DDL filings was the third-highest on record.*

................................................................

Figure 10: Mega Filings

| | Average 1997–2023 | 2022 | 2023 | 2024 |
|---|---|---|---|---|
| **Mega Disclosure Dollar Loss (DDL) Filings** | | | | |
| Mega DDL Filings | 9 | 18 | 17 | 27 |
| DDL ($ Billions) | $152 | $544 | $227 | $328 |
| Percentage of Total DDL | 64% | 86% | 64% | 75% |
| **Mega Maximum Dollar Loss (MDL) Filings** | | | | |
| Mega MDL Filings | 22 | 38 | 45 | 35 |
| MDL ($ Billions) | $956 | $2,301 | $3,019 | $1,281 |
| Percentage of Total MDL | 80% | 88% | 90% | 79% |

Note: This figure begins including DDL and MDL associated with state 1933 Act filings in 2010. As a result, this figure's DDL and MDL Index will not match those in Appendices 6–7, which summarize federal filings. DDL associated with parallel class actions is only counted once in this figure. There are filings for which data are not available to estimate DDL and MDL accurately; these filings are excluded from the DDL and MDL analysis and counts. Mega DDL filings have a disclosure dollar loss of at least $5 billion. Mega MDL filings have a maximum dollar loss of at least $10 billion. The numbers shown in this figure have been inflation-adjusted to 2024 dollars and will not match prior reports. Sectors are based on the Bloomberg Industry Classification System. See Additional Notes to Figures for Counts and Totals Methodology.

# Classification of Federal Complaints

- The share of core federal filings with Rule 10b-5 claims increased from 94% in 2023 to 95% in 2024, the highest level in more than five years.

- The share of core federal filings with 1933 Act claims continued to fall, decreasing from 14% in 2023 to a five-year low of 9% in 2024.

- The share of core federal filings with allegations of misrepresentations in financial documents increased from 90% in 2023 to 94% in 2024.

- The share of core federal filings with announced restatements decreased from 10% in 2023 to 6% in 2024.

*The share of core federal filings with Rule 10b-5 claims rose to the highest level in more than five years.*

- The share of core federal filings with allegations of internal control weaknesses and announced internal control weaknesses decreased from 17% and 11% in 2023 to 12% and 7% in 2024, respectively.

- The share of core federal filings with false forward-looking statements increased from 46% in 2023 to 53% in 2024.

Figure 11: Allegations Box Score—Core Federal Filings

| | Percentage of Filings | | | | |
|---|---|---|---|---|---|
| | **2020** | **2021** | **2022** | **2023** | **2024** |
| **Allegations in Core Federal Filings** | | | | | |
| Rule 10b-5 Claims | 85% | 91% | 83% | 94% | 95% |
| 1933 Act Claims | 16% | 15% | 28% | 14% | 9% |
| Misrepresentations in Financial Documents | 90% | 90% | 89% | 90% | 94% |
| False Forward-Looking Statements | 43% | 43% | 39% | 46% | 53% |
| Trading by Company Insiders | 4% | 6% | 2% | 2% | 2% |
| Accounting Violations | 27% | 22% | 24% | 23% | 24% |
| Announced Restatements | 5% | 3% | 9% | 10% | 6% |
| Internal Control Weaknesses | 18% | 9% | 13% | 17% | 12% |
| Announced Internal Control Weaknesses | 7% | 4% | 8% | 11% | 7% |
| Underwriter Defendant | 9% | 10% | 13% | 4% | 2% |
| Auditor Defendant | 0% | 0% | 1% | 2% | 0% |

Note: Core federal filings are all federal securities class actions excluding those defined as M&A filings. Allegations reflect those made in the first identified complaint (FIC). The percentages do not add to 100% because complaints may include multiple allegations. See Additional Notes to Figures for more detailed information. In each of 2020 and 2024, there was one filing with allegations against an auditor defendant.

0015

# U.S. Exchange-Listed Companies

The percentage of companies subject to a filing is calculated as the unique number of companies listed on the NYSE or Nasdaq subject to federal or state securities fraud class actions in a given year divided by the unique number of companies listed on the NYSE or Nasdaq at the start of the same year.

- The percentage of U.S. exchange-listed companies subject to core filings increased slightly from 3.2% in 2023 to 3.9% in 2024, in line with the 2010–2023 average. Similarly, the percentage of companies subject to all filings increased from 3.3% in 2023 to 4.0% in 2024, but remained below the 2010–2023 annual average of 5.0%.

- The percentage of U.S. exchange-listed companies subject to M&A filings remained at 0.1%.

*The likelihood of core filings targeting U.S. exchange-listed companies increased from 3.2% in 2023 to 3.9% in 2024.*

- Between the beginning of 2023 and the beginning of 2024, the overall number of U.S. exchange-listed companies decreased by 6.5%.

Figure 12: Percentage of U.S. Exchange-Listed Companies Subject to Federal or State Filings 2010–2024



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Center for Research in Security Prices (CRSP)

Note: This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. All federal filings are counted only once. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. The figure begins including issuers facing suits in state 1933 Act filings in 2010. See Additional Notes to Figures for more detailed information and Counts and Totals Methodology.

# Heat Maps: S&P 500 Securities Litigation™ for Federal Core Filings

The Heat Maps analysis illustrates federal court securities class action activity by industry sector for companies in the S&P 500 index. Starting with the composition of the S&P 500 at the beginning of each year, the Heat Maps examine each sector by:

(1) The percentage of these companies subject to new securities class actions in federal court during each calendar year.

(2) The percentage of the total market capitalization of these companies subject to new securities class actions in federal court during each calendar year.

- Of the companies in the S&P 500 at the beginning of 2024, 6.1% (31 companies) were subject to a core federal filing, which is above the 2001–2023 annual average. See Appendix 2A for the percentage of filings by sector from 2001 to 2024.

*The likelihood of an S&P 500 company being the subject of a core federal filing fell one percentage point to 6.1%.*

- In 2024, the likelihood of a core federal filing against a company in the Consumer Discretionary sector increased to 13.2%, the highest likelihood recorded in the 2001–2024 period.

- The percentage of Health Care companies subject to a core federal filing remained high at 12.5% in 2024.

- The percentage of Communication Services/Telecommunications/Information Technology companies subject to a core federal filing decreased to 7.0% in 2024.

- The likelihood of a core federal filing decreased in 2024 for all sectors except Consumer Discretionary and Health Care.

Figure 13: Heat Maps of S&P 500 Securities Litigation™ Percentage of Companies Subject to Core Federal Filings

| | Average 2001–2023 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consumer Discretionary | 5.0% | 1.2% | 0.0% | 3.6% | 8.5% | 10.0% | 3.1% | 8.1% | 0.0% | 3.3% | 3.8% | 13.2% |
| Consumer Staples | 4.0% | 0.0% | 5.0% | 2.6% | 2.7% | 11.8% | 12.1% | 3.1% | 6.3% | 0.0% | 10.5% | 7.9% |
| Energy/Materials | 1.7% | 1.3% | 0.0% | 4.5% | 3.3% | 1.8% | 3.7% | 1.9% | 5.7% | 0.0% | 1.9% | 0.0% |
| Financials/Real Estate | 6.7% | 1.2% | 1.2% | 6.9% | 3.3% | 7.0% | 2.0% | 5.3% | 0.0% | 2.1% | 4.8% | 2.9% |
| Health Care | 8.5% | 0.0% | 1.9% | 17.9% | 8.3% | 16.1% | 12.9% | 6.3% | 0.0% | 7.8% | 10.9% | 12.5% |
| Industrials | 4.1% | 4.7% | 0.0% | 6.1% | 8.7% | 8.8% | 10.1% | 2.7% | 1.4% | 4.2% | 7.7% | 5.1% |
| Communication Services/ Telecommunications/ Information Technology | 6.4% | 0.0% | 4.2% | 6.8% | 8.5% | 12.7% | 10.0% | 2.0% | 5.1% | 6.0% | 11.6% | 7.0% |
| Utilities | 5.0% | 0.0% | 3.4% | 3.4% | 7.1% | 7.1% | 6.9% | 7.1% | 0.0% | 3.6% | 3.3% | 0.0% |
| All S&P 500 Companies | 5.3% | 1.2% | 1.6% | 6.6% | 6.4% | 9.4% | 7.2% | 4.4% | 2.2% | 3.8% | 7.1% | 6.1% |

| 0% | 0–5% | 5–15% | 15–25% | 25%+ |
|---|---|---|---|---|

Note:

1. The figure is based on the composition of the S&P 500 as of the last trading day of the previous year. Sectors are based on the Global Industry Classification Standard (GICS), which differ from those in the Bloomberg Industry Classification System used in Figure 10 and Figure 21.

2. Percentage of Companies Subject to Core Federal Filings equals the number of companies subject to new securities class action filings in federal courts in each sector divided by the total number of companies in that sector.

3. In August 2016, GICS added a new industry sector, Real Estate. This analysis begins using the Real Estate industry sector in 2017. In 2018, the Telecommunication Services sector was incorporated into a new sector, Communication Services. With this name change, all companies previously classified as Telecommunication Services and some companies classified as Consumer Discretionary (such as Netflix, Comcast, and CBS) and Information Technology (such as Alphabet and Meta) were reclassified into the Communication Services sector.

4. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 7–10, 12, and 28, or Appendices 1 and 5.

Heat Maps: S&P 500 Securities Litigation™ for Federal Core Filings (continued)

- The percentage of total market capitalization of S&P 500 companies subject to core federal filings dropped from 10.1% in 2023 to 6.1% in 2024. See Appendix 2B for the share of market capitalization subject to core federal filings by sector from 2001 to 2024.

- The percentage of market capitalization exposure for the Communication Services/Telecommunication/Information Technology sector decreased sharply, from 17.3% in 2023 to 2.3% in 2024, a more than sevenfold decrease.

- The percentage of market capitalization exposure for the Utilities sector plummeted from 16.0% in 2023 to 0.0% in 2024.

- The percentage of market capitalization exposure in the Health Care sector nearly doubled from 8.1% in 2023 to 15.7% in 2024.

- The percentage of market capitalization exposure in the Consumer Discretionary sector dropped to 9.9% in 2024 from 13.1% in 2023, but remained above the 2001–2023 annual average of 7.6%.

- The percentage of market capitalization exposure in the Financials/Real Estate sector rose from 2.0% in 2023 to 9.0% in 2024.

*At 15.7%, the Health Care sector had the highest percentage of market capitalization exposure.*

Figure 14: Heat Maps of S&P 500 Securities Litigation™ Percentage of Market Capitalization Subject to Core Federal Filings

| | Average 2001–2023 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Consumer Discretionary | 7.6% | 2.5% | 0.0% | 2.8% | 8.2% | 4.7% | 0.5% | 2.2% | 0.0% | 30.3% | 13.1% | 9.9% |
| Consumer Staples | 5.0% | 0.0% | 1.9% | 1.0% | 6.7% | 15.2% | 9.1% | 1.8% | 17.7% | 0.0% | 7.4% | 2.7% |
| Energy/Materials | 2.8% | 0.2% | 0.0% | 19.8% | 2.3% | 1.4% | 1.2% | 0.4% | 12.0% | 0.0% | 0.6% | 0.0% |
| Financials/Real Estate | 11.6% | 0.3% | 3.0% | 11.9% | 1.5% | 12.5% | 2.2% | 16.9% | 0.0% | 4.7% | 2.0% | 9.0% |
| Health Care | 10.3% | 0.0% | 3.1% | 13.2% | 2.7% | 26.3% | 6.6% | 4.7% | 0.0% | 12.3% | 8.1% | 15.7% |
| Industrials | 8.1% | 1.7% | 0.0% | 8.7% | 22.3% | 19.4% | 21.6% | 4.9% | 0.5% | 6.1% | 8.3% | 9.1% |
| Communication Services/ Telecommunications/ Information Technology | 8.8% | 0.0% | 7.0% | 12.3% | 4.4% | 19.4% | 18.0% | 1.6% | 8.2% | 4.0% | 17.3% | 2.3% |
| Utilities | 6.6% | 0.0% | 3.7% | 4.4% | 9.6% | 6.5% | 7.9% | 6.6% | 0.0% | 7.2% | 16.0% | 0.0% |
| All S&P 500 Companies | 8.3% | 0.6% | 2.8% | 10.0% | 6.1% | 14.9% | 10.0% | 4.3% | 5.1% | 8.4% | 10.1% | 6.1% |

| 0% | 0–5% | 5–15% | 15–25% | 25%+ |
|---|---|---|---|---|

Note:

1. The figure is based on the composition of the S&P 500 as of the last trading day of the previous year. Sectors are based on the Global Industry Classification Standard (GICS), which differ from those in the Bloomberg Industry Classification System used in Figure 10 and Figure 21.

2. Percentage of Market Capitalization Subject to Core Federal Filings equals the market capitalization of companies subject to new securities class action filings in federal courts in each sector divided by the total market capitalization of companies in that sector.

3. In August 2016, GICS added a new industry sector, Real Estate. This analysis begins using the Real Estate industry sector in 2017. In 2018, the Telecommunication Services sector was incorporated into a new sector, Communication Services. With this name change, all companies previously classified as Telecommunication Services and some companies classified as Consumer Discretionary (such as Netflix, Comcast, and CBS) and Information Technology (such as Alphabet and Meta) were reclassified into the Communication Services sector.

4. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 7–10, 12, and 28, or Appendices 1 and 5.

0018

# Status of Core Federal Securities Class Action Filings

This analysis compares filing groups to determine whether filing outcomes have changed over time. As each cohort ages, a larger percentage of filings are resolved—whether through dismissal, settlement, remand, or by trial. In the first few years after filing, a larger proportion of core federal lawsuits are dismissed rather than settled, but in later years, more are resolved through settlement than dismissal.

*From 2014 to 2021, 52% of core federal filings have been dismissed, 41% of filings have settled, and 6% of filings are ongoing.*

- From 1997 to 2024, 46% of core federal filings were settled, 43% were dismissed, 0.5% were remanded, and 10% are continuing. During this time, only 0.4% of core federal filings (or 21 lawsuits) reached trial.

- More recent cohorts have too many ongoing filings to determine their ultimate resolution rates. For example, of core federal filings that are ongoing, 83% were filed between 2022 and 2024, while 17% were filed before 2021.

- As shown in Appendix 3, contrary to trends in core federal filings, M&A filings from 2014 to 2023 were largely resolved through dismissal, with 94% of filings dismissed and 6% settled.

Figure 15: Status of Filings by Year—Core Federal Filings 2015–2024



Note: Percentages may not sum to 100% due to rounding. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from Figures 1–3, 7–10, 12, and 28, or Appendices 1 and 5, which account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis.

# 1933 Act Filings in State Courts

The following data include 1933 Act filings in California, New York, and other state courts. Filings from prior years are added when identified. These filings may include Section 11, Section 12, and Section 15 claims, but do not include Section 10(b) claims.

- State 1933 Act filings decreased in 2024, down from six in 2023 to five in 2024. Of these filings, three were in California, and two were in New York. There were no 1933 Act filings in other state courts.

*State 1933 Act filing activity plummeted in 2023 and continued to decline in 2024, falling to the lowest level since 2013.*

- In line with the *Sciabacucchi* decision in 2020, which enforced forum-selection clauses that require 1933 Act claims to be brought in federal courts, the number of 1933 Act filings in state courts in 2024 was lower than the number of 1933 Act filings in state courts prior to 2020.

- The period between the *Cyan* and *Sciabacucchi* decisions (March 2018–March 2019) changed the availability of state courts as a forum for 1933 Act claims. In *Cyan*, the U.S. Supreme Court confirmed that state and federal courts have concurrent jurisdiction over 1933 Act claims. In *Sciabacucchi*, the Delaware Supreme Court upheld forum-selection provisions in corporate charters mandating that 1933 Act claims only be brought in federal court. Since then, many state courts have followed *Sciabacucchi*.

Figure 16: State 1933 Act Filings by State
2013–2024

- California
- New York
- All Others

Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Bloomberg Law; ISS' SCAS
Note: This analysis counts all filings in state courts. It does not present data on a combined federal and state basis, nor does it identify or account for lawsuits that have parallel filings in both state and federal courts. As a result, totals in this analysis may not match Figures 3, 18, or 19. See Additional Notes to Figures for more detailed information and for Counts and Totals Methodology.

# Dollar Loss on Offered Shares™ (DLOS Index™) in Federal Section 11–Only and State 1933 Act Filings

This analysis calculates the loss of market value of class members' shares offered in securities issuances that are subject to 1933 Act claims. It is calculated as the shares offered at issuance (e.g., in an IPO, a seasoned equity offering (SEO), or a corporate merger or spinoff) acquired by class members multiplied by the difference between the offering price of the shares and their price on the filing date of the first identified complaint.

This alternative measure of losses has been calculated for federal filings involving only Section 11 claims (i.e., no Section 10(b) claims) and 1933 Act filings in state courts. This measure, Dollar Loss on Offered Shares (DLOS), aims to capture, more precisely than MDL, the dollar loss associated with the specific shares at issue as alleged in a complaint.

- Total DLOS fell sharply for state 1933 Act filings, from $11.5 billion in 2023 to $1.3 billion in 2024.

- From 2023 to 2024, total DLOS from federal Section 11 filings increased slightly, despite a decrease in the number of federal Section 11 filings from 2023 to 2024.

- The 2024 median DLOS for state filings was far below the 2015–2023 median.

*In 2024, DLOS from state 1933 Act filings fell to $1.3 billion from $11.5 billion in 2023.*

Figure 17: Dollar Loss on Offered Shares™ (DLOS Index™) for Federal Section 11–Only and State 1933 Act Filings 2015–2024

(Dollars in 2024 billions)



| Median DLOS (Dollars in 2024 millions) | | |
|---|---|---|
| | 2015–2023 | 2024 |
| Federal Courts | $145.2 | $117.3 |
| State Courts | $149.2 | $20.3 |

Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Bloomberg Law; ISS' SCAS; CRSP; SEC EDGAR

# IPO Activity and Federal and State 1933 Act Filings

This figure compares IPO activity (operating company IPOs and SPAC IPOs) with counts of federal and state 1933 Act filings.

*Both the total number of IPOs and filings with federal and state 1933 Act claims fell in 2024, declining to their lowest levels in the past 15 and 11 years, respectively.*

- The number of federal and state Section 11 filings decreased from 21 in 2023 to 16 in 2024, while the number of Section 12–only filings decreased from 11 in 2023 to five in 2024, largely driven by a decline in cryptocurrency-related filings.

- Although historically SPACs have represented only a small portion of IPOs, SPACs accounted for an increasingly large share of IPO activity from 2020 to 2022. Since 2021, however, the number of SPAC IPOs has declined sharply. The number of SPAC IPOs dropped from 31 in 2023 to one in 2024.

- The number of operating company IPOs increased 33% in 2024, after an increase of 42% in 2023. The 72 operating company IPOs in 2024 are slightly more than half of the average annual number of operating company IPOs from 2003 to 2023.

- Generally, heavier IPO activity appears to be correlated with increased levels of federal and state 1933 Act filings in the ensuing year. This general trend continued in 2024 as federal and state 1933 Act filings decreased following a drop in IPO activity from 2022 to 2023.

Figure 18: Number of IPOs on Major U.S. Exchanges and Number of Filings of Federal and State 1933 Act Claims 2015–2024



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Jay R. Ritter, "Initial Public Offerings: Updated Statistics," University of Florida, January 9, 2025

Note: Operating company IPOs exclude the following offerings: those with an offer price of below $5.00, ADRs, unit offers, closed-end funds, REITs, natural resource limited partnerships, small best-efforts offers, banks and S&Ls, and stocks not included in the CRSP database (CRSP includes Amex, NYSE, and Nasdaq stocks). SPAC IPOs include unit and non-unit SPAC IPOs, as defined by Professor Ritter. This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–6, 11, 13–17, 20, and 22–23, or Appendices 2–4 and 6–7. The federal Section 11 lawsuits displayed may include Rule 10b-5 claims, but state 1933 Act filings do not.

0022

# Lag Between IPO and Federal Section 11 and State 1933 Act Filings

This analysis reviews the number of days between the IPO of a company and the filing date of a federal Section 11 or state 1933 Act securities class action (IPO filing lag).

- The IPO filing lag has varied substantially since 2010, but is fairly centered around the 2010–2023 median filing lag of 307 days.

- The IPO filing lag fell to 371 days in 2024 from 508 days in 2023, a 27% decrease. However, the IPO filing lag has been elevated since 2021.

*In 2024, the filing lag for an IPO subject to a federal Section 11 or state 1933 Act claim decreased to 371 days, approaching the 2010–2023 median filing lag of 307 days.*

Figure 19: Lag Between IPO and Federal Section 11 and State 1933 Act Filings
2015–2024



Note: These data only consider IPOs with a subsequent federal Section 11 or state 1933 Act class action complaint. Only complaints that exclusively referred to an IPO were considered. Federal filings that also include Rule 10b-5 allegations are not considered. Years in the figure refer to the year in which the complaint was filed. This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings.

0023

# Non-U.S. Core Federal Filings

This index tracks the number of core federal filings against foreign issuers (i.e., companies headquartered outside the United States) relative to total core federal filings.

- The number of federal filings against non-U.S. issuers continued to stay at low levels since the recent high in 2020 (34 filings in 2024), well below the 2015–2023 annual average of 45 filings.

- The number of federal filings against U.S. issuers increased from 173 in 2023 to 183 in 2024, remaining above the 2015–2023 annual average of 159.

- As a percentage of total core federal filings, the number of core federal filings against non-U.S. issuers stayed low at 16% from a recent high of 33% in 2020, below the 2015–2023 annual average of 22%.

*The number of core federal filings against non-U.S. issuers, both overall and as a percentage of total core federal filings, continued to stay at low levels relative to the recent high in 2020.*



Figure 20: Annual Number of Class Action Filings by Location of Headquarters—Core Federal Filings 2015–2024



Note: This analysis only considers federal filings. It does not present M&A lawsuits or combined federal and state data, and filings are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 7–10, 12, and 18, or Appendices 1 and 5. See Additional Notes to Figures for Counts and Totals Methodology.

# Industry Comparison of Core Filings

This analysis of core federal and state filings encompasses both smaller companies and large capitalization companies, such as those included in the S&P 500.

- The Consumer Non-Cyclical sector remained the sector with the most filings (67) in 2024, an increase from 54 filings in 2023. The increase was largely driven by a surge in Biotechnology filings in 2024 H2, from 11 filings in 2023 to 24 filings in 2024.

- The number of filings in the Technology sector increased for the second consecutive year in 2024 (37 filings) from 28 filings in 2023 and 25 filings in 2022.

- Of the 15 AI-related filings in 2024, eight were in the Technology sector, four were in the Communications sector, two were in the Industrial sector, and one filing was in the Consumer Non-Cyclical sector.

- Since 2013, 126 companies in the Consumer Non-Cyclical sector had at least two separate lawsuits filed against them, of which 72 companies (57%) were Biotechnology or Pharmaceuticals companies.

- The number of filings in the Financial sector decreased by 30%, from 27 in 2023 to 19 in 2024. Total MDL in the Financial sector decreased by 45%.

- The number of filings in the Industrial sector in 2024 (11) decreased by 48% relative to the 2023 total (21), while total MDL in the Industrial sector remained relatively flat compared to 2023.

*The number of filings in the Technology sector increased from 28 in 2023 to 37 in 2024, which was largely driven by an increase in AI-related filings.*

Figure 21: Filings by Industry—Core Filings



Note: Filings with missing sector information or infrequently used sectors may be excluded. As a result, numbers in this chart may not match other total counts listed in this report. This figure presents combined core and federal state data. It does not present M&A lawsuits. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–6, 11, 13–17, 20, and 22–23, or Appendices 2–4 and 6–7. Sectors are based on the Bloomberg Industry Classification System. See Additional Notes to Figures for Counts and Totals Methodology.

0025

# Core Federal Filings by Circuit

- For the second year in a row, the number of core federal filings in the Ninth Circuit exceeded those in the Second Circuit.

- Core federal filings in the Second Circuit increased by 31%, from 49 in 2023 to 64 in 2024, whereas core federal filings in the Ninth Circuit only increased by 5%, from 66 in 2023 to 69 in 2024. There is now little difference in the number of core federal filings in the Second Circuit and the Ninth Circuit.

- Core federal filings in the Third Circuit dropped from 36 in 2023 to 19 in 2024, nearly a 50% decline, decreasing to around the historical average.

- While the Ninth Circuit comprised 32% of all core federal filings in 2024, it accounted for 49% of total federal DDL and 39% of total federal MDL.

- Core federal filings in the Ninth Circuit remained relatively stable in 2024 compared to 2023, but total MDL in the Ninth Circuit decreased from $1.9 trillion in 2023 to $625 billion in 2024, a 67% decrease. However, total DDL in the Ninth Circuit increased from $114 billion in 2023 to $211 billion in 2024, an 85% increase. See Appendix 6.

*Core federal filings in the Ninth Circuit remained relatively stable in 2024 compared to 2023, while total DDL in the Ninth Circuit increased significantly from 2023 to 2024.*

Figure 22: Filings by Circuit—Core Federal Filings



Note: This analysis only considers federal filings. It does not present M&A lawsuits or combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 7–10, 15, and 22, or Appendices 1 and 5. Similarly, MDL and DDL figures discussed on this page will not match Figures 1–3, 7–10, 15, and 22, or Appendices 1 and 5. See Additional Notes to Figures for Counts and Total Methodology.

# Filings Referencing Short-Seller Reports by Plaintiff Counsel

This analysis examines which plaintiff law firms reference reports by short sellers most frequently.

- In 2024, 21 core federal first identified complaints, or about 10%, alleged stock price drops related to reports published by short sellers, up from 19 such filings in 2023.

- Of these 21 core federal filings, 16 (76%) were made by four plaintiff law firms—The Rosen Law Firm P.A., Pomerantz LLP, Glancy Prongay & Murray LLP, and Levi & Korsinsky. These firms' share of core federal filings referencing short-seller reports greatly exceeded their share of all core federal filings (52%) in 2024.

- The five filings referencing short sellers made by other law firms were each made by different law firms.

*In 2024, four plaintiff law firms—The Rosen Law Firm P.A., Pomerantz LLP, Glancy Prongay & Murray LLP, and Levi & Korsinsky—filed 76% of the core federal filings that referenced reports published by short sellers.*

Figure 23: Core Federal Filings Referencing Short-Seller Reports by Plaintiff Counsel
2024



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse

Note: Only short-seller reports mentioned in the first identified complaint are included in this analysis. Filings that contained at least one of the four plaintiff law firms were included in the relevant category; otherwise, they were included in "Other." Four of the filings made by The Rosen Law Firm P.A., Pomerantz LLP, Glancy Prongay & Murray LLP, and Levi & Korsinsky also included an additional law firm. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 7–10, 12, and 19, or Appendices 1 and 5. See Additional Notes to Figures for Counts and Totals Methodology.

0027

# New Developments

## Supreme Court Dismisses Two Cases Without Ruling

As reported in Cornerstone Research's *Securities Class Action Filings—2024 Midyear Assessment*, the U.S. Supreme Court had agreed to hear two cases involving claims against Facebook Inc. and Nvidia Corp. However, the Court dismissed both cases following oral argument, ruling that certiorari in each had been "improvidently granted."[1]

In *Facebook Inc. v. Amalgamated Bank*, the Court had agreed to review a Ninth Circuit decision that Facebook could be held liable under Section 10(b) for failing to disclose risks that had materialized in the past even if they presented no known risk of ongoing or future business harm.[2] Facebook had argued the Ninth Circuit's decision created a three-way circuit split regarding what companies must disclose in the risk factors section of their Form 10-K filings.[3] Facebook argued that while the Sixth Circuit does not require companies to disclose past instances when a risk has materialized, six other circuits require disclosure if the company knows the past events will harm its business.[4]

In *Nvidia Corp. v. E. Ohman J:or Fonder AB*, the Court had agreed to review an appeal of a Ninth Circuit ruling regarding pleading requirements for Section 10(b).[5] Plaintiffs alleged Nvidia and top executives misrepresented the extent to which revenue associated with one of its products was attributable to purchases by video gamers rather than cryptocurrency miners.[6] Plaintiffs pled scienter primarily by alleging defendants had access to detailed sales data, which they speculated would have shown high proportions of revenue from cryptocurrency miners.[7] To support their allegations of falsity, plaintiffs primarily relied on an expert retained to analyze the product revenue from cryptocurrency miners.[8]

The majority of a divided Ninth Circuit panel overturned a decision by the district court to dismiss the litigation and revived the claims against Nvidia and its CEO. Nvidia argued review was needed to resolve a circuit split regarding pleading scienter in securities litigation.[9] Nvidia argued that whereas five circuits require plaintiffs pleading scienter based on allegations about internal company documents to plead the specific contents of those documents, only one (the First Circuit) has found allegations of the existence of the company reports plus assertions about what the reports may have said to be sufficient.[10] Nvidia also argued the Ninth Circuit's decision created a second circuit split on

pleading falsity. Prior to the decision, the Second and Fifth Circuits had held that an expert's opinion could not substitute for particularized allegations of falsity.[11]

The Supreme Court's rulings let stand the Ninth Circuit's decisions in both Facebook and Nvidia without resolving the circuit splits regarding disclosures in risk factors and the requirements for pleading scienter and falsity.

## *Jaeger v. Zillow Group Inc.*

On August 23, 2024, the U.S. District Court for the Western District of Washington in *Jaeger v. Zillow Group Inc.* certified a class of investors who alleged Zillow failed to disclose material weaknesses in its house-flipping business.[12]

Zillow appealed to the Ninth Circuit, arguing the district court misapplied the Supreme Court's ruling in *Goldman Sachs Group Inc. v. Arkansas Teacher Retirement System*.[13] In *Goldman*, the Court held that "inference [] that the back-end price drop equals front-end inflation [] starts to break down when there is a mismatch between the contents of the misrepresentation and the corrective disclosure."[14] Zillow argued the district court misapplied *Goldman* by ignoring an expert who opined that the front-end misstatements had no price impact at the time they were made.[15]

In deciding *Zillow*, the Ninth Circuit would be the second federal appeals court to interpret and apply the Supreme Court's ruling in *Goldman*. The first was the Second Circuit, which in 2023 decertified a class of investors, holding that "there is an insufficient link between the corrective disclosures and the alleged misrepresentations," and therefore that defendants had demonstrated lack of price impact and had rebutted *Basic*'s presumption of reliance.[16]

1. Facebook Inc. v. Amalgamated Bank, 604 U.S. ___ (2024) (per curiam); Nvidia Corp. v. E Hohman J:or Fonder AB, 604 U.S. ___ (2024) (per curiam).
2. Facebook Inc. v. Amalgamated Bank, __ S. Ct. __, 2024 WL 2883752 (2024).
3. Facebook Inc. v. Amalgamated Bank, Petition for Writ of Certiorari, at 2.
4. *Ibid*. The six circuits are the First, Second, Third, Fifth, Tenth, and D.C. Circuits.
5. *See* U.S. Supreme Court Order List, 602 U.S. __ (June 17, 2024) at *2.65; Iron Workers Local 580 Joint Funds v. NVIDIA Corp., 522 F. Supp. 3d 660, 666 (N.D. Cal. 2021).
6. E. Ohman J:or Fonder AB v. NVIDIA Corp., 81 F. 4th 918, 940 (9th Cir. 2023).
7. *Ibid*. at 924.
8. NVIDIA Corp., Cert. Pet., at *4–5.
9. NVIDIA Corp., Cert. Pet., at *4–5.
10. NVIDIA Corp., Cert. Pet., at *4. The five circuits are the Second, Third, Fifth, Seventh, and Tenth Circuits.
11. NVIDIA Corp., Cert. Pet., at *5.
12. Jaeger v. Zillow Group Inc., No. 2:21-cv-01551, slip op. at 19 (W.D. Wash. Aug. 23, 2024).
13. Jaeger v. Zillow Group Inc., No. 24-6605, Brief of Appellant, at 2.
14. Goldman Sachs Group Inc. v. Arkansas Teacher Retirement System, 141 S. Ct. 1951, 1961 (2021).
15. Jaeger v. Zillow Group Inc., No. 24-6605, Brief of Appellant, at 16.
16. Arkansas Teacher Retirement System v. Goldman Sachs Group, 77 F.4th 74, 105 (2d Cir. 2023).

# Glossary

**Annual Number of Class Action Filings by Location of Headquarters** (formerly known as the Class Action Filings Non-U.S. Index) tracks the number of core federal filings against non-U.S. issuers (companies headquartered outside the United States) relative to total core federal filings.

**Class Action Filings Index® (CAF Index®)** tracks the number of federal securities class action filings.

**Core filings** are all state 1933 Act class actions and all federal securities class actions, excluding those defined as M&A filings.

*Cyan* refers to *Cyan Inc. v. Beaver County Employees Retirement Fund.* In this March 2018 opinion, the U.S. Supreme Court ruled that 1933 Act claims may be brought to state venues and are not removable to federal court.

**Disclosure Dollar Loss Index® (DDL Index®)** measures the aggregate DDL for all federal and state filings over a period of time. DDL is the dollar-value change in the defendant firm's market capitalization between the trading day immediately preceding the end of the class period and the trading day immediately following the end of the class period. DDL should not be considered an indicator of liability or measure of potential damages. Instead, it estimates the impact of all information revealed at the end of the class period, including information unrelated to the litigation. Reported DDL is inflation-adjusted to 2024 dollars (from the year of the end of the alleged class period for filings with Section 10(b) claims and the filing year for all other lawsuits) using the Consumer Price Index for All Urban Consumers (CPI-U).

**Dollar Loss on Offered Shares Index™ (DLOS Index™)** measures the aggregate DLOS for federal filings with only Section 11 claims and for state 1933 Act filings. DLOS is the change in the dollar-value of shares acquired by members of the putative class. It is the difference in the price of offered shares (i.e., from the date the registration statement becomes effective through the filing date of the first identified complaint multiplied by the shares offered). DLOS should not be considered an indicator of liability or measure of potential damages. Instead, it estimates the impact of all information revealed between the date of the registration statement and the complaint filing date, including information unrelated to the litigation. Reported DLOS is inflation-adjusted to 2024 dollars from the filing year using the Consumer Price Index for All Urban Consumers (CPI-U).

**Filing lag** is the number of days between the end of a class period and the filing date of the securities class action.

**First identified complaint** is the first complaint filed of one or more securities class action complaints with the same underlying allegations against the same defendant or set of defendants. When there is no federal complaint and multiple state complaints are filed, they are treated as separate filings.

**Market capitalization losses** measure changes to market values of the companies subject to class action filings. This report tracks market capitalization losses for defendant firms during and at the end of class periods. They are calculated for publicly traded common equity securities, closed-ended mutual funds, and exchange-traded funds where data are available. Declines in market capitalization may be driven by market, industry, and/or firm-specific factors. To the extent that the observed losses reflect factors unrelated to the allegations in class action complaints, indices based on class period losses would not be representative of potential defendant exposure in class actions. This is especially relevant in the post-*Dura* securities litigation environment. In April 2005, the U.S. Supreme Court ruled that plaintiffs in a securities class action are required to establish a causal connection between alleged wrongdoing and subsequent shareholder losses. This report tracks market capitalization losses at the end of each class period using DDL, and market capitalization losses during each class period using MDL.

**Maximum Dollar Loss Index® (MDL Index®)** measures the aggregate MDL for all federal and state filings over a period of time. MDL is the dollar-value change in the defendant firm's market capitalization from the trading day with the highest market capitalization during the class period to the trading day immediately following the end of the class period. MDL should not be considered an indicator of liability or measure of potential damages. Instead, it estimates the impact of all information revealed during or at the end of the class period, including information unrelated to the litigation. Reported MDL is inflation-adjusted to 2024 dollars (from the year of the end of the alleged class period for filings with Section 10(b) claims and the filing year for all other lawsuits) using the Consumer Price Index for All Urban Consumers (CPI-U).

**Merger and acquisition (M&A) filings** are securities class actions filed in federal courts that have Section 14 claims, but no Section 10(b), Section 11, or Section 12(a) claims, and involve merger and acquisition transactions.

Glossary (continued)

**Trend categories** are categories of related securities class actions filed in federal courts. Current trend categories include Artificial Intelligence, COVID-19, Cryptocurrency, Cybersecurity, and SPACs. See Additional Notes to Figures for detailed definitions.

***Sciabacucchi*** refers to *Salzberg v. Sciabacucchi*. On March 18, 2020, the Delaware Supreme Court held that forum-selection provisions in corporate charters requiring that some class action securities claims under the 1933 Act be adjudicated in federal courts are enforceable.

**Securities Class Action Clearinghouse** is an authoritative source of data and analysis on the financial and economic characteristics of federal securities fraud class action litigation, cosponsored by Cornerstone Research and Stanford Law School.

**State 1933 Act filing** is a class action filed in a state court that asserts claims under Section 11 and/or Section 12 of the Securities Act of 1933. These filings may also have Section 15 claims, but do not have Section 10(b) claims.

0030

# Additional Notes to Figures

## Counts and Totals Methodology

1. A parallel filing is a filing in federal court that has a related filing in state court.
2. For a state court filing to be considered parallel, it must be filed against the same defendant, concern the same security, and contain similar allegations to the federal filing.
3. Any additional filing against the same defendant brought in a different state without an additional federal court filing is counted as a unique state filing.
4. When parallel lawsuits are filed in different years or semiannual periods, only the earliest filing is reflected in filing counts and totals.
5. Parallel filings are only used in figures that show combined counts or totals across federal and state courts.
6. Figures that separately present state and federal counts or totals do not identify parallel filings. Therefore, counts and totals in each period are based on the date of each filing, rather than the earliest of the parallel state and federal filing dates. As a result, these figures differ in counts and totals from other figures that rely on parallel filing identification.
7. Figures that only present state counts or totals similarly do not identify parallel filings. Therefore, counts and totals in each period are only based on the dates of state filings. As a result, these figures differ in counts and totals from other figures that rely on parallel filing identification.
8. Figures that only present federal counts or totals similarly do not identify parallel filings. Therefore, counts and totals in each period are only based on the dates of federal filings. As a result, these figures differ in counts and totals from other figures that rely on parallel filing identification.

## Figure 3: Federal Filings and State 1933 Act Filings by Venue

1. The federal Section 11 data displayed may contain Section 10(b) claims, but state 1933 Act filings do not.
2. Federal Section 10(b)–only filings may have non–Section 11 or non–Section 12 allegations.
3. Beginning in 2018, California state filings may contain either Section 11 or Section 12 claims. Of the 16 filings in California in 2018, six filings contained Section 12 claims without also containing Section 11 claims. Since 2018, there have been two such filings.

## Figure 4: Summary of Trend Filings—Core Federal Filings

**Definitions of Trend Categories:**

**Artificial Intelligence–related** filings are those in which the company at issue (1) develops AI models, (2) manufactures products used in AI infrastructure, or (3) uses AI models for business purposes; and, in addition, the allegations are related to AI, or misrepresentations or failures to disclose risks associated with the use of AI. AI-related filings include those with allegations related to machine learning and autonomous driving, among others.
**COVID-19-related** filings include allegations related to companies negatively impacted by the pandemic or looking to address demand for products as a result of the pandemic.
**Cryptocurrency-related** filings include allegations against defendants that owned, operated, or controlled entities that engaged in the sale or exchange of tokens (commonly initial coin offerings) or non-fungible tokens (NFTs), cryptocurrency mining, cryptocurrency derivatives, or that designed blockchain-focused software.
**Cybersecurity-related** filings are those in which allegations relate to data breaches or security vulnerabilities.

**SPAC** filings concern companies that went public for the express purpose of acquiring an existing company in the future. These include current and former SPACs.

In 2024, one filing against a SPAC also had COVID-19-related allegations, and two filings against SPACs also had AI-related allegations. In 2023, one filing against a SPAC also had cryptocurrency-related allegations, one filing against a SPAC also had AI-related allegations, and one filing against a SPAC had allegations related to cybersecurity. In 2022, two filings against SPACs also had cryptocurrency-related allegations, and two filings against SPACs also had AI-related allegations. One filing against a SPAC also had COVID-19-related allegations. In 2021, one filing against a SPAC also had AI-related allegations, one filing had both cryptocurrency-related allegations and cybersecurity allegations, and one filing had both cybersecurity allegations and AI-related allegations. In 2020, one filing against a SPAC also had cryptocurrency-related allegations, one filing against a SPAC also had cybersecurity-related allegations, and one filing against a SPAC also had AI-related allegations. One filing had allegations related to AI and cybersecurity-related allegations.

## Figure 11: Allegations Box Score—Core Federal Filings

**Definitions:**

**1933 Act Claims** are allegations made in the first identified complaint (FIC) of violations of Section 11 or Section 12(a) of the Securities Act of 1933.
**Misrepresentations in Financial Documents** are allegations made in the FIC that financial documents included misrepresentations. Financial documents include, but are not limited to, those filed with the U.S. Securities and Exchange Commission (SEC) (e.g., Form 10-Ks and registration statements) and press releases announcing financial results.
**Accounting Violations** are allegations made in the FIC of U.S. GAAP violations or violations of other reporting standards such as IFRS. In some cases, plaintiff(s) may not have expressly referenced violations of U.S. GAAP or other reporting standards; however, the allegations, if true, would represent violations of U.S. GAAP or other reporting standards.
**Announced Restatements** are alleged when the FIC includes Accounting Violations and refers to an announcement during or subsequent to the class period that the company will restate, may restate, or has unreliable financial statements.
**Internal Control Weaknesses** are allegations made in the FIC of internal control weaknesses over financial reporting.
**Announced Internal Control Weaknesses** are alleged when the FIC includes Internal Control Weaknesses and refers to an announcement during or subsequent to the class period that the company has internal control weaknesses over financial reporting.

## Figure 12: Percentage of U.S. Exchange-Listed Companies Subject to Federal or State Filings

1. Percentages are calculated by dividing the count of issuers listed on the NYSE or Nasdaq subject to filings by the number of companies listed on the NYSE or Nasdaq as of the beginning of the year. Percentages may not sum due to rounding.
2. Core Filings and M&A Filings do not include instances in which a company has been subject to both a core and M&A filing in the same year. These are reported separately in the category labeled Both Core and M&A Filings. Since 2009, there have been 22 instances in which a company has been subject to both core and M&A filings in the same year. In 2017, 0.14% of U.S. exchange-listed companies were subject to both a core and M&A filing in the same year. In 2009, 2010, 2013, 2015,

0031

Additional Notes to Figures (continued)

2016, 2019, 2020, and 2021, less than 0.1% of U.S. exchange-listed companies were subject to both a core and M&A filing in the same year. In all other years since 2009, there were no companies subject to both core and M&A filings in the same year.

3. Listed companies were identified by taking the count of listed securities at the beginning of each year and accounting for cross-listed companies or companies with more than one security traded on a given exchange. Securities were counted if they were classified as common stock or American depositary receipts (ADRs) and listed on the NYSE or Nasdaq.

4. This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in Figure 12. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. The figure begins including issuers facing suits in state 1933 Act filings in 2010.

### Figure 16: State 1933 Act Filings by State

1. All Others contains filings in Alabama, Arizona, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Massachusetts, Michigan, Nevada, New Hampshire, New Jersey, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Washington, West Virginia, and Wisconsin.

2. Beginning in 2018, California state filings may contain either Section 11 or Section 12 claims. Of the 16 filings in California in 2018, six filings contained Section 12 claims without also containing Section 11 claims. Since 2018, there have been two such filings.

3. This analysis compares all Section 11 filings in federal courts with all 1933 Act filings in state courts. It does not present data on a combined federal and state basis, nor does it identify or account for lawsuits that have parallel filings in both state and federal courts. The numbers shown in this figure have been inflation-adjusted to 2024 dollars and will not match prior reports.

### Figure 17: Dollar Loss on Offered Shares™ (DLOS Index™) for Federal Section 11–Only and State 1933 Act Filings

1. Federal filings included in this analysis must contain a Section 11 claim and may contain a Section 12 claim, but do not contain Section 10(b) claims. Beginning in 2018, California state filings may contain either Section 11 or Section 12 claims. Of the 16 filings in California in 2018, six filings contained Section 12 claims without also containing Section 11 claims. Since 2018, there have been two such filings.

2. Starting with Cornerstone Research's *Securities Class Action Filings—2021 Year in Review*, the DLOS methodology has been changed from using the difference between the offering price of the shares and their closing price on the day of the first identified complaint's first alleged corrective disclosure (if none were mentioned, the price the day after the complaint filing day was used instead), to using the difference between the offering price of the shares and their closing price on the filing date of the first identified complaint.

# Appendices

Appendix 1: Basic Filings Metrics

| Year | Class Action Filings | Core Filings | Disclosure Dollar Loss | | | Maximum Dollar Loss | | | U.S. Exchange-Listed Firms: Core Filings | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | DDL Total ($ Billions) | Average ($ Millions) | Median ($ Millions) | MDL Total ($ Billions) | Average ($ Millions) | Median ($ Millions) | Number | Number of Listed Firms Sued | Percentage of Listed Firms Sued |
| 1997 | 174 | 174 | $82 | $534 | $112 | $287 | $1,861 | $792 | 8,113 | 165 | 2.0% |
| 1998 | 242 | 242 | $155 | $704 | $117 | $432 | $1,963 | $565 | 8,190 | 225 | 2.7% |
| 1999 | 209 | 209 | $264 | $1,436 | $192 | $687 | $3,732 | $711 | 7,771 | 197 | 2.5% |
| 2000 | 216 | 216 | $438 | $2,282 | $217 | $1,388 | $7,229 | $1,277 | 7,418 | 205 | 2.8% |
| 2001 | 180 | 180 | $354 | $2,174 | $164 | $2,659 | $16,311 | $1,367 | 7,197 | 168 | 2.3% |
| 2002 | 224 | 224 | $351 | $1,728 | $239 | $3,582 | $17,646 | $2,607 | 6,474 | 204 | 3.2% |
| 2003 | 192 | 192 | $133 | $776 | $172 | $990 | $5,791 | $821 | 5,999 | 181 | 3.0% |
| 2004 | 228 | 228 | $241 | $1,233 | $179 | $1,224 | $6,278 | $839 | 5,643 | 210 | 3.7% |
| 2005 | 182 | 182 | $150 | $963 | $249 | $591 | $3,790 | $797 | 5,593 | 168 | 3.0% |
| 2006 | 120 | 120 | $81 | $779 | $170 | $464 | $4,462 | $643 | 5,525 | 114 | 2.1% |
| 2007 | 177 | 177 | $241 | $1,544 | $236 | $1,069 | $6,854 | $1,082 | 5,467 | 158 | 2.9% |
| 2008 | 224 | 224 | $324 | $2,217 | $313 | $1,196 | $8,191 | $1,570 | 5,339 | 170 | 3.2% |
| 2009 | 164 | 157 | $123 | $1,216 | $201 | $805 | $7,968 | $1,557 | 5,042 | 118 | 2.3% |
| 2010 | 174 | 135 | $105 | $1,002 | $209 | $689 | $6,559 | $860 | 4,764 | 107 | 2.2% |
| 2011 | 189 | 146 | $161 | $1,193 | $128 | $739 | $5,473 | $632 | 4,660 | 127 | 2.7% |
| 2012 | 154 | 142 | $134 | $1,047 | $209 | $559 | $4,334 | $889 | 4,529 | 119 | 2.6% |
| 2013 | 165 | 152 | $140 | $1,012 | $206 | $375 | $2,720 | $720 | 4,411 | 137 | 3.1% |
| 2014 | 170 | 158 | $74 | $503 | $219 | $293 | $1,980 | $700 | 4,416 | 144 | 3.3% |
| 2015 | 217 | 183 | $158 | $889 | $191 | $549 | $3,087 | $678 | 4,578 | 169 | 3.7% |
| 2016 | 288 | 204 | $139 | $726 | $218 | $1,110 | $5,782 | $1,366 | 4,593 | 188 | 4.1% |
| 2017 | 412 | 214 | $161 | $822 | $191 | $660 | $3,365 | $851 | 4,411 | 186 | 4.2% |
| 2018 | 420 | 238 | $415 | $1,985 | $372 | $1,651 | $7,899 | $1,339 | 4,406 | 211 | 4.8% |
| 2019 | 427 | 267 | $347 | $1,466 | $266 | $1,462 | $6,168 | $1,240 | 4,318 | 237 | 5.5% |
| 2020 | 331 | 232 | $326 | $1,613 | $219 | $1,838 | $9,101 | $1,220 | 4,514 | 192 | 4.3% |
| 2021 | 218 | 200 | $318 | $1,807 | $437 | $1,095 | $6,222 | $1,643 | 4,759 | 181 | 3.8% |
| 2022 | 208 | 201 | $636 | $3,830 | $270 | $2,605 | $15,695 | $2,289 | 5,741 | 172 | 3.0% |
| 2023 | 215 | 209 | $355 | $1,942 | $357 | $3,340 | $18,252 | $2,411 | 5,688 | 181 | 3.2% |
| 2024 | 225 | 220 | $438 | $2,305 | $400 | $1,618 | $8,514 | $1,823 | 5,316 | 205 | 3.9% |
| Average 1997–2023 | 227 | 193 | $237 | $1,386 | $224 | $1,198 | $6,989 | $1,165 | 5,531 | 173 | 3.2% |

Note: This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. State 1933 Act filings in state courts are included in the data beginning in 2010. As a result, this figure's filing counts may not match those in Figures 4–6, 11, 13–17, 20, and 22–23, or Appendices 2–4 and 6–7. Average and median numbers are calculated only for filings with MDL and DDL data. There are core filings for which data are not available to estimate MDL and DDL accurately; these filings are excluded from the MDL and DDL analysis. The number and percentage of U.S. exchange-listed firms sued are based on core filings and include companies that were subject to both an M&A filing and a core filing in the same year. This differs from Figure 3, which separately categorizes companies with both an M&A filing and a core filing in the same year. The numbers shown in this figure have been inflation-adjusted to 2024 dollars and will not match prior reports.

0033

Appendices (continued)

Appendix 2A: S&P 500 Securities Litigation—Percentage of S&P 500 Companies Subject to Core Federal Filings

| Year | Consumer Discretionary | Consumer Staples | Energy/ Materials | Financials/ Real Estate | Health Care | Industrials | Telecomm./ Comm./IT | Utilities | All S&P 500 Companies |
|---|---|---|---|---|---|---|---|---|---|
| 2001 | 2.4% | 8.3% | 0.0% | 1.4% | 7.1% | 0.0% | 18.0% | 7.9% | 5.6% |
| 2002 | 10.2% | 2.9% | 3.1% | 16.7% | 15.2% | 6.0% | 11.0% | 40.5% | 12.0% |
| 2003 | 4.6% | 2.9% | 1.7% | 8.6% | 10.4% | 3.0% | 5.6% | 2.8% | 5.2% |
| 2004 | 3.4% | 2.7% | 1.8% | 19.3% | 10.6% | 8.5% | 3.2% | 5.7% | 7.2% |
| 2005 | 10.3% | 8.6% | 1.7% | 7.3% | 10.7% | 1.8% | 6.7% | 3.0% | 6.6% |
| 2006 | 4.4% | 2.8% | 0.0% | 2.4% | 6.9% | 0.0% | 8.1% | 0.0% | 3.6% |
| 2007 | 5.7% | 0.0% | 0.0% | 10.3% | 12.7% | 5.8% | 2.3% | 3.1% | 5.4% |
| 2008 | 4.5% | 2.6% | 0.0% | 31.2% | 13.7% | 3.6% | 2.5% | 3.2% | 9.2% |
| 2009 | 3.8% | 4.9% | 1.5% | 9.5% | 3.7% | 6.9% | 1.2% | 0.0% | 4.2% |
| 2010 | 5.1% | 0.0% | 4.3% | 10.3% | 13.5% | 0.0% | 2.4% | 0.0% | 4.8% |
| 2011 | 3.8% | 2.4% | 0.0% | 1.2% | 2.0% | 1.7% | 7.1% | 0.0% | 2.6% |
| 2012 | 4.9% | 2.4% | 2.7% | 3.7% | 1.9% | 1.6% | 3.8% | 0.0% | 3.0% |
| 2013 | 8.4% | 0.0% | 0.0% | 0.0% | 5.7% | 0.0% | 9.1% | 0.0% | 3.4% |
| 2014 | 1.2% | 0.0% | 1.3% | 1.2% | 0.0% | 4.7% | 0.0% | 0.0% | 1.2% |
| 2015 | 0.0% | 5.0% | 0.0% | 1.2% | 1.9% | 0.0% | 4.2% | 3.4% | 1.6% |
| 2016 | 3.6% | 2.6% | 4.5% | 6.9% | 17.9% | 6.1% | 6.8% | 3.4% | 6.6% |
| 2017 | 8.5% | 2.7% | 3.3% | 3.3% | 8.3% | 8.7% | 8.5% | 7.1% | 6.4% |
| 2018 | 10.0% | 11.8% | 1.8% | 7.0% | 16.1% | 8.8% | 12.7% | 7.1% | 9.4% |
| 2019 | 3.1% | 12.1% | 3.7% | 2.0% | 12.9% | 10.1% | 10.0% | 6.9% | 7.2% |
| 2020 | 8.1% | 3.1% | 1.9% | 5.3% | 6.3% | 2.7% | 2.0% | 7.1% | 4.4% |
| 2021 | 0.0% | 6.3% | 5.7% | 0.0% | 0.0% | 1.4% | 5.1% | 0.0% | 2.2% |
| 2022 | 3.3% | 0.0% | 0.0% | 2.1% | 7.8% | 4.2% | 6.0% | 3.6% | 3.8% |
| 2023 | 3.8% | 10.5% | 1.9% | 4.8% | 10.9% | 7.7% | 11.6% | 3.3% | 7.1% |
| 2024 | 13.2% | 7.9% | 0.0% | 2.9% | 12.5% | 5.1% | 7.0% | 0.0% | 6.1% |
| Average 2001–2023 | 5.0% | 4.0% | 1.7% | 6.7% | 8.5% | 4.1% | 6.4% | 5.0% | 5.3% |

Appendix 2B: S&P 500 Securities Litigation—Percentage of Market Capitalization of S&P 500 Companies Subject to Core Federal Filings

| Year | Consumer Discretionary | Consumer Staples | Energy/ Materials | Financials/ Real Estate | Health Care | Industrials | Telecomm./ Comm./IT | Utilities | All S&P 500 Companies |
|---|---|---|---|---|---|---|---|---|---|
| 2001 | 1.3% | 6.3% | 0.0% | 0.8% | 5.4% | 0.0% | 32.6% | 17.4% | 10.9% |
| 2002 | 24.7% | 0.3% | 1.2% | 29.2% | 35.2% | 13.3% | 9.1% | 51.0% | 18.8% |
| 2003 | 2.0% | 2.3% | 0.4% | 19.9% | 16.3% | 4.6% | 1.7% | 4.3% | 8.0% |
| 2004 | 7.9% | 0.1% | 29.7% | 46.1% | 24.1% | 8.8% | 1.2% | 4.8% | 17.7% |
| 2005 | 5.7% | 11.4% | 1.6% | 22.2% | 10.1% | 5.6% | 10.3% | 5.6% | 10.7% |
| 2006 | 8.9% | 0.8% | 0.0% | 8.2% | 18.1% | 0.0% | 8.3% | 0.0% | 6.7% |
| 2007 | 4.4% | 0.0% | 0.0% | 18.1% | 22.5% | 2.2% | 3.4% | 5.5% | 8.2% |
| 2008 | 7.2% | 2.6% | 0.0% | 55.0% | 20.0% | 26.4% | 1.4% | 4.0% | 16.2% |
| 2009 | 1.9% | 3.9% | 0.8% | 30.7% | 1.7% | 23.2% | 0.3% | 0.0% | 7.6% |
| 2010 | 4.9% | 0.0% | 5.2% | 31.1% | 32.7% | 0.0% | 5.9% | 0.0% | 11.1% |
| 2011 | 4.6% | 0.8% | 0.0% | 6.9% | 0.7% | 2.1% | 13.4% | 0.0% | 5.0% |
| 2012 | 1.6% | 14.0% | 0.9% | 11.0% | 0.8% | 1.2% | 2.2% | 0.0% | 4.3% |
| 2013 | 4.4% | 0.0% | 0.0% | 0.0% | 4.4% | 0.0% | 16.6% | 0.0% | 4.7% |
| 2014 | 2.5% | 0.0% | 0.2% | 0.3% | 0.0% | 1.7% | 0.0% | 0.0% | 0.6% |
| 2015 | 0.0% | 1.9% | 0.0% | 3.0% | 3.1% | 0.0% | 7.0% | 3.7% | 2.8% |
| 2016 | 2.8% | 1.0% | 19.8% | 11.9% | 13.2% | 8.7% | 12.3% | 4.4% | 10.0% |
| 2017 | 8.2% | 6.7% | 2.3% | 1.5% | 2.7% | 22.3% | 4.4% | 9.6% | 6.1% |
| 2018 | 4.7% | 15.2% | 1.4% | 12.5% | 26.3% | 19.4% | 19.4% | 6.5% | 14.9% |
| 2019 | 0.5% | 9.1% | 1.2% | 2.2% | 6.6% | 21.6% | 18.0% | 7.9% | 10.0% |
| 2020 | 2.2% | 1.8% | 0.4% | 16.9% | 4.7% | 4.9% | 1.6% | 6.6% | 4.3% |
| 2021 | 0.0% | 17.7% | 12.0% | 0.0% | 0.0% | 0.5% | 8.2% | 0.0% | 5.1% |
| 2022 | 30.3% | 0.0% | 0.0% | 4.7% | 12.3% | 6.1% | 4.0% | 7.2% | 8.4% |
| 2023 | 13.1% | 7.4% | 0.6% | 2.0% | 8.1% | 8.3% | 17.3% | 16.0% | 10.1% |
| 2024 | 9.9% | 2.7% | 0.0% | 9.0% | 15.7% | 9.1% | 2.3% | 0.0% | 6.1% |
| Average 2001–2023 | 7.6% | 5.0% | 2.8% | 11.6% | 10.3% | 8.1% | 8.8% | 6.6% | 8.3% |

Note: Average figures are calculated as the sum of the market capitalization subject to core filings in a given sector from 2001 to 2023 divided by the sum of market capitalization in that sector from 2001 to 2023.

0034

Appendices (continued)

## Appendix 3: M&A Federal Filings Overview

| Year | M&A Filings | M&A Case Status | | | | | Case Status of All Other Federal Filings | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Dismissed | Settled | Remanded | Continuing | Trial | Dismissed | Settled | Remanded | Continuing | Trial |
| 2014 | 12 | 9 | 3 | 0 | 0 | 0 | 66 | 87 | 2 | 1 | 0 |
| 2015 | 34 | 27 | 7 | 0 | 0 | 0 | 96 | 71 | 4 | 1 | 1 |
| 2016 | 84 | 70 | 14 | 0 | 0 | 0 | 92 | 83 | 6 | 5 | 1 |
| 2017 | 198 | 190 | 7 | 1 | 0 | 0 | 115 | 93 | 4 | 1 | 0 |
| 2018 | 182 | 176 | 6 | 0 | 0 | 0 | 125 | 83 | 0 | 11 | 1 |
| 2019 | 160 | 156 | 4 | 0 | 0 | 0 | 124 | 107 | 0 | 11 | 0 |
| 2020 | 99 | 98 | 0 | 0 | 1 | 0 | 127 | 71 | 0 | 20 | 0 |
| 2021 | 18 | 16 | 2 | 0 | 0 | 0 | 93 | 57 | 1 | 42 | 0 |
| 2022 | 7 | 4 | 2 | 0 | 1 | 0 | 67 | 29 | 0 | 94 | 0 |
| 2023 | 6 | 3 | 0 | 0 | 3 | 0 | 41 | 10 | 0 | 154 | 0 |
| 2024 | 5 | 2 | 0 | 0 | 3 | 0 | 11 | 1 | 0 | 193 | 0 |
| Average (2014–2023) | 80 | 75 | 5 | 0 | 1 | 0 | 95 | 69 | 2 | 34 | 0 |

Note: The Securities Class Action Clearinghouse began tracking M&A filings as a separate category in 2009. Case status is as of January 16, 2025. Filings are grouped by complaint filing year, not the year of the most recent change in case status. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 7–10, 12, and 18, or Appendices 1 and 5.

## Appendix 4: Status by Year—Core Federal Filings

| Filing Year | In the First Year | | | In the Second Year | | | In the Third Year | | |
|---|---|---|---|---|---|---|---|---|---|
| | Settled | Dismissed | Total Resolved within One Year | Settled | Dismissed | Total Resolved within Two Years | Settled | Dismissed | Total Resolved within Three Years |
| 1997 | 0.6% | 7.5% | 8.0% | 14.9% | 8.6% | 31.6% | 17.8% | 4.0% | 53.4% |
| 1998 | 0.8% | 7.4% | 8.3% | 16.1% | 12.8% | 37.2% | 15.7% | 7.9% | 60.7% |
| 1999 | 0.5% | 6.7% | 7.2% | 11.0% | 12.0% | 30.1% | 18.2% | 9.1% | 57.4% |
| 2000 | 1.9% | 4.2% | 6.0% | 11.6% | 13.0% | 30.6% | 15.7% | 10.6% | 57.4% |
| 2001 | 1.7% | 6.7% | 8.3% | 11.7% | 10.6% | 30.6% | 18.3% | 5.0% | 53.9% |
| 2002 | 0.9% | 5.8% | 7.1% | 6.7% | 9.4% | 23.2% | 14.7% | 11.6% | 49.6% |
| 2003 | 0.5% | 7.8% | 8.3% | 8.3% | 13.5% | 30.2% | 14.1% | 14.6% | 58.9% |
| 2004 | 0.0% | 10.5% | 10.5% | 9.6% | 16.7% | 36.8% | 12.7% | 9.6% | 59.2% |
| 2005 | 0.5% | 11.5% | 12.1% | 6.6% | 19.2% | 37.9% | 18.1% | 8.8% | 64.8% |
| 2006 | 0.8% | 9.2% | 10.0% | 9.2% | 16.7% | 35.8% | 16.7% | 7.5% | 60.0% |
| 2007 | 1.1% | 7.3% | 8.5% | 8.5% | 18.1% | 35.0% | 18.6% | 11.9% | 65.5% |
| 2008 | 0.0% | 13.0% | 13.9% | 4.9% | 20.2% | 39.0% | 10.3% | 10.3% | 59.6% |
| 2009 | 0.0% | 9.6% | 9.6% | 6.4% | 22.9% | 38.9% | 8.9% | 9.6% | 57.3% |
| 2010 | 1.5% | 11.0% | 13.2% | 8.8% | 20.6% | 42.6% | 5.9% | 13.2% | 61.8% |
| 2011 | 0.0% | 12.4% | 13.1% | 4.1% | 18.6% | 35.9% | 22.1% | 11.7% | 69.7% |
| 2012 | 0.7% | 12.9% | 15.1% | 4.3% | 25.9% | 45.3% | 18.0% | 6.5% | 69.8% |
| 2013 | 0.0% | 19.1% | 19.7% | 10.5% | 25.0% | 55.3% | 14.5% | 5.3% | 75.0% |
| 2014 | 0.6% | 10.9% | 12.8% | 9.6% | 21.8% | 44.2% | 18.6% | 7.7% | 70.5% |
| 2015 | 0.0% | 17.3% | 19.7% | 6.9% | 23.7% | 50.3% | 11.0% | 8.7% | 69.9% |
| 2016 | 0.0% | 14.4% | 16.0% | 8.0% | 22.5% | 47.1% | 11.2% | 7.5% | 66.8% |
| 2017 | 0.0% | 18.3% | 19.7% | 5.2% | 22.5% | 47.9% | 11.3% | 7.5% | 66.7% |
| 2018 | 0.0% | 13.2% | 13.2% | 6.8% | 22.7% | 42.7% | 9.1% | 11.8% | 63.6% |
| 2019 | 0.0% | 14.5% | 14.5% | 6.2% | 24.8% | 45.5% | 15.3% | 7.9% | 68.6% |
| 2020 | 0.5% | 17.4% | 17.9% | 5.5% | 23.4% | 46.8% | 11.0% | 9.2% | 67.0% |
| 2021 | 0.0% | 13.5% | 14.0% | 5.2% | 16.1% | 35.2% | 12.4% | 14.0% | 61.7% |
| 2022 | 0.5% | 12.1% | 12.6% | 5.3% | 14.7% | 32.6% | 9.5% | 8.4% | 50.5% |
| 2023 | 0.5% | 7.8% | 8.3% | 4.4% | 12.2% | 24.9% | - | - | - |
| 2024 | 0.5% | 5.4% | 5.9% | - | - | - | - | - | - |

Note: Percentages may not sum due to rounding. Percentages below the dashed lines indicate cohorts for which data are not complete. Status is reported as of the last significant docket update as determined by the Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse and is up to date as of the end of 2024. This analysis only considers federal filings. It does not present combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts may not match Figures 1–3, 7–10, 12, and 18, or Appendices 1 and 5.

0035

Appendices (continued)

Appendix 5: Filings by Industry—Core Filings

(Dollars in 2024 billions)

| Industry | Class Action Filings | | | | Disclosure Dollar Loss | | | | Maximum Dollar Loss | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Average 1997–2023 | 2022 | 2023 | 2024 | Average 1997–2023 | 2022 | 2023 | 2024 | Average 1997–2023 | 2022 | 2023 | 2024 |
| Financial | 30 | 11 | 27 | 19 | $31 | $30 | $50 | $53 | $194 | $199 | $252 | $138 |
| Consumer Non-Cyclical | 54 | 68 | 54 | 67 | $66 | $137 | $73 | $143 | $258 | $680 | $347 | $375 |
| Industrial | 17 | 9 | 21 | 11 | $19 | $5 | $25 | $21 | $71 | $38 | $107 | $123 |
| Technology | 24 | 25 | 28 | 37 | $39 | $37 | $96 | $87 | $163 | $261 | $494 | $338 |
| Consumer Cyclical | 21 | 29 | 30 | 35 | $18 | $24 | $59 | $75 | $121 | $242 | $827 | $508 |
| Communications | 27 | 21 | 20 | 20 | $53 | $398 | $43 | $45 | $314 | $1,138 | $1,226 | $75 |
| Energy | 7 | 7 | 7 | 14 | $6 | $3 | $5 | $13 | $40 | $40 | $33 | $52 |
| Basic Materials | 5 | 5 | 4 | 4 | $3 | $2 | $2 | $2 | $20 | $6 | $13 | $8 |
| Utilities | 3 | 2 | 2 | 0 | $2 | $0 | $2 | $0 | $16 | $2 | $41 | $0 |
| Unknown/ Unclassified | 5 | 24 | 16 | 13 | $1 | $0 | $0 | $0 | $1 | $0 | $0 | $1 |
| Total | 193 | 201 | 209 | 220 | $237 | $636 | $355 | $438 | $1,198 | $2,605 | $3,340 | $1,618 |

Note: Figures may not sum due to rounding. Filings with missing sector information or infrequently used sectors may be excluded. As a result, numbers in this chart may not match other total counts listed in the report. This figure presents combined core federal and state data. It does not present M&A lawsuits. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. The numbers shown in this figure have been inflation-adjusted to 2024 dollars and will not match prior reports. As a result, this figure's filing counts, DDL, and MDL may not match Figures 4–6, 11, 13–17, 20, and 22–23, or Appendices 2–4 and 6–7.

Appendices (continued)

## Appendix 6: Filings by Circuit—Core Federal Filings

(Dollars in 2024 billions)

| Circuit | Class Action Filings | | | | Disclosure Dollar Loss | | | | Maximum Dollar Loss | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Average 1997–2023 | 2022 | 2023 | 2024 | Average 1997–2023 | 2022 | 2023 | 2024 | Average 1997–2023 | 2022 | 2023 | 2024 |
| 1st | 8 | 3 | 6 | 9 | $10 | $2 | $5 | $8 | $31 | $35 | $21 | $37 |
| 2nd | 55 | 73 | 49 | 64 | $70 | $77 | $104 | $86 | $378 | $394 | $493 | $457 |
| 3rd | 18 | 16 | 36 | 19 | $29 | $56 | $32 | $33 | $124 | $318 | $395 | $117 |
| 4th | 6 | 7 | 7 | 10 | $4 | $3 | $7 | $9 | $19 | $19 | $18 | $104 |
| 5th | 11 | 7 | 7 | 11 | $10 | $1 | $2 | $16 | $61 | $23 | $50 | $64 |
| 6th | 8 | 1 | 9 | 9 | $10 | $1 | $10 | $16 | $44 | $7 | $126 | $40 |
| 7th | 8 | 7 | 6 | 9 | $12 | $28 | $9 | $13 | $47 | $116 | $41 | $44 |
| 8th | 5 | 1 | 2 | 3 | $5 | $9 | $30 | $25 | $21 | $52 | $66 | $60 |
| 9th | 50 | 59 | 66 | 69 | $72 | $432 | $114 | $211 | $397 | $1,516 | $1,856 | $625 |
| 10th | 6 | 7 | 4 | 7 | $4 | $6 | $6 | $2 | $19 | $37 | $24 | $19 |
| 11th | 13 | 8 | 12 | 7 | $7 | $1 | $9 | $15 | $38 | $7 | $146 | $47 |
| D.C. | 1 | 1 | 1 | 0 | $2 | $1 | $16 | $0 | $6 | $1 | $52 | $0 |
| Total | 189 | 190 | 205 | 217 | $235 | $617 | $343 | $435 | $1,185 | $2,527 | $3,288 | $1,612 |

Note: Figures may not sum due to rounding. The numbers shown in this figure have been inflation-adjusted to 2024 dollars and will not match prior reports. This analysis only considers core federal filings. It does not present M&A lawsuits or combined federal and state data, and lawsuits are not identified as parallel. This is different from other figures in this report that account for filings in federal courts that also have parallel lawsuits identified in state courts. In those analyses, when parallel lawsuits are filed in different years, only the earlier filing is reflected in the analysis. As a result, this figure's filing counts, DDL, and MDL may not match Figures 1–3, 7–10, 12, and 18, or Appendices 1 and 5.

## Appendix 7: Type of Security Issuance Underlying Federal Section 11 and State 1933 Act Filings



Source: Cornerstone Research and Stanford Law School Securities Class Action Clearinghouse; Jay R. Ritter, "Initial Public Offerings: Updated Statistics," University of Florida, January 9, 2025.

Note: Operating company IPOs exclude the following offerings: those with an offer price of below $5.00, ADRs, unit offers, closed-end funds, REITs, natural resource limited partnerships, small best-efforts offers, banks and S&Ls, and stocks not included in the CRSP database (CRSP includes Amex, NYSE, and Nasdaq stocks). SPAC IPOs include unit and non-unit SPAC IPOs, as defined by Professor Ritter. This figure presents combined federal and state data. Filings in federal courts may have parallel lawsuits filed in state courts. When parallel lawsuits are filed in different years, only the earlier filing is reflected in the figure above. Filings against the same company brought in different states without a filing brought in federal court are counted as unique state filings. As a result, this figure's filing counts may not match those in Figures 4–9, 14, 16–21, 24, and 26–28, or Appendices 2–4 and 6–9. The federal Section 11 lawsuits displayed may include Rule 10b-5 claims, but state 1933 Act filings do not.

0037

# Research Sample

- The Securities Class Action Clearinghouse, cosponsored by Cornerstone Research and Stanford Law School, has identified 6,749 federal securities class action filings between January 1, 1996, and December 31, 2024 (securities.stanford.edu). The analysis in this report is based on data identified by Stanford as of January 16, 2025.

- The sample used in this report includes federal filings that typically allege violations of Sections 11 or 12 of the Securities Act of 1933, or Sections 10(b) or 14(a) of the Securities Exchange Act of 1934.

- The sample is referred to as the "classic filings" sample and excludes IPO allocation, analyst, and mutual fund filings (313, 68, and 25 filings, respectively).

- Multiple filings related to the same allegations against the same defendant(s) are consolidated in the database through a unique record indexed to the first identified complaint.

- In addition to federal filings, class actions filed in state courts since January 1, 2010, alleging violations of the Securities Act of 1933 are also separately tracked.

- An additional 223 state class action filings in state courts, from January 1, 2010, to December 31, 2024, have also been identified.

The views expressed herein are solely those of the authors and do not necessarily represent the views of Cornerstone Research.

0038

The authors request that you reference Cornerstone Research and the Stanford Law School Securities Class Action Clearinghouse in any reprint of the information or figures included in this report.

Please direct any questions to:

**Alexander Aganin**
650.853.1660
aaganin@cornerstone.com

## Cornerstone Research

Cornerstone Research provides economic and financial consulting and expert testimony in all phases of complex disputes and regulatory investigations. The firm works with an extensive network of prominent academics and industry practitioners to identify the best-qualified expert for each assignment. With a reputation for high quality and effectiveness, Cornerstone Research has consistently delivered rigorous, state-of-the-art analysis since 1989. The firm has more than 1,000 professionals in nine offices across the United States, UK, and EU.

www.cornerstone.com

© 2025 by Cornerstone Research.
All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C and design is a registered trademark of Cornerstone Research, Inc.

0039