BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
ELISE LOPEZ, State Bar No. 324199
elise.lopez@freshfields.com
ELENA HADJIMICHAEL, State Bar No. 355715
elena.hadjimichael@freshfields.com
J. MIA TSUI, State Bar No. 344251
mia.tsui@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMI - GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALPHABET INC., et al., <br><br> Defendants. | Case No.: 3:23-cv-01186-RFL <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CERTIFY QUESTIONS FOR INTERLOCUTORY APPEAL** <br><br> Date:  July 29, 2025 <br> Time:  10:00 AM <br> Location: Courtroom 15 – 18th Floor <br> Judge: The Hon. Rita F. Lin |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES.................................................................................................. *ii*

TABLE OF ABBREVIATIONS............................................................................................ *v*

INTRODUCTION................................................................................................................ 1

ARGUMENT....................................................................................................................... 2

    I.   THE ORDER PRESENTS TWO CONTROLLING QUESTIONS OF LAW........................... 2

        A.  Both Are Questions of Law.......................................................................... 2

            1.  Questions about pleading standards are legal questions................................... 2

            2.  The law is not already settled........................................................................4

        B.  Both Questions of Law Are Controlling........................................................ 6

        C.  Both Questions Are Important...................................................................... 7

    II.  DIVIDED COURTS SHOW SUBSTANTIAL GROUNDS FOR DISAGREEMENT............. 8

    III. AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE TERMINATION............... 10

CONCLUSION................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
   2018 WL 2761855 (N.D. Cal. June 8, 2018)......................................................................3

*Bao v. SolarCity Corp.*,
   2016 WL 54133 (N.D. Cal. Jan. 5, 2016)....................................................................... 9

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008)....................................................................................6, 9

*Brown v. Bullock*,
   294 F.2d 415 (2d Cir. 1961).........................................................................................7

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1982)..................................................................................6, 7

*Core Optical Techs. v. Juniper Networks*,
   2021 WL 5978761 (N.D. Cal. 2021) ......................................................................... 10

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010).......................................................................................8

*Cunha v. Hansen Nat. Corp.*,
   2012 WL 12886194 (C.D. Cal. Oct. 22, 2012)............................................................4

*In re Delta Air Lines, Inc.*,
   2024 WL 3850486 (C.D. Cal. May 30, 2024)..............................................................2

*Dillon v. Murphy & Hourihane*,
   2014 WL 5408416 (N.D. Cal. Oct. 22, 2014)......................................................... 4, 10

*Elorreaga v. Rockwell Automation, Inc.*,
   2023 WL 4116623 (N.D. Cal. June 16, 2023)..............................................................2

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976).....................................................................................................3

*Hadjipateras v. Pacifica, S.A.*,
   290 F.2d 697 (5th Cir. 1961)........................................................................................8

*Henley v. Jacobs*,
   2019 WL 8333448 (N.D. Cal. Oct. 25, 2019) ............................................................ 10

*Huang v. Higgins*,
   2019 WL 1245136 (N.D. Cal. Mar. 18, 2019)............................................................. 9

*Hunt v. Bloom Energy Corp.*,
   2022 WL 1122835 (N.D. Cal. Apr. 14, 2022) ............................................................. 7

*In re LDK Solar Sec. Litig.*,
   584 F. Supp. 2d 1230 (N.D. Cal. 2008).......................................................................7

| Cases | Page |
|---|---|

*Ji v. Naver Corp.*,
    2024 WL 251402, at *2 (N.D. Cal. Jan. 23, 2024)........................................................ 4

*Joyce v. Amazon.com*,
    2025 WL 835054 (W.D. Wash. Mar. 17, 2025)............................................................ 8

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
    876 F.3d 541 (4th Cir. 2017)...................................................................................... 9

*Mehedi v. View, Inc.*,
    2024 WL 3748012 (N.D. Cal. Aug. 8, 2024)..................................................... 7, 9, 10

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009).................................................................................................... 7

*Omni MedSci v. Apple*,
    2020 WL 759514 (N.D. Cal. 2020)........................................................................... 6

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)................................................................................ 2, 10

*In re Resonant Inc. Sec. Litig.*,
    2016 WL 6603953 (C.D. Cal. Sept. 6, 2016)............................................................ 5

*Rollins v. Dignity Health*,
    2014 WL 6693891 (N.D. Cal. Nov. 26, 2014)........................................................... 8

*Ryan v. Flowserve Corp.*,
    444 F. Supp. 2d 718 (N.D. Tex. 2006).................................................................... 6–7

*In re SentinelOne, Inc. Sec. Litig.*,
    2024 WL 3297150 (N.D. Cal. July 2, 2024).............................................................. 9

*In re Snap Inc. Sec. Litig.*,
    2018 WL 3816764 (C.D. Cal. Aug. 8, 2018)............................................................ 7

*Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*,
    404 U.S. 6 (1971)....................................................................................................... 3

*In re Tahoe Res., Inc. Sec. Litig.*,
    2020 WL 1433514 (D. Nev. Mar. 23, 2020)............................................................. 5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).................................................................................................... 5

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010).................................................................................. 3, 4

*Turo Inc. v. City of Los Angeles*,
    2020 WL 4287583 (C.D. Cal. July 27, 2020)........................................................... 7

**Cases**                                                                                                 **Page**

*United States v. Real Prop. & Improvements*,
    2014 WL 1350914 (N.D. Cal. 2014)...................................................................................... 2

*Wellons, Inc. v. Sia Energoremonts Riga, Ltd.*,
    2013 WL 5913266 (W.D. Wash. Nov. 4, 2013)................................................................4

*Yaron v. Intersect ENT, Inc.*,
    2020 WL 6750568 (N.D. Cal. June 19, 2020)...............................................................6

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.*,
    2024 WL 4831889 (N.D. Cal. June 3, 2024)...............................................................10

**Statutes & Rules**

28 U.S.C. § 1292(b)........................................................................................... *passim*

N.D. Cal. Civ. L.R. 7-9(b).......................................................................................... 10

**Other Authorities**

Wendy Gerwick Couture, *Around the World of Securities Fraud in Eighty Motions to Dismiss*,
    45 Loy. U. Chi. L.J. 553, 554 (2014)...............................................................................3

Antonin Scalia, *The Rule of Law as a Law of Rules*,
    56 Chi. L. Rev. 1175 (1989).............................................................................................3

5B *Wright & Miller's Federal Practice & Procedure* § 1357 (4th ed. Supp. 2025)................................3

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| Defendants | Alphabet Inc., Google LLC, and Sundar Pichai |
| FAC | Plaintiffs' First Amended Complaint for Violations of the Federal Securities Laws, filed August 7, 2023 (ECF No. 46) |
| Motion | Defendants' Motion to Certify Questions for Interlocutory Appeal, filed June 17, 2025 (ECF No. 118) |
| NBA | September 2018 Network Bidding Agreement |
| Opposition | Plaintiffs' Opposition to Defendants' Motion to Certify Questions for Interlocutory Appeal, filed July 29, 2025 (ECF No. 122) |
| Order | Order granting in part and denying in part Defendants' motion to dismiss, filed March 24, 2025 (ECF No. 108) |
| Plaintiffs | Menora Mivtachim Insurance Ltd., Menora Mivtachim Pensions and Gemel Ltd., AMI - Government Employees Provident Fund Management Company Ltd., City of Fort Lauderdale Police & Fire Retirement System, and More Mutual Funds Management (2013) Ltd. |
| SAC | Plaintiffs' Second Amended Complaint for Violations of the Federal Securities Laws, filed September 24, 2024 (ECF No. 87) |

Emphasis is added unless otherwise noted. Certain quotation marks, alteration marks, citations, and emphases have been omitted.

**INTRODUCTION**

Why are Plaintiffs afraid of appellate review? If Plaintiffs were indeed confident in their merits arguments, they would welcome Ninth Circuit review. This motion is not intended to and will not slow down discovery, which is proceeding in parallel. *Infra* at 10. This is about getting federal securities law right. On scienter, Defendants ask the Ninth Circuit to examine if allegations that lack particularity on their own can somehow gain that particularity when considered collectively. On falsity, Defendants ask whether a district court may evaluate the truth or falsity of statements out of the specific context in which they are made. These issues are critical to uniformity in federal securities law and, unless certified, would otherwise be lost to appellate review, given that securities cases are often resolved at the pleading stage or settle without an appeal. Mot. at 2–3.

The test for interlocutory appeal under § 1292(b) is simple: the certified question presented must be legal in nature, controlling, subject to difference of opinion, and likely to advance resolution of the case. *Id.* at 3. More important questions are certified with greater liberality. *Id.* at 2.

Plaintiffs oppose interlocutory review by challenging *all* of the elements of this test. But their arguments lack even facial credibility. Even though they admit that reversal of this Court's order could end the case, Plaintiffs question whether the issues presented are controlling. That defies both Ninth Circuit authority and common sense: dispositive issues are controlling. *Id.* at 4. The same is true of Plaintiffs' incredible argument that an appeal would not advance the case because it would take a long time. Then no interlocutory appeal would ever be certified.

Absurd as these positions are, they pale in comparison with Plaintiffs' claim that the issues presented are not legal in nature. Plaintiffs try to reframe Defendants' questions as critiquing how the Court applied settled pleading standards to the pleaded facts. That is wrong. First, the standards are not settled—a debate is taking place among district courts on both issues. Second, neither question concerns the specifics of Plaintiffs' suit, but rather broad principles of legal interpretation. Each can be answered in the abstract, without reference to this complaint. Plaintiffs' fear of appellate review is well founded: if the Ninth Circuit answers either question in Defendants' favor, every securities class action that tries to survive dismissal by using the same pleading artifices will be impacted, *as a matter of law*. Plaintiffs may not like that outcome, but that is what interlocutory review is meant to resolve.

**ARGUMENT**

The Opposition attacks each of the elements required for certification: that the Order presents (1) "controlling question[s] of law," for which there are (2) "substantial ground[s] for difference of opinion," and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011); 28 U.S.C. § 1292(b); *see* Mot. at 3. Plaintiffs are wrong as to each.

**I.  THE ORDER PRESENTS TWO CONTROLLING QUESTIONS OF LAW**

**A.  Both Are Questions of Law**

**1.  Questions about pleading standards are legal questions**

Defendants seek Ninth Circuit review of two issues of first impression. Mot. at 1.[1] Both ask the Ninth Circuit to examine the pleading standards in securities class actions. *Id.* Both are questions of law "that can be resolved quickly without delving into a particular case's facts." *Elorreaga v. Rockwell Automation, Inc.*, 2023 WL 4116623, at *1 (N.D. Cal. June 16, 2023).

In conclusory terms, Plaintiffs deny that these are "pure" questions of law. Opp. at 4–9. They claim resolving them would require the Ninth Circuit to consider factual issues. *Id.* They attempt to reframe Defendants' real question—*what* Plaintiffs need to plead—into an evaluation *whether* the pleaded facts meet a well-known standard. *Id.* Plaintiffs' characterization of the issues is disingenuous and dodges the real argument. It fails for three reasons.

First, Defendants' questions can be resolved without reference to the complaint. Defendants ask the Ninth Circuit to clarify the *legal* standards for pleading falsity and scienter in securities fraud claims. *See* Mot. at 1. "Whether a district court applied the correct legal standard" is a question of law. *E.g.*, *United States v. Real Prop. & Improvements*, 2014 WL 1350914, at *2 (N.D. Cal. 2014); *see also In re Delta Air Lines, Inc.*, 2024 WL 3850486, at *10 (C.D. Cal. May 30, 2024) ("where [a] mixed question is coupled with a pure legal question, such as whether the district court applied the correct legal standard, both questions can be certified"). As Judge Posner underscored in the lesser *Twombly*

---

[1] Curiously, Plaintiffs treat "Alphabet's size" as one of the "controlling issues of law [sic]" identified in the Motion. Opp. at 7. This is apparently in response to a mundane description of Alphabet as "one of the largest companies in history," Mot. at 4 —something that Plaintiffs' own complaint also notes, ¶ 48. The questions for which Defendants seek certification are limited to those enumerated in the Motion, *see* Mot. at 1, not any additional issues suggested by the Opposition.

DEFS' REPLY ISO MOTION TO CERTIFY                    -2-
QUESTIONS FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

pleading context, "we have neither factfindings nor the application of a legal standard to factfindings; the question presented by the appeal is the sufficiency of the allegations of a complaint," which "requires the interpretation, and not merely the application, of a legal standard." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2010). Were it otherwise, as Plaintiffs propose, no question regarding the interpretation of a pleading standard could be subject to interlocutory appeal. That notion is inconsistent with reality. *See id.* at 626 (collecting cases).

Second, that the questions arise from a motion to dismiss militates in favor of certifying an interlocutory appeal, not against it. While § 1292's strictures were created to apply to broader procedural scenarios, motions to dismiss are generally resolved as a matter of law. Tellingly, the mixed questions of law and fact to which Plaintiffs allude arose in different procedural contexts.[2]

The basic function of a motion to dismiss is to measure the pleaded facts against the yardstick of a legal standard. 5B *Wright & Miller's Federal Practice & Procedure* § 1357 (4th ed. Supp. 2025) ("Federal pleading standards are applied to determine whether a complaint in a federal court action states a claim for relief."); *see* Mot. at 2, 4. No court can do so without knowing what the yardstick is. And any court seeking to define a legal standard necessarily must engage with pleaded facts. As Justice Scalia once observed, "the genius of the common-law system" is that the law evolves based on new facts—"case-by-case, deliberately, incrementally, one-step-at-a-time." *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989). As a result, in a common-law regime, the standard's boundaries are defined by the sufficiency of facts pleaded in various precedents, both granting and denying motions to dismiss. This principle holds especially true in securities class actions, which are a judicial, not statutory, creation. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196–97 (1976) (listing cases). When courts crafted the private right of action under § 10(b), they made it dependent on patterns of pleaded facts. *E.g.*, *Superintendent of Ins. of State of N. Y. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 13 (1971) ("[W]e have dealt only with allegations and with the question of law whether a

---

[2] *See, e.g.*, *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 2761855, at *2 (N.D. Cal. June 8, 2018) (summary-judgment order that "applied the law to a particular set of facts in" the "record"), *cited in* Opp. at 5, 7, 10. This precedent should not be misapplied to bar interlocutory review of motions to dismiss, given that the legal standard itself is defined by the overall body of motions to dismiss. *See* Wendy Gerwick Couture, *Around the World of Securities Fraud in Eighty Motions to Dismiss*, 45 Loy. U. Chi. L.J. 553, 554 (2014) ("[O]pinions on motions to dismiss are immensely important to the evolution of the substantive and procedural law of securities fraud.").

DEFS' REPLY ISO MOTION TO CERTIFY                    -3-
QUESTIONS FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

cause of action . . . has been charged under § 10(b).").  This standard necessarily evolves in light of fact patterns pleaded in various cases.  The question here is not *whether* Plaintiffs pleaded specific facts, but rather *what* facts they must plead to state a claim. Mot. at 1.

*Third*, Plaintiffs' own authority betrays their cause. *See* Opp. at 4, 15; *Dillon v. Murphy & Hourihane*, 2014 WL 5408416 (N.D. Cal. Oct. 22, 2014); *Cunha v. Hansen Nat. Corp.*, 2012 WL 12886194 (C.D. Cal. Oct. 22, 2012). *Dillon* involved an interlocutory appeal from a motion to dismiss on the basis of personal jurisdiction and required the district court to apply the jurisdictional standard to a set of pleaded facts. 2014 WL 5408416, at *1–2. Judge Freeman reasoned that, "though determination of personal jurisdiction over a party requires some examination of the factual allegations at hand, it is a purely legal question to be determined by the Court." *Id.* at *1 (citing *Wellons, Inc. v. Sia Energoremonts Riga, Ltd.*, 2013 WL 5913266, at *1 (W.D. Wash. Nov. 4, 2013) (orders denying a motion to dismiss for lack of personal jurisdiction are certifiable under § 1292(b)). And Judge Wu held in *Cunha* that "[d]efendants' questions go to whether [p]laintiff has stated a claim," and so present "a legal question, not one which will turn on factual disputes or fact-finding." 2012 WL 12886194, at *6.

Defendants do not ask the Ninth Circuit "to overturn any findings of fact" but rather "to apply . . . the pleading standard . . . to a set of factual allegations taken as true for purposes of" the motion to dismiss. *In re Text Messaging*, 630 F.3d at 625; *see* Mot. at 1. As the court of appeals held in *Text Messaging*, certification for interlocutory review is appropriate. *See* 630 F.3d at 627.

### 2. The law is not already settled

Aware of the weakness of their attempt to paint legal questions as factual, Plaintiffs claim—contradictorily—that the law is perfectly "clear," such that Defendants merely raise "challenges to the district court's application of settled law to specific alleged facts, which are not subject to interlocutory review." Opp. at 2 (quoting *Ji v. Naver Corp.*, 2024 WL 251402, at *2 (N.D. Cal. Jan. 23, 2024)). But this assumes—rather than demonstrates—that the law is indeed "settled." *Id.* As the Opposition itself shows, that is not the case, revealing Plaintiffs' argument as circular.

**Scienter standard is not settled.** While trying to argue the "well-established" nature of the scienter standard, Plaintiffs actually reveal the very confusion that the Ninth Circuit should resolve. The Opposition muddles the concepts of (1) *particularity* and (2) *sufficiency* in the context of drawing

DEFS' REPLY ISO MOTION TO CERTIFY                    -4-
QUESTIONS FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

an inference of scienter. *See* Opp. at 5–6. Having melded the two, Plaintiffs make the banal observation that the Supreme Court's decision in *Tellabs* "applies to Defendants' first two purported legal questions" regarding scienter, *id.* at 6, as if this provides a comprehensive solution. It does not.

It is beyond dispute that "*Tellabs* governs the scienter analysis," and "directs that . . . scienter must be based on 'all the allegations holistically.'" *Id.* at 5–6; *accord Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007). It is equally uncontroversial that the Ninth Circuit follows *Tellabs*. *See* Opp. at 5; Mot. at 5–6. (Accordingly, those aspects of the scienter standard were not the subject of any question presented for certification.) Defendants' questions pertain to something more specific: how should the standard weigh *unparticularized* scienter allegations. *Supra* at 1; Mot. at 6.

Contrary to Plaintiffs' suggestion, the answer does not obviously present itself—either in *Tellabs* itself, or in any subsequent Ninth Circuit decision. According to Plaintiffs, *Tellabs* "instruct[s] that the assessment of particularity itself must be done on a holistic basis." Opp. at 2. But Plaintiffs identify no such language in *Tellabs* itself, which requires only that "allegations must be considered collectively" to determine whether "a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference." 551 U.S. at 325–326. The Supreme Court nowhere establishes whether or not "particularity itself" can be obtained by enumerating unparticularized facts and claiming that, together, they obtain a particularity they lack individually. *See* Opp. at 2 (positing that weak allegations can be imbued with greater force when summed together). Nor does *Tellabs* explain whether a strong inference can be derived, collectively, from allegations that *each* lack particularity when considered on their own. The Ninth Circuit has not spoken on either question.[3]

**Falsity standard is not settled.** Plaintiffs also claim that the "standard for falsity under Section 10(b) is crystal clear," but their own analysis of how courts have variously assessed falsity "in context" shows that clarity is sorely lacking. *See* Opp. at 8; *infra* at 8. As with scienter, the question presented neither contests nor ignores the basic contours of the pleading standard: "that falsity must be assessed fairly and in context," particularly when "determining the falsity of statements based on highly technical information." *Id.* (citing Mot. at 11–12). Although "context matters" in the abstract,

---

[3] In Plaintiffs' cases, the "legal standards that govern [the] claim" were "undisputed." *In re Tahoe Res., Inc. Sec. Litig.*, 2020 WL 1433514, at *5–6 (D. Nev. Mar. 23, 2020) (defendants conceded existence of "prevailing law"); *see also In re Resonant Inc. Sec. Litig.*, 2016 WL 6603953, at *2 (C.D. Cal. Sept. 6, 2016) (precise question at issue "ha[d] been clearly resolved by the Ninth Circuit"). Not so here.

certainly (*id.*), it remains an open question whether courts can interpret a challenged statement in a way that *conflicts* with that context. *See* Mot. at 11–14. The Opposition implies that courts can indeed do so, based on "the well-established" and "objective standard of a 'reasonable investor.'" Opp. at 8 (citing *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)). Plaintiffs suggest that if some investor might read a statement out of context, so too may a court. *Id.* But they fail to tether this supposition to any Ninth Circuit precedent, *id.*, or to address the fact that actual investors did not read the statement the way Plaintiffs posit a "reasonable" investor would, *id.* at 14; Mot. at 13.[4]

**No disagreement with application of settled law.** Because the law is not settled with respect to either question, it cannot be said (as Plaintiffs repeatedly assert) that "Defendants' [quarrel] is with this Court's application of the law to the facts of the case." Opp. at 2, 5. As the Motion notes, Defendants' "request is not about whether the Order is right or wrong"—it concerns a "deepening split among district courts in this Circuit on controlling issues of securities law." Mot. at 1; *infra* at 8–10.

**B. Both Questions of Law Are Controlling**

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). Here, reversal as to either question would "result in dismissal of the case." *Omni MedSci v. Apple*, 2020 WL 759514, at *1 (N.D. Cal. 2020); *see* Mot. at 4. When this Court previously held that Plaintiffs' FAC failed to plead falsity as to most challenged statements, and failed to plead scienter as to any statement, it dismissed the case entirely. ECF. No. 86. Exactly the same outcome would ensue if Defendants prevailed in an interlocutory appeal. Unwilling to confront this eventuality head on, Plaintiffs complain that the Motion improperly conflates two elements of the § 1292 analysis: "[E]ven if a reversal on appeal 'would require dismissal of the entire case,' that argument is directed at the third prong of Section 1292(b), . . . an independent requirement." Opp. at 7. This is a puzzling assertion, given that "courts have found the issue of whether an interlocutory appeal involves a controlling question of law to be 'closely tied' to the requirement that the appeal will materially advance the ultimate termination of the litigation." *Ryan v. Flowserve Corp.*,

---

[4] Plaintiffs try to paint the market's reaction as "loss causation," Opp. at 14, but this is backwards. What "the market understood" *before* the purported truth revelation goes to falsity. *Yaron v. Intersect ENT, Inc.*, 2020 WL 6750568, at *4, 7–8 (N.D. Cal. June 19, 2020) (considering analyst reports that reflected "information available to the market" when assessing alleged material misstatement).

444 F. Supp. 2d 718, 723 (N.D. Tex. 2006); *see also, e.g.*, *Mehedi v. View, Inc.*, 2024 WL 3748012, at *1 (N.D. Cal. Aug. 8, 2024) (question was "controlling" where "reversal on appeal . . . would require dismissal of the entire action"). Plaintiffs try to downplay the relevance of such cases on the basis that they involved "a pure question of law." Opp. at 7. That is no distinction. *Supra* at 2–4.

Because the questions presented are dispositive, *see infra* at 10, they do represent the "exceptional situation[] in which allowing an interlocutory appeal would avoid protracted and expensive litigation," and are therefore "controlling." *In re Cement*, 673 F.2d at 1026. Plaintiffs take a contrary view, but their examples of cases that lacked "exceptional circumstances" are factually remote from this case. Opp. at 4; *see, e.g.*, *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1259–60 (N.D. Cal. 2008) (issue presented was merely "small part of a larger alleged fraud"); *In re Snap Inc. Sec. Litig.*, 2018 WL 3816764, at *1 (C.D. Cal. Aug. 8, 2018) ("litigation will proceed in substantially the same . . . scope" regardless of appeal because court sustained claims "predicated on . . . the very same facts"); *Hunt v. Bloom Energy Corp.*, 2022 WL 1122835, at *2 (N.D. Cal. Apr. 14, 2022) (same).

### C. Both Questions Are Important

The Supreme Court directs that a district court "should not hesitate to certify an interlocutory appeal" where its ruling "is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009). The Order presents one example, as it implicates the "uniformity and predictability" of the "federal securities laws." Mot. at 2, 4. The Opposition takes exception to any discussion of "policy issues about the nature of securities litigation," claiming that inclusion of such topics "stretch[es]" § 1292(b) "beyond its legitimate bounds." Opp. at 7. Plaintiffs' extreme position would blind the Court—in fact, here, the entire federal court system—to an issue's importance. Mot. at 4. That flies in the face of the Supreme Court's instruction and of common sense. Courts that weighed the importance of the issues presented determined that greater significance weighs *in favor of* certification. *E.g.*, *Brown v. Bullock*, 294 F.2d 415, 417–18 (2d Cir. 1961) ("determination was likely to have precedential value for a large number of other suits"); *Turo Inc. v. City of Los Angeles*, 2020 WL 4287583, at *2 (C.D. Cal. July 27, 2020) ("Courts more typically permit interlocutory review . . . when the order" presents issues "of special consequence."). This comports with the aim of § 1292(b): "to give to the appellate machinery . . . a considerable flexibility operating under the immediate, sole and broad

DEFS' REPLY ISO MOTION TO CERTIFY                    -7-
QUESTIONS FOR INTERLOCUTORY APPEAL
CASE NO. 3:23-CV-01186-RFL

control of Judges." *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 702–03 (5th Cir. 1961). Plaintiffs do not seriously contest that, if addressed by the Ninth Circuit, the questions here will have "broad-reaching ramifications" for the federal securities regime. Mot. at 14. They are issues of consequence.

## II.   DIVIDED COURTS SHOW SUBSTANTIAL GROUNDS FOR DISAGREEMENT

Plaintiffs next assert there is no substantial difference in opinion because the Order did not "conflict[] with" any "district court's construction or application of" the scienter and falsity standards at issue. Opp. at 10. They are wrong, for at least three reasons.

First, as the Opposition notes, "substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010), *cited in* Opp. at 9. The fact that courts have grappled with, and arrived at different conclusions on, the interpretation of these pleading requirements confirms there are substantial grounds for differing opinions. *See* Mot. at 6–9, 11–12 (cataloging divergent opinions); *Rollins v. Dignity Health*, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014) ("One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed."). The starkest example of this is *Joyce v. Amazon.com*, a case litigated by Plaintiffs' counsel that made scienter allegations closely parallel to those alleged here. 2025 WL 835054, at *10–11 (W.D. Wash. Mar. 17, 2025). In *Amazon*, those allegations failed, *id.*, but here they survived, Order at 11–12. Plaintiffs conspicuously avoid any lengthy discussion of this case, instead noting the "unremarkable" fact "[t]hat district courts may reach different conclusions when applying [applicable] standards to unique factual scenarios." Opp. at 12. But this sidesteps the real issue: that two district courts within this Circuit came to conflicting conclusions when assessing nearly identical, and equally unparticularized, scienter pleadings.

Plaintiffs' cannot harmonize the divergent rulings on the falsity standard, hoping to make it seem settled. *Id.* at 3, 13. According to Plaintiffs, the cases Defendants "describe as 'depart[ing] from' a statement's context actually accounted for that context," and "[c]onversely, the cases that Defendants contend interpreted statements more narrowly within their context" instead "looked broadly beyond the statement." *Id.* at 13. But this still reveals a split: maybe Plaintiffs would draw the line differently than Defendants, but a split is a split.

Second, the Opposition implies that the Court's decision dismissing the FAC for failure to allege scienter somehow negates grounds for disagreement. Opp. at 7–8 (citing ECF No. 86). If anything, the opposite is true. *Cf. Mehedi*, 2024 WL 3748012, at *2 ("[T]his Court clearly struggled in analyzing the question, issuing two orders that reached opposition conclusions.").

The Order did not suggest that any new allegations affected the Court's conclusion that the FAC's allegations—"that some Defendants spoke broadly about ad tech to investors, that Pichai testified before Congress, and that Google's product leadership recommended weakening header bidding to Pichai"—were insufficiently particularized to support a strong inference of scienter. ECF No. 86 at 11. Rather, the Court focused on the SAC's additional allegations—that negotiations of the NBA with Facebook "involved the top echelon at both companies," and that, as Google's CEO, Mr. Pichai ***must*** have been "aware of the terms of" that agreement—and found they "adequately alleged" scienter. *See* Order at 10. Yet these allegations resemble those that courts have deemed inadequate. *See, e.g.*, *Huang v. Higgins*, 2019 WL 1245136, at *18 (N.D. Cal. Mar. 18, 2019) (an industry's "general state of affairs . . . do[es] not confirm any speculation as to whether [challenged] practices were, in fact, improper"); *Bao v. SolarCity Corp.*, 2016 WL 54133, at *5 (N.D. Cal. Jan. 5, 2016) (courts "cannot infer" scienter based on "speculation" about what defendant "would have been aware" of); *In re SentinelOne, Inc. Sec. Litig.*, 2024 WL 3297150, at *7 (N.D. Cal. July 2, 2024) (refusing to "infer scienter based on an[other] inference"); *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) ("[S]tacking inference upon inference . . . violates the statute's mandate that the strong inference of scienter be supported by facts, not other inferences."). Each involved allegations as to defendants' state of mind based on conjecture, inferential chains, or circumstantial facts about the business. It is easily conceivable that a company—perhaps especially one as large as Alphabet—could take all the actions alleged by Plaintiffs without its CEO's knowledge or involvement. Whether such disparate allegations, which individually lack particularity, add up to an inference of scienter sufficiently particularized so as to be more compelling than the innocent alternative is the real question of law here. The Court's own diverging decisions show ample ground for disagreement whether the SAC lacks "particular allegations which strongly imply Defendant[s'] contemporaneous knowledge that the statement was false when made." *Berson*, 527 F.3d at 989.

Finally, Plaintiffs claim that courts (this one included) "consistently apply" the standards at issue, Opp. at 10, but the "problem with [their] position is that a fair-minded jurist could come to the opposite outcome when faced with the same question, even without conflicting authority directly speaking to the question." *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP Inc.*, 2024 WL 4831889, at *3 (N.D. Cal. June 3, 2024). This alone shows substantial grounds for difference of opinion as to the "novel legal issues" presented here. *Reese*, 643 F.3d at 688.

## III. AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE TERMINATION

Plaintiffs effectively concede that reversal on scienter or falsity would "dispos[e]" of this case. Opp. at 15. Yet they contend material advancement is not met just by showing an "appeal could end this case," or else "all . . . dispositive interlocutory orders would be automatically appealable." *Id.*[5] This is incorrect. Courts have held, repeatedly, that an appeal that can resolve a case in its entirety would materially advance the litigation. *E.g.*, *Core Optical Techs. v. Juniper Networks*, 2021 WL 5978761, at *1 (N.D. Cal. 2021) (reversal on appeal likely to terminate case); *Mehedi*, 2024 WL 3748012, at *2 (same). Plaintiffs' cases are far afield from this one.[6]

As a final resort, Plaintiffs claim that "an appeal will substantially delay this litigation for no good reason." Opp. at 3, 15. The *Mehedi* court certified an order over similar protests: that interlocutory appeal would "delay termination of the litigation given the time it will take to resolve the appeal." 2024 WL 3748012, at *2 (certifying order and granting stay). Such concerns are even more ill-founded here. Unlike in *Mehedi*, Defendants did not seek a stay and, even now, are working toward discovery deadlines set by the Court. *See* ECF No. 121, *cited in* Opp. at 2.

## CONCLUSION

Defendants respectfully request that the Court certify its Order for interlocutory appeal.[7]

---

[5] *Henley v. Jacobs* was "a garden variety defamation action" headed to trial. 2019 WL 8333448, at *3 (N.D. Cal. Oct. 25, 2019). The movant in *Dillon* did not seek to advance his own case but to "clarify" existing Ninth Circuit law. 2014 WL 5408416, at *2. Neither circumstance applies here.

[6] Even if an appeal "still may not end this [case]," Opp. at 15, "neither § 1292(b)'s literal text nor controlling precedent requires [a] final, dispositive effect on the litigation," *Reese*, 643 F.3d at 688.

[7] Defendants also proposed reconsideration should the Court decline to certify the Order. *See* Mot. at 15 n.3 (moving under Local Rule 7-9(b), which governs "Motion[s] *for Leave*"). The preceding 15 pages of the Motion explain how the Court may have "fail[ed] . . . to consider . . . dispositive legal arguments" as to scienter and falsity. *Id*. at 15 n.3. Defendants cite the MTD to show that these arguments were "presented to the Court before issuance of" the Order. *Id.*

Dated: July 8, 2025

FRESHFIELDS US LLP

By: */s/ Boris Feldman*
        Boris Feldman

*Attorneys for Defendants*