# POMERANTZLLP

**Emma Gilmore**
Partner

The Honorable Rita F. Lin                                    December 10, 2025
U.S. District Court, Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue, Courtroom 15, 18th Floor
San Francisco, CA 94102

Re:    *AMI - Government Employees Provident Fund Management Company Ltd. v. Alphabet Inc., et al*., No. 23-cv-01186 (N.D. Cal.)

Dear Judge Lin:

We represent Lead Plaintiffs in the above-captioned matter and write to request resolution of a dispute concerning the Court's May 15, 2025 Scheduling Order (ECF No. 121) (the "Scheduling Order"). This dispute arises from Defendants' refusal to produce discovery as directed by the Court. *See* Scheduling Order at 2 ("Defendants' request for staged discovery is denied."). Plaintiffs also seek resolution of the below enumerated discovery disputes.

## I.     The Scheduling Order Did Not Limit Defendants' Discovery Obligations to Previously Produced Documents

The Court's Scheduling Order did not in any way limit Plaintiffs' discovery rights under the Federal Rules. The Court simply directed Defendants to expedite "substantial completion of document discovery for relevant non-privileged documents ***previously produced*** in connection with other litigation or investigations" by September 5, 2025 (the "September 5 Production"), as Plaintiffs had proposed in the Joint Management Statement and Rule 26(f) Report. ECF No. 117 at 17 ("Rule 26(f) Report"). Despite the absence of any discovery limitations, Defendants advised Plaintiffs that they may "consider[]" producing responsive documents beyond those previously produced in other litigations only if such discovery is "required," and as they see fit.

In an unprecedented attempt to skirt their discovery obligation and to deprive Plaintiffs of due process, Defendants employ baseless rhetoric ("reality is closing in on Plaintiffs") and brandish self-selected "statistical sampling." Defendants cite no authority permitting such unilateral maneuvers, as none is allowed. *See CRA Holdings US, Inc. v. United States*, 2017 WL 370811, at *4–5 (W.D.N.Y. Jan. 26, 2017) (rejecting discovery based on one party's "self-selected sample," requiring a sampling "protocol" and the non-sampling party to have access to selected files to "assure the integrity of the sampling procedure"). But even at face value, Defendants' "statistical analysis" is specious and misleading. Defendants begin with a universe of ~21 million documents that were "collected (but not produced)" in antitrust "ad tech proceedings," but this is a flawed starting point. *First*, Plaintiffs charge Defendants with securities fraud, not antitrust violations, so any attempts *to limit* discovery to those proceedings fall flat. *Second*, the initial universe of potentially relevant documents should be defined by search terms agreed upon by the parties, not unilaterally picked by Defendants. *In re eBay Seller Antitrust Litig.*, 2009 WL 10694848, at *1–2 (N.D. Cal. July 13, 2009) (rejecting production based on defendants' "unilateral imposition" of its own search terms and ordering production based on plaintiffs' terms); *Benanav v. Healthy Paws*

Honorable Rita F. Lin
Page 2

*Pet Ins. LLC*, 2022 WL 3587982, at *3 (W.D. Wash. Aug. 22, 2022) (rejecting "unilateral self-search" and noting that a "reasonable search" under Rule 34 requires running search terms).

Defendants' impermissible sampling suffers from other infirmities. While they claim to have analyzed a "random sample" of 9,600 documents that resulted in supposedly only 7 "relevant" documents, Defendants provide no explanation for what constitutes a purported 95% confidence interval or a 1% margin of error. But even assuming that Defendants' metrics are reliable (they are not), Defendants ignore that if 7 out of 9,600 documents are relevant, then *~15,312 documents are relevant across the ~21 million document universe*. As such, Defendants' analysis implicitly *admits* the existence of a significant body of relevant documents outside of prior productions, thus underscoring that Plaintiffs' access to normal Rule 26 discovery is critical to their prosecution of this case.

## II.    Disputes Related to Specific Requests for Production ("RFPs")[1]

Plaintiffs also seek adjudication of the following discovery disputes:

1.  **Relevant Time Period**: The Parties disagree on the Relevant Time Period in this case.

    *For Facebook-related documents*, Defendants contend that the relevant time period is Feb. 1, 2017 to Sept. 16, 2021 (one year after Defendant Pichai's sustained false statement). The Parties agree on the start date. As to the end date, however, Plaintiffs adopt the modest position that they are entitled to documents until the end of the Class Period—Jan. 23, 2023—as such discovery bears on Defendants' falsity *and* scienter. *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 2024 WL 495965, at *2 (D. Utah Feb. 8, 2024) ("[P]ost-class period facts may . . . confirm what a defendant should have known.") (*scienter*) ("[A]ny information that sheds light on whether the class period statements [are] false or materially misleading is relevant.") (*falsity*); *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *6 (S.D. Cal. May 6, 2021) (discovery granted after Class Period's close because "documents created after the alleged fraud was revealed may be relevant to scienter and falsity"). To avoid production, Defendants baselessly claim that anticipated discovery undercuts Mr. Pichai's scienter, but that adjudication is *not Defendants* to make, let alone in the absence of relevant discovery Defendants have failed to produce.

    *For non-Facebook related documents*, Defendants contend that the relevant time period is Jan. 1, 2019 to Sept. 16, 2021. This start date is untenable, as Google's advantages over bidding participants started at least as early as 2017, (ECF No. 87) ¶¶ 95–105, rendering Feb. 1, 2017 the appropriate start date for *all* documents.[2]

2.  **RFP 25, 27–28:** Google's spoliation of evidence that is at the crux of Plaintiffs' claims more than justifies narrowly-tailored discovery into that destruction. In a January 2023 antitrust suit by the Department of Justice ("DoJ") and eight states—***based on the same conduct alleged in***

---

[1] Requests for Production are referred to by their "RFP" numbers as referenced in Plaintiffs' First Set of Requests for Production (dated June 11, 2025). Excerpts of the relevant RFPs are appended as **Exhibit A**.

[2] Defendants' September 5 Production was limited by their position on the Relevant Time Period. If Plaintiffs win on Relevant Time Period, Defendants must refresh the September 5 Production to comport with Plaintiffs' Relevant Time Period, *i.e.* Feb. 1, 2017 to Jan. 23, 2023 (for all documents).

Honorable Rita F. Lin
Page 3

*this case*, SAC ¶¶ 271–272, 301—the government informed the court that Google "***destroyed a significant volume of relevant chats***." While Defendants euphemize that their chat history was "on" by March 2023, the court as recently as April 2025 observed that Google "employees who received litigation holds ***failed to turn on their chat history***" and found that Google's "***systemic disregard***" of evidentiary rules and its "***misuse of the attorney-client privilege may well be sanctionable***." *United States v. Google LLC*, 778 F. Supp. 3d 797, 872-3 (E.D. Va. 2025); *see also* SAC ¶¶ 322–327. Further, after the DoJ suit, Alphabet's stock tumbled, SAC ¶¶ 273–277, so any argument that Defendants had "no obligation to anticipate this suit" strains credulity. Fundamentally, Plaintiffs are entitled to understand what and how much information related to their claims was destroyed due to Google's misconduct, and whether any relevant documents were destroyed after Alphabet was on notice to anticipate this lawsuit. *DNA Genotek Inc. v. Spectrum Sols. L.L.C.,* 2021 WL 5908985, at *6 (S.D. Cal. Dec. 14, 2021) (granting motion to compel retention policies where production "would assist [movant] in determining the universe of responsive documents, evaluate the completeness of existing or subsequent document production, identify any gaps in document production, and craft targeted discovery requests to efficiently obtain any missing records"); *accord Greenberg v. Amazon.com, Inc.*, 2025 WL 2639221, at *4 (W.D. Wash. Sept. 12, 2025).

For these reasons, Plaintiffs respectfully request that the Court direct Defendants to promptly comply with their discovery obligations as reflected in the Court's Scheduling Order and to produce all responsive documents to Plaintiffs' requests.

**DEFENDANTS' POSITION**

Reality is closing in on Plaintiffs. The discovery that the Court ordered, and Defendants timely provided, contained no evidence of fraud. Without a quick pivot, Plaintiffs will no longer have a case, so they ask the Court for license to go mine for a new theory. Plaintiffs propose browsing through new categories of documents, none of which will lead to information relevant to the existing claims, and each of which is "unduly burdensome and disproportionate." *Rivera Martinez v. GEO Group, Inc.*, 2019 WL 3758027, at *2 (N.D. Cal. June 28, 2019). Plaintiffs are not "entitle[d] to discovery to develop new claims or defenses." *Menzel v. Scholastic, Inc.*, 2019 U.S. Dist. LEXIS 126132, at *2 (N.D. Cal. July 29, 2019) (Chen, J. quoting Rakoff, J.).

**A.  Burdensome Document Review Will Not Lead to Discovery of Relevant Material**

"[R]elevance must be tethered to a claim." *Elgindy v. Aga Serv. Co.*, 2021 WL 5083761, at *3 (N.D. Cal. Nov. 2, 2021). Plaintiffs' sole remaining claim centers on a single statement made in Google's responses to Congress and regarding the functionality of its unified first price auction (UFPA). More than three months ago, Plaintiffs received the discovery the Court ordered: "Relevant Non-Privileged Documents Previously Produced in Connection with Other Litigation or Investigations." ECF No. 121 at 1. Plaintiffs fail to carry their "burden of demonstrating [the] relevance" of the expansive additional discovery they request. *United States v. McGraw–Hill Cos.*, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014).

As demonstrated by statistical analysis, the new documents Plaintiffs demand have no relevance value while being burdensome to review. Statistical sampling is routinely used in discovery. The Advisory Committee Notes on Rule 26 endorse sampling to determine relevance/burden tradeoffs. Fed. R. Civ. P. 26(a), Advisory Committee Note to 2006 amendment.

3

Honorable Rita F. Lin
Page 4

The Sedona Conference has likewise recommended, since at least 2017, statistical sampling for that purpose. Sedona Conference, *Commentary on Proportionality in Electronic Discovery*, 18 Sedona Conf. J.141, 165 (2017). This Court has held the same. *E.g., In re Meta Pixel Healthcare Litig. and Tax Filing Cases*, 2023 U.S. Dist. LEXIS 87691–92, at *11 (N.D. Cal. May 18, 2023) (producing party could review "null set sample" to confirm additional documents not relevant); *Cohen v. Apple Inc.*, 2020 WL 13582130, at *1 (N.D. Cal. Aug. 3, 2020) (same). Nationally, courts hold that statistical "sampl[ing] of the null set provides validation and quality assurance of the document production," *City of Rockford v. Mallinckrodt ARD, Inc.*, 326 F.R.D. 489, 494 (N.D. Ill. 2018), and an effective way to eliminate burdensome collection and review. *Black & Veatch Corp. v. Aspen Ins. (UK) LTD*, 2015 WL 13047860, at *4–5 (D. Kan. Mar. 31, 2015) (denying motion to compel because plaintiffs' suggested search terms led primarily to irrelevant information when sampled at a 99% confidence level and 5% margin of error); *777 Partners LLC v. Leadenhall Cap. Partners LLP*, 2025 U.S. Dist. LEXIS 40926, at *5 (S.D. Fla. Mar. 4, 2025) (producing party to use statistical sampling to evaluate documents).

Defendants, as the "producing part[y,] are best situated to determine the most reasonable ways to collect, search, and review ESI." *Metacapital Mgmt., L.P. v. Meta Platforms, Inc.*, 2023 U.S. Dist. LEXIS 93314, at *15 (S.D.N.Y. May 25, 2023) (endorsing statistical sampling). Starting with ~21 million documents collected (but not produced) in the ad tech antitrust proceedings that Plaintiffs claim revealed the falsity of the sole statement at issue, Defendants analyzed a random sample of 9,600-documents (95% confidence level; 1% margin of error). Just seven documents were relevant, for estimated relevance of 0.07% (95% probability that relevance is within ±1% of 0.07%). Defendants are happy to provide supporting materials for our statistical sampling and to discuss further at a hearing. Roaming through millions of documents for a new theory will not change that rigorous testing yielded near-zero relevance and is "highly unlikely to prove relevant to the issues of this case." *GEO Group*, 2019 WL 3758027, at *2.

### B. Plaintiffs Do Not Explain Relevance of Extended Time Period

The only remaining challenged statement was made on September 16, 2020, and concerned UFPA, which launched in September 2019. ECF No. 87 ¶¶ 79, 82, 114; ECF No. 98 at 4. Defendants produced documents related (1) to the Facebook agreement (which purportedly contradicts the challenged statement) going back to February 1, 2017, *18 months before* the agreement was signed, and (2) to UFPA going back to January 1, 2019, *nine months before* UFPA existed. Defendants produced documents through September 16, 2021, *a year after* the challenged statement, for both categories. Plaintiffs' request beyond those timeframes tries to revive "all the other twice-dismissed allegations." *In re Clorox Co. Sec. Litig.*, 238 F. Supp. 2d 1139, 1143 (N.D. Cal. 2002). The Court "need not condone the use of discovery to engage in" this "fishing expedition." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004).

***Facebook-Related Documents:*** Plaintiffs are not entitled to discovery coextensive with the class period. "The class period does not determine the period of relevancy for discovery purposes." *Coppel v. Sea World Parks & Ent., Inc.*, 2024 WL 5337347, at *5 (S.D. Cal. Mar. 1, 2024). Instead, the "allegations of the complaint" are what "logically shape the scope of discovery." *Id*. Discovery about the challenged statement must bear on falsity and scienter "at the time [it was] made"—September 14, 2020. *In re Tenaris S.A. Sec. Litig.*, 2022 WL 905125, at *2 (E.D.N.Y. Mar. 28, 2022). Documents that post-date the statement by *years* have no bearing on Plaintiffs' "allegations of wrongdoing" or Defendants' "contemporaneous awareness of that

Honorable Rita F. Lin
Page 5

wrongdoing." *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 3516490, at *2 (rejecting "facially overbroad" requests for "wholly unrelated" documents).

Plaintiffs' unsupported assertion that the discovery occurring years after the challenged statement "bears on Defendants' falsity and scienter" is a far cry from the "concrete examples" of conduct occurring within a year of challenged statements in the cases they cite. *Supra* 2. In fact, discovery *contradicts* Plaintiffs' assertion that the challenged statement was (1) Pichai's or (2) occurred over a sustained period. Discovery shows Mr. Pichai neither signed nor knew about the challenged statement in September 2020 or later. Piling on years of additional discovery will not change what was true at the time the statement was made. Plaintiffs cannot simply "roam in the shadow zones of relevance . . . to explore matter which does not presently appear germane." *Krause v. Nevada Mut. Ins. Co.*, 2014 WL 496936, at *3 (D. Nev. Feb. 6, 2014).

***Non-Facebook-Related Documents:*** Plaintiffs likewise fail to show the relevance of documents unrelated to Facebook going back to February 1, 2017, over ***two years*** before Google rolled out the UFPA, and more than ***three years*** before the challenged statement. Their assertion that alleged advantages "started at least as early as 2017" is immaterial. The sole remaining challenged statement discusses the UFPA—not any earlier iterations of Google's ad auction. *See* ECF No. 108, 8–10. Further "review is unreasonable and disproportionate in light of the narrow issues remaining." *Campbell v. Facebook Inc.*, 2016 WL 7888026, at *2 (N.D. Cal. Oct. 4, 2016).

***Sampling Results:*** Defendants again used statistical sampling to evaluate each party's time period. Sampling at 95% confidence level with a 2.5% margin of error yielded 149 relevant documents within Defendants' selected timeframe (9.31% relevance) and ***zero*** relevant documents outside that time period. Sampling for the specific time periods Plaintiffs requested confirmed 0.81% estimated relevance for February 1, 2017, to January 1, 2019 for non-Facebook-related documents (out of 147,267 documents), and 1% estimated relevance for September 16, 2021, to January 24, 2023 for all documents (out of 144,598 documents).

### C. Plaintiffs Attempt to Relitigate Unrelated Issues

Plaintiffs have not alleged spoliation, nor is there a basis to suspect it in this action. By demanding retention policies that do not relate to this case, Plaintiffs ignore that Defendants had no obligation to anticipate this suit before it was filed on March 16, 2023, or, even if they did, why the "scope of [that] duty" would extend beyond antitrust allegations already at issue in the DOJ complaint. *Complete Entm't Res. v. Live Nation Entm't, Inc.*, 2016 WL 11785092, at *4 (C.D. Cal. Nov. 10, 2016). By then, Google's chat history defaulted "on," without the ability to turn off for individuals on legal hold, rendering irrelevant their purported concerns. *See* Memorandum at 15, *United States v. Google LLC*, No. 1:20-cv-03010 (D.D.C. Feb. 23, 2023), ECF No. 512-1 (chat retention policy changed February 9, 2023). Neither of Plaintiffs' cited cases involved document retention matters that were litigated elsewhere for purposes of entirely different lawsuits. "The Court will not, and cannot, compel" discovery in this case regarding information that is already available in the public record in another. *Neal v. City of Bainbridge Island*, 2023 WL 2214245, at *4 (W.D. Wash. Feb. 24, 2023) (collecting cases).

Honorable Rita F. Lin
Page 6

Respectfully submitted,

/s/ *Emma Gilmore*
Emma Gilmore

/s/ *Doru Gavril*
cc: All Counsel of Record (via ECF)          Doru Gavril