# EXHIBIT 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Case No. 3:23-cv-01186-RFL

-------------------------------------x

AMI-GOVERNMENT EMPLOYEES PROVIDENT FUND

MANAGEMENT COMPANY LTD., Individually and

on Behalf of All Others Similarly

Situated,

                        Plaintiffs,

        - against -

ALPHABET INC., et al.,

                        Defendants.

-------------------------------------x

                        December 8, 2025

                        11:12 a.m.


        VIDEOTAPED DEPOSITION of DANIEL SUEKE

as corporate representative of MENORA

MIVTACHIM INSURANCE LTD., held at the

offices of FRESHFIELDS US LLP, located at 3

World Trade Center, 175 Greenwich Street,

New York, New York 10007, before Anthony

Giarro, a Registered Professional Reporter,

a Certified Realtime Reporter and a Notary

Public of the State of New York.

Page 1

then for this one.  And just a few more questions.  You could put away the spreadsheets for the time being.

At the beginning of our conversation, you had mentioned that your impression of the complaint that you looked at is that if you had known about some of Google's anticompetitive practices, you might have made different investment decisions; is that a fair statement?

A      Yeah.  I would say initially, it was kind of a low-level type overhang.  We're talking about early kind of 2020s.  And as you mentioned, as the various events happened, the various suits came out from the various regulatory bodies, et cetera, then the overhang became increasingly big for us, and it was perceived by the market too. So, yeah, so it kind of gradually increased over time.

Q      In your understanding, what piece of information was missing or incorrect that would have led to a

Page 197

different investment decision?

A        It was very vague at the beginning, early days where it was like a general overhang mentioned in the market. It wasn't something specific.  It wasn't something necessarily that had been disclosed publicly by the company or by anyone else in the market.  It was just like a concern.

And then as time went on, you saw more and more cases brought against the company.  Then it became mor real, more of an issue.  And the overhang amplified, I would say.

Q        In terms of information that you tracked about Alphabet, we discussed quite a bit already.

Did you ever specifically track congressional testimony via Alphabet's executives?

A        That's not the cure for insomnia.  Viewing congressional testimony is not something I would want to do myself, wish on my enemies.  But it's something we would track in terms of

Page 198

what was reported in the financial news.

So if it was something of relevance to the financial news that was reported, then, of course, we would be aware of it as it pertains -- if it was of particular significance to the company.

Q       In other words, if it filtered through to an analyst report or if it hit the news?

A       Again, our main communication channels, interface, vis a vis any investment, is via, as I've already said, the Bloomberg terminal.  So whatever comes on the Bloomberg terminal of relevance and significant is something that we would be aware of.  Anything kind of more off the radar or not spoken about and not publicly available, we wouldn't have known about.

Q       Do you ever recall congressional testimony by Google or Alphabet or its executives coming up in the news or in analyst reports during the 2020 to 2023 period?

Page 199

A        I can't recall.  They obviously happened over that time.  If you're asking me for specific details, I wouldn't be able to give it to you.

Q        When did you first learn about this lawsuit?

A        Approximately three months ago, I'd say; three, four months ago, yeah.

Q        What was the context in which you learned about it?

A        Hadar, the legal counsel at Menora, I believe sent me an e-mail or maybe called me first, saying that we were the lead plaintiff in the case and that I should buy winter clothes for New York, something along those lines.

Q        Did you, other than shopping, do anything else when you learned about the lawsuit?

A        No.  I mean I reviewed -- again, as I mentioned, I reviewed the file when it was given to me of the documents, of the e-mails to remind myself.  It's something I'm kind of

Page 200

C E R T I F I C A T I O N

I, ANTHONY GIARRO, a Shorthand Reporter and a Notary Public, do hereby certify that the foregoing witness, DANIEL SUEKE, was duly sworn on the date indicated, and that the foregoing, to the best of my ability, is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party to this action.

Dated: December 12, 2025

_____

ANTHONY GIARRO

Page 213

ELENA HADJIMICHAEL

elena.hadjimichael@freshfields.com

December 12, 2025

RE: AMI - Government Employees Provident Fund v. Alphabet Inc.

12/8/2025, Daniel Sueke, (#7771666).

The above-referenced transcript has been

completed by Veritext Legal Solutions and

review of the transcript is being handled as follows:

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext

to schedule a time to review the original transcript at

a Veritext office.

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF

Transcript - The witness should review the transcript and

make any necessary corrections on the errata pages included

below, notating the page and line number of the corrections.

The witness should then sign and date the errata and penalty

of perjury pages and return the completed pages to all

appearing counsel within the period of time determined at

the deposition or provided by the Code of Civil Procedure.

Contact Veritext when the sealed original is required.

__ Waiving the CA Code of Civil Procedure per Stipulation of

Counsel - Original transcript to be released for signature

as determined at the deposition.

__ Signature Waived – Reading & Signature was waived at the

time of the deposition.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

__ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF
Transcript - The witness should review the transcript and
make any necessary corrections on the errata pages included
below, notating the page and line number of the corrections.
The witness should then sign and date the errata and penalty
of perjury pages and return the completed pages to all
appearing counsel within the period of time determined at
the deposition or provided by the Federal Rules.
_x_ Federal R&S Not Requested - Reading & Signature was not
requested before the completion of the deposition.

Page 215

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.