POMERANTZ LLP
Jeremy A. Lieberman (admitted *pro hac vice*)
Emma Gilmore (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com

*Counsel for Plaintiffs and for the Proposed Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMI - GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALPHABET INC., GOOGLE LLC, and SUNDAR PICHAI <br><br> Defendants. | Case No. 3:23-CV-01186-RFL <br><br><br> Date:  April 14, 2026 <br> Time:  10:00 AM <br> Location:  Courtroom 15 – 18th Floor <br> Judge:  Rita F. Lin |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................1

    A.    Defendants' Front-End Price Impact Arguments Are Irrelevant ......................................1

    B.    Defendants Fail to Sever the Link Between Their Misstatement and the Back-End Drops ...............................................................................................................................2

        1.    Defendants Have Not Proven a Complete Lack of Price Impact Based on the December 16, 2020 AGs' Lawsuit .........................................................................2

        2.    Defendants Have Not Proven a Complete Lack of Price Impact Based on the September 1, 2021 Report ...........................................................................................6

        3.    Defendants Have Not Proven a Complete Lack of Price Impact Based on the October 22, 2021 Unredacted AGs' Complaint .......................................................8

        4.    Defendants Have Not Proven a Complete Lack of Price Impact Based on the February 11, 2022 EPC Complaint .......................................................................10

        5.    Defendants Have Not Proven a Complete Lack of Price Impact Based on the January 24, 2023 DOJ Complaint ........................................................................12

        6.    Defendants Have Not Proven a Complete Lack of Price Impact Based on the April 17, 2023 Corrective Disclosure ..................................................................13

    C.    Plaintiffs' Proposed Damages Model Meets the Predominance Requirement ...............14

CONCLUSION ............................................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972)................................................................................................................ 14

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)................................................................................................................ 10

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    77 F.4th 74 (2d Cir. 2023) ....................................................................................................... 8

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
    955 F.3d 254 (2d Cir. 2020), *vacated on other grounds*, 594 U.S. 113 (2021)........................... 1, 5, 7

*Booth v. Strategic Realty Tr., Inc.*,
    2014 WL 3749759 (N.D. Cal. July 29, 2014)........................................................................... 6

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
    2023 WL 2932485 (D. Conn. Apr. 13, 2023)....................................................................... 1, 3, 4, 15

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    310 F.R.D. 69 (S.D.N.Y. 2015) ............................................................................................... 3

*Cooper v. Thoratec Corp.*,
    2018 WL 2117337 (N.D. Cal. May 8, 2018)..................................................................... 2, 6, 14, 15

*Crews v. Rivian Auto., Inc.*,
    2024 WL 3447988 (C.D. Cal. July 17, 2024)........................................................................... 3

*Dean v. China Agritech*,
    2012 WL 1835708 (C.D. Cal. May 3, 2012) ............................................................................ 4

*Di Donato v. Insys Therapeutics, Inc.*,
    333 F.R.D. 427 (D. Ariz. 2019) ........................................................................................... 2, 3

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011).............................................................................................................. 5, 9

*Erica P. John Fund v. Halliburton Co.*,
    309 F.R.D. 251 (N.D. Tex. 2015) ............................................................................................. 4

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
    594 U.S. 113 (2021) ......................................................................................................... 1, 2, 5, 8

ii

*Hatamian v. Advanced Micro Devices, Inc.*,
    2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)............................................................... 2, 5, 14, 15

*Homyk v. ChemoCentryx, Inc.*,
    2024 WL 1141699 (N.D. Cal. Mar. 6, 2024)................................................................. 1, 2, 6

*In BofI Holding, Inc. Sec. Litig.*,
    2021 WL 3742924 (S.D. Cal. Aug. 24, 2021) ............................................................. 14, 15

*In re Apple Inc. Sec. Litig.*,
    2022 WL 354785 (N.D. Cal. Feb. 4, 2022) .................................................................. 5, 8, 9

*In re Banc of Cal. Sec. Litig.*,
    326 F.R.D. 640 (C.D. Cal. 2018) ................................................................................. 15

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    281 F.R.D. 134 (S.D.N.Y. 2012) ................................................................................. 6

*In re Bare Escentuals, Inc. Sec. Litig.*,
    745 F. Supp. 2d 1052 (N.D. Cal. 2010) ....................................................................... 6

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
    337 F.R.D. 193 (D. Minn. 2020)................................................................................. 1, 2, 4

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009)................................................................................. 6

*In re Connetics Corp. Sec. Litig.*,
    2008 WL 3842938 (N.D. Cal. Aug. 14, 2008) ............................................................. 14

*In re Diamond Foods, Inc. Sec. Litig.*,
    295 F.R.D. 240 (N.D. Cal. 2013)................................................................................. 10

*In re Dura Pharms. Sec. Litig.*,
    452 F. Supp. 2d 1005 (S.D. Cal. 2006)........................................................................ 14

*In re DVI, Inc. Sec. Litig.*,
    639 F.3d 623 (3d Cir. 2011)........................................................................................ 3

*In re EQT Corp. Sec. Litig.*,
    2022 WL 3293518 (W.D. Pa. Aug. 11, 2022) .............................................................. 4, 15

*In re Fibrogen Sec. Litig.*,
    2024 WL 1064665 (N.D. Cal. Mar. 11, 2024).............................................................. 8

*In re Finisar Corp. Sec. Litig.*,
    2017 WL 6026244 (N.D. Cal. Dec. 5, 2017)................................................................ 2, 4

iii

*In re LDK Solar Sec. Litig.*,
    255 F.R.D. 519 (N.D. Cal. 2009)..........................................................................................10

*In re Mattel, Inc. Sec. Litig.*,
    2021 WL 4704578 (C.D. Cal. Oct. 6, 2021).............................................................................8

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
    2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) .......................................................................14

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)...................................................................................................3

*In re Redback Networks, Inc. Sec. Litig.*,
    2007 WL 963958 (N.D. Cal. Mar. 30, 2007)..........................................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2019 WL 3001084 (S.D.N.Y. July 10, 2019) .....................................................................1, 6

*In re Snap Sec. Litig.*,
    334 F.R.D. 209 (C.D. Cal. 2019) ..........................................................................................15

*In re Xcelera.com Sec. Litig.*,
    430 F.3d 503 (1st Cir. 2005)..................................................................................................3

*Junge v. Geron Corp.*,
    2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) .....................................................................5, 15

*Karinski v. Stamps.com, Inc.*,
    2020 WL 6572660 (C.D. Cal. Nov. 9, 2020)........................................................................10

*Kreek v. Wells Fargo & Co.*,
    652 F. Supp. 2d 1053 (N.D. Cal. 2009) ..................................................................................6

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ............................................................................................5, 7

*Loritz v. Exide Techs.*,
    2015 WL 6790247 (C.D. Cal. July 21, 2015)........................................................................15

*Luna v. Marvell Tech. Grp., Ltd.*,
    2017 WL 4865559 (N.D. Cal. Oct. 27, 2017)........................................................................15

*Mauss v. NuVasive, Inc.*,
    2018 WL 656036 (S.D. Cal. Feb. 1, 2018) .............................................................................6

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)................................................................................................................6

*Mineworkers' Pension Scheme v. First Solar, Inc.*,
    881 F.3d 750 (9th Cir. 2018) ........................................................................................ 7, 8

*Pearlstein v. BlackBerry Ltd.*,
    2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ...................................................................... 5

*Pelletier v. Endo Int'l PLC*,
    338 F.R.D. 446 (E.D. Pa. 2021)...................................................................................... 11

*Pirnik v. Fiat Chrysler Autos., N.V.*,
    327 F.R.D. 38 (S.D.N.Y. 2018) ....................................................................................... 7

*Provenz v. Miller*,
    102 F.3d 1478 (9th Cir. 1996) ....................................................................................... 10

*Rabkin v. Lion Biotechs., Inc.*,
    2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ................................................................... 7

*Ret. Sys. v. Acadia Healthcare Co.*,
    2022 WL 4598044 (M.D. Tenn. Sep. 30, 2022) ............................................................... 3

*Ret. Sys. v. S. Co.*,
    332 F.R.D. 370 (N.D. Ga. 2019)............................................................................. 3, 4, 15

*Ret. Tr. v. RH, Inc.*,
    2018 WL 4931543 (N.D. Cal. Oct. 11, 2018).................................................................. 14

*Sayce v. Forescout Techs., Inc.*,
    754 F. Supp. 3d 878 (N.D. Cal. 2024) .............................................................................. 5

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    335 F.R.D. 276 (N.D. Cal. 2020)..................................................................................... 10

*Snellink v. Gulf Res., Inc.*,
    870 F. Supp. 2d 930 (C.D. Cal. 2012) ............................................................................ 14

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
    775 F. App'x 51 (3d Cir. 2019) ........................................................................................ 3

*Weston v. DocuSign, Inc.*,
    348 F.R.D. 354(N.D. Cal. 2024)...................................................................................... 10

*Zwick Partners, LP v. Quorum Health Corp.*,
    2019 WL 1450546 (M.D. Tenn. March 29, 2019)............................................................. 4

v

**ARGUMENT**

Plaintiffs have demonstrated that the market for Alphabet's securities was efficient. *See* Memorandum supporting Class Certification (Dkt. No. 134); Dkt. No. 134-2 ("Nye I"). Defendants do not contest market efficiency. Because Plaintiffs have "establish[ed] the applicability of *Basic*'s presumption of reliance, the burden then shifts to the defendants, who 'bear the burden of persuasion . . . to rebut the *Basic* presumption by a preponderance of the evidence.'" *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at \*11 (S.D.N.Y. July 10, 2019). "The relevant 'inquiry is whether Defendants have proven a ***complete lack of price impact*** during the Class Period, ***not*** whether the stock price decline following individual corrective disclosures was caused by the alleged misrepresentations, which is a loss causation analysis not appropriate at this stage.'" *Homyk v. ChemoCentryx, Inc.*, 2024 WL 1141699, at \*4 (N.D. Cal. Mar. 6, 2024) (quoting *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at \*12 (D. Conn. Apr. 13, 2023). Moreover, "for a defendant to erase the inference that the corrective disclosure had price impact . . . it must demonstrate . . . using event studies or other means, that the other events explain ***the entire price drop***." *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 955 F.3d 254, 270 n.18 (2d Cir. 2020) ("*Ark. Tchr.*") (emphasis added), *vacated on other grounds*, 594 U.S. 113, 126-27 (2021) ("*Goldman*"). To meet their burden, Defendants must "disprove ***both***" front-end and back-end price impact. *In re CenturyLink Sales Pracs. & Sec. Litig.*, 337 F.R.D. 193, 209 (D. Minn. 2020). This is a "daunting task," *Alexion*, 2023 WL 2932485, at \*11, which Defendants do not even come close to meeting.

Equally meritless are Defendants' challenges to Dr. Nye's proposed damages methodology, which is employed in nearly every securities class action.

**A. Defendants' Front-End Price Impact Arguments Are Irrelevant**

Defendants' argument that there is no front-end price impact (Defendants' Opposition, Dkt. No. 142 ("Op.") 10-11) is misplaced as Plaintiffs rely on the "price maintenance" theory that Defendants' misrepresentations and omissions artificially ***maintained*** the price of Alphabet's stock (SAC[1] ¶259). Under a price maintenance theory, the alleged misleading statement(s) do not necessarily introduce inflation into the stock price, such that one would expect the market price of the company's stock to

---

[1] "SAC" refers to the Second Amended Complaint, Dkt. No. 87.

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL

increase on the day of the alleged misrepresentation. *Goldman*, 594 U.S. at 123; *Cooper v. Thoratec Corp.*, 2018 WL 2117337, at *4 (N.D. Cal. May 8, 2018) ("[T]hat . . . statement did not lead to any significant increase in stock price is entirely consistent with Plaintiffs' theory that this misrepresentation prolonged the artificial inflation of Thoratec's stock price. . . . Defendants' proffered evidence of lack of price impact is irrelevant to Plaintiffs' theory . . . ."); *see similarly Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *7 (N.D. Cal. Mar. 16, 2016); *Di Donato v. Insys Therapeutics, Inc.*, 333 F.R.D. 427, 444 (D. Ariz. 2019); *CenturyLink*, 337 F.R.D. at 209.[2]

**B.  Defendants Fail to Sever the Link Between Their Misstatement and the Back-End Drops**

    **1.  Defendants Have Not Proven a Complete Lack of Price Impact Based on the December 16, 2020 AGs' Lawsuit**

The SAC pleads that on December 16, 2020, the Attorneys General ("AGs") of ten states filed an antitrust complaint, which targeted the company for anticompetitive conduct, including rigging of digital advertising auctions, resulting in Alphabet's stock price declining in value. ¶¶260-61; Gilmore Decl., Ex. 1 (Expert Reply Report of Zachary Nye ("Nye II")) ¶¶45-46. The Court held that Plaintiffs sufficiently alleged loss causation related to this news. Dkt. No. 108 ("Order") at 16-17. Defendants raise several meritless arguments to disprove price impact.

***Defendants' "statistical significance" argument fails***. Dr. Nye explains that following the AG complaint, the Class A and C stock price declined at a statistically significant 97.13% and 96.47% confidence level, respectively. Nye II ¶¶46. These declines demonstrate price impact. *See Homyk*, 2024 WL 1141699, at *5 ("A statistically significant price adjustment following a corrective disclosure is evidence that the original misrepresentation did, in fact, affect the stock price.") (quoting *In re Mattel, Inc. Sec. Litig.*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021)).[3] Defendants rely on a flawed event study prepared by their expert, opining that the decline was not statistically significant at the 95%

---

[2] Defendants' reliance on *In re Finisar Corp. Sec. Litig.* is misplaced because it was not a price maintenance action. 2017 WL 6026244, at *8 (N.D. Cal. Dec. 5, 2017); *Cooper*, 2018 WL 2117337, at *4 n.2 ("Because the plaintiff in *[Finisar]* was 'not proceeding on a price maintenance theory,' that case is inapposite."). SAC ¶¶328-32.

[3] Defendants' expert, Dr. Ferrell, falsely suggests that Dr. Nye opined that the 95% confidence level is the only threshold by which statistical significance can be determined. Nye II ¶¶31-37 (recognizing 90% confidence level as appropriate, an opinion previously embraced by Dr. Ferrell).

confidence level. (Op. 13). As Dr. Nye explains in his report, Dr. Ferrell improperly included Alphabet's earnings announcements, which comprised seven of the eight most dramatic stock price reactions during the Class Period, to bias his report against a finding of statistical significance. Nye II ¶¶16-23, 47; 45-60. Dr. Ferrell also improperly limited his analysis to a single-day event window, despite Plaintiffs alleging a two-day stock price decline, and academic event study literature commonly evaluating price impact over multi-day periods. SAC ¶261; Nye II ¶¶24-30, 47. Dr. Ferrell himself has in the past stated that "[i]t often makes sense to use multiple-day [windows]." Nye II ¶29. There is nothing "exceptional[]" (Op. 21) in using one and two-day windows for event studies. *See In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 513 n.11 (1st Cir. 2005) (rejecting argument that a two-day event window is inconsistent with an efficient market); *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 635 (3d Cir. 2011) (same); *Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 391-92 (N.D. Ga. 2019) (same). Moreover, even on an intraday basis, Alphabet's specific returns are statistically significant at above the 93% confidence level. Nye II ¶48.[4]

Even if the price decline following the disclosure were not statistically significant at the 95% level (it was), it does not in any way preclude a finding of price impact, *let alone prove zero price impact*. *See Crews v. Rivian Auto., Inc.*, 2024 WL 3447988, at *15 (C.D. Cal. July 17, 2024) ("[A]s other courts have noted, while a statistically significant price drop after a corrective disclosure is evidence of price impact, the converse is not necessarily true."); *Insys*, 333 F.R.D. at 444 (same); *Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x 51, 53 (3d Cir. 2019) (same); *In re Petrobras Sec.*, 862 F.3d 250, 278-79 & n.30 (2d Cir. 2017) (noting "inaccurate findings in some securities case" that insist on statistical significance in single-firm studies); *see also Alexion*, 2023 WL 2932485 at *11; *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 95 (S.D.N.Y. 2015); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2022 WL 4598044, at *6 (M.D. Tenn. Sep. 30, 2022) (finding expert's opinion that lack of

---

[4] Likewise, Dr. Ferrell wrongly criticizes Dr. Nye for failing to explain why he excluded Meta from the industry index (Op. 13 n.12, 18), but Dr. Nye explains that Meta, which changed its name from Facebook mid-way through the Class Period, is alleged to be a participant in Google's bid-rigging, and was excluded to avoid tainting the regression model. Nye II ¶¶22-23. Nye also demonstrates that his statistical results are robust to the inclusion of Meta, which slightly *improves* the explanatory power of his regression model. ¶21 and Tables 1, 2.

statistically significant price decline proves no price impact "rel[ies] on a statistical fallacy").[5] Indeed, it is a bedrock principle of economics that the absence of statistically significant price declines does not demonstrate a lack of price impact. Nye II ¶¶7-15 (collecting economic literature and cases). As Dr. Nye explains, Dr. Ferrell's insistence on the presence of statistical significance is particularly improper when applied to single-firms event studies. *Id*. ¶¶12-13. In his 2015 paper on price impact and materiality, Dr. Ferrell opined that "value relevant information" may not induce a stock price reaction that is statistically significant at a certain threshold, and that a lack of statistical significance does not indicate a lack of price impact. *Id*. ¶11.[6]

Furthermore, even Dr. Ferrell acknowledges that the December 16, 2020, disclosure was accompanied by *negative residual returns* in Alphabet's stock price, meaning the stock declined compared to the industry on that date, which demonstrates price impact (Nye II ¶46, noting negative "residual return"). *See also Alexion*, 2023 WL 2932485 at *12 (finding evidence of price impact from abnormal residual return, even in the absence of statistical significance); *CenturyLink*, 337 F.R.D. at 211 (same); *see also S. Co.*, 332 F.R.D. at 396 n.33 (residual price decline demonstrates price impact).

***Defendants' "market commentary" argument fails***. As Dr. Nye's report shows (and Dr. Ferrell concedes), there was extensive analyst commentary related to the corrective disclosure, *i.e.*, the AG complaint. Nye II ¶¶55-59. These facts further evidence price impact. *See S. Co.*, 332 F.R.D. at 396 ("[T]he existence of a price decline and analyst commentary highlighting the negative news is, of course evidence

---

[5] *See similarly In re EQT Corp. Sec. Litig.*, 2022 WL 3293518, at *16 (W.D. Pa. Aug. 11, 2022). Defendants' cited case, *Finisar*, 2017 WL 6026244 at *7, does not engage in any meaningful analysis of whether insistence on statistical significance is proper and, moreover, the court "did not analyze the question of whether a non-significant decline *proves an absence* of price impact." *S. Co.*, 332 F.R.D. at 395 n.32 (emphasis added) (distinguishing *Finisar*). The same is true for *Dean v. China Agritech*, 2012 WL 1835708, at *7 (C.D. Cal. May 3, 2012) (noting that "*Plaintiffs have not satisfied their burden* to show conclusive evidence of a causal relationship"). In *Erica P. John Fund v. Halliburton Co.*, 309 F.R.D. 251 (N.D. Tex. 2015), "the court there based its ruling *both* on the absence of a statistically significant price reaction *and* that the relevant information had been previously disclosed." *S. Co.*, 332 F.R.D. at 395 n.32 (distinguishing case).

[6] Proffering competing (and flawed) expert analysis does not come close to establishing a complete lack of price impact. *See Zwick Partners, LP v. Quorum Health Corp.*, 2019 WL 1450546, at *14 (M.D. Tenn. March 29, 2019) (disagreement between experts regarding the statistical significance of a corrective disclosure "creates a factual dispute . . . better left until trial"); *S. Co.*, 332 F.R.D. at 389 (similar).

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL

of price impact." Defendants argue that the market commentary did not specifically discuss *the challenged statement* (Op. 14), but that is not what the law requires. The Ninth Circuit does not require a corrective disclosure to be the "mirror image" of an alleged misrepresentation, let alone that analysts comment on the *alleged misstatement*. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) ("The disclosure need not precisely mirror the earlier misrepresentation"; it need only "*relate back* to the misrepresentation"). "At this stage of the litigation—when Plaintiffs are ***not*** required to show loss causation—the alleged disclosure[s] need only 'relate to,' concern,' or be 'linked' to a specific alleged misrepresentation." *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at \*18 (S.D.N.Y. Jan. 26, 2021).

Dr. Ferrell cites two news articles that he claims contain "confounding information," but makes no attempt to isolate or measure their associated price effects on Alphabet's securities, nor does he determine whether that information would reasonably explain Alphabet's entire price decline. Nye II ¶¶59-60. "Merely suggesting that another factor ***also*** contributed to an impact on a security's price does not establish that the fraudulent conduct complained of did not also impact the price of the security." *In re Apple Inc. Sec. Litig.*, 2022 WL 354785, at \*10 (N.D. Cal. Feb. 4, 2022) (emphasis added) (quoting *Waggoner v. Barclays PLC*, 875 F.3d 79, 105 (2d Cir. 2017)); *see also Ark. Tchr.*, 955 F.3d at 270 n.18 (defendants must "demonstrate" that "other events explain the entire price drop"). Defendants' argument is an attack on loss causation, which cannot be decided at class certification. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812-13 (2011) ("*Halliburton I*"). "The fact that a subsequent loss may have been caused by factors other than the revelation of a misrepresentation has nothing to do with whether an investor relied on the misrepresentation in the first place, either directly or presumptively through the fraud-on-the-market theory." *Id*; *accord*, *Sayce v. Forescout Techs., Inc.*, 754 F. Supp. 3d 878, 898 (N.D. Cal. 2024).[7] *Goldman* did not change this binding precedent, but merely clarified that the "generic nature of an alleged misrepresentation" (*e.g.*, "we have faith in our business model") may be one factor in assessing price impact. *Goldman*, 594 U.S. at 121-23 & n.2 (explaining that while a court may use evidence to "decide the price impact issue," it must "resist[] the temptation to draw what may be obvious

---

[7] *See also Junge v. Geron Corp.*, 2022 WL 1002446, at \*6 (N.D. Cal. Apr. 2, 2022) (same); *Hatamian*, 2016 WL 1042502, at \*9 (same).

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL

inferences for the closely related issues that must be left for the merits" (citation omitted)). Defendants' fact-bound challenges to loss causation should be rejected.[8]

***Defendants' statute of limitations argument is meritless.*** Defendants wrongly demand that the December 16, 2020 disclosure should be removed because "it occurred more than two years before Plaintiffs filed their complaint on March 16, 2023." (Op. 14-15). Contrary to their assertion, the market *did* react to that disclosure but, more importantly, the disclosure did not trigger the two-year statute of limitations because subsequent disclosures supplied additional critical facts necessary for Plaintiffs to plead their §10(b) claim. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (limitations period does not begin until a plaintiff did discover, or a reasonably diligent plaintiff would have discovered, "'the facts constituting the violation,' including scienter"); *Booth v. Strategic Realty Tr., Inc.*, 2014 WL 3749759, at \*5 (N.D. Cal. July 29, 2014) (same). The unredacted AG complaint filed on October 22, 2021, revealed Alphabet's top echelon's involvement in the Google-Facebook agreement, as well as details about the perks Google shared with Facebook, providing Plaintiffs with critical information about Alphabet's scienter as well as additional information relevant to the falsity of the misrepresentation. *See infra* at 9-10.[9]

## 2. Defendants Have Not Proven a Complete Lack of Price Impact Based on the September 1, 2021 Report

Because Defendants have not disproved price impact for December 16, 2020, the Court need not address the subsequent disclosures. *Homyk*, 2024 WL 1141699, at \*4. In any event, their arguments fail.

---

[8] Courts routinely certify classed in cases where Dr. Ferrell opines there is no price impact. *See, e.g.*, *Signet*, 2019 WL 3001084, at \*15-17; *Cooper*, 2018 WL 2117337, at \*4-5; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 143 (S.D.N.Y. 2012); *Homyk*, 2024 WL 1141699, at \*4-6.

[9] Additionally, the question of when a plaintiff could have discovered the facts supporting its claim "is fact-intensive." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081, 1083 (N.D. Cal. 2010) (noting that plaintiffs are entitled to the reasonable inference that all disclosures collectively placed plaintiffs on notice, rather than any single one); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 557 (N.D. Cal. 2009) ("defendant bears a considerable burden in demonstrating" at "summary judgment" that "plaintiff's claim is time barred" (citation omitted)). Merely alleging a corrective disclosure does not mean *ipso facto* that Plaintiffs learned of the fraud. *See Mauss v. NuVasive, Inc.*, 2018 WL 656036, at \*5 (S.D. Cal. Feb. 1, 2018) ("[T]he Ninth Circuit does not require that fraud be affirmatively revealed to the market to prove loss causation."). Defendants' cases are inapt. In *In re Redback Networks, Inc. Sec. Litig.*, 2007 WL 963958, at \*5 (N.D. Cal. Mar. 30, 2007), the court dismissed claims on unrelated grounds. *Kreek v. Wells Fargo & Co.*, 652 F. Supp. 2d 1053, 1058-59 (N.D. Cal. 2009) is factually distinguishable (including, *inter alia*, early key admissions by defendants).

On September 1, 2021, news broke post-market that the DOJ was accelerating its investigation and readying an antitrust lawsuit targeting Google's anticompetitive practices in the advertising technology business. SAC ¶263; Nye II ¶¶61, 68. On this news, Alphabet's shares declined. SAC ¶264; Nye II ¶63.

***Defendants' "statistical significance" argument fails.*** Dr. Nye's event study shows that following the DOJ news, Alphabet's Class A stock price declined at a statistically significant 91.6% confidence level, while the Class C stock price declined at an 86.36% confidence level. These price declines demonstrate price impact. *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 45-46 (S.D.N.Y. 2018) (finding "abnormal" price movement at an 86.85% confidence level); Nye II ¶¶ 31-37; *supra* n.3. Even if the price decline following the December 16, 2020 corrective disclosure were not statistically significant at the 95% level (it was), such a lack of statistical significance does not in any way preclude a finding of price impact, *let alone prove zero price impact*. *See* Nye II ¶¶64-69. Tellingly, Dr. Ferrell does not identify any other negative company-specific news unrelated to the DOJ news that caused Alphabet's stock price to decline (*id*. ¶65), further demonstrating Defendants' failure to prove a complete lack of price impact. *Ark. Tchr.*, 955 F.3d at 270 n.18. Moreover, the disclosure was accompanied by *negative residual returns*, which shows price impact. Nye II ¶63; *see also supra* at 4.

***The DOJ news is new or corrective information, and there is no mismatch***. Defendants wrongly contend that there was no new news and that a corrective disclosure must reveal the challenged statement was false by discussing it. (Op. 16). The Ninth Circuit has squarely rejected Defendants' precise argument, holding that admission "of the fraud is *not* a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss." *Mineworkers' Pension Scheme v. First Solar, Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (citation modified). Defendants ignore that a corrective disclosure need not be a mirror image of the misrepresentation. *Lloyd*, 811 F.3d at 1210; *see also* Nye II ¶67 (same, citing cases). For example, even an announcement of an investigation can (and often does) serve as a corrective disclosure when, as here, "more" is later revealed about the improper practices at issue. *Lloyd*, 811 F.3d at 1210; *see also Rabkin v. Lion Biotechs., Inc.*, 2018 WL 905862, at *13-18 (N.D. Cal. Feb. 15, 2018) (disclosure of enforcement actions, which followed prior disclosure of an SEC

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL

subpoena, satisfies loss causation).[10] *Goldman* did not change this settled law. *Mattel*, 2021 WL 4704578, at *5 (C.D. Cal. Oct. 6, 2021) (the "Court does not read *Goldman* to contradict that a 'corrective disclosure' need not be a 'mirror image' disclosure" (citation omitted)); *see also Goldman*, 594 U.S. at 123 (discussing match between "the contents" of the misrepresentation and the corrective disclosures).[11]

Moreover, the alleged misstatement is not at the high level of generality that existed in *Goldman*, but rather involves specific statements Pichai made in Congressional testimony about the process of ad tech bidding in the unified auction. The DOJ corrective disclosure is "directly related to the subject matter of" the alleged fraud, and nothing more is required. *Apple*, 2022 WL 354785, at *9 (rejecting price impact argument where corrective disclosure was "directly related to the subject matter of" the fraud). Market participants widely reported on DOJ's potential lawsuit (including that "the agency is looking into allegations that Google and Facebook entered into an illegal agreement to manipulate the online auctions") and several reports also specifically linked the news to Alphabet's stock decline, which is additional evidence of price impact. Nye II ¶68. Additionally, Dr. Ferrell failed to analyze the second step in *Goldman*'s analysis: the effect on the stock price if the company spoke truthfully but with equally generic statements. *See ATRS*, 77 F.4th at 99. Here, an equally "generic" statement would have represented to investors that bidders using Google's own channels were more likely to win bids.

Next, Defendants falsely contend that the Court declined to credit this alleged corrective disclosure. (Op. 16). The Court did no such thing. To the contrary, it held that "Plaintiffs have adequately alleged loss causation as to the surviving misstatement." Order at 16-17. In so doing, the Court merely provided *examples* of some of the corrective disclosures alleged. *Id*.

**3.     Defendants Have Not Proven a Complete Lack of Price Impact Based on the October 22, 2021 Unredacted AGs' Complaint**

On October 22, 2021, the AGs filed an *unredacted* complaint, exposing key details of the alleged

---

[10] Loss causation involves "no more than the familiar test for proximate cause," and "there are an infinite variety of ways for a tort to cause a loss." *First Solar, Inc.*, 881 F.3d at 753 (citation modified). *Goldman* does not require a "precise match" between misstatement and disclosure. *See Ark. Tchr. Ret. Sys. v. Goldman Sachs Group, Inc.*, 77 F.4th 74, 98 (2d Cir. 2023) ("*ATRS*").

[11] *In re Fibrogen Sec. Litig.*, 2024 WL 1064665, at *12 (N.D. Cal. Mar. 11, 2024), used by Defendants (Op. 16), merely cites *Goldman* and does not require a mirror-image corrective disclosure (nor can it).

anticompetitive conduct, which were previously concealed from the market. SAC ¶266; Nye II ¶70. On this news, Alphabet's Class A and C shares fell. SAC ¶267; Nye II ¶71. The Court held that Plaintiffs sufficiently alleged loss causation related to this news. Order at 16-17.

***Defendants' "statistical significance" argument fails***. Dr. Nye found that following the disclosure of the unredacted AGs' complaint, Alphabet's Class A stock price declined at a statistically significant 98.79% confidence level, while Alphabet's Class C stock price declined at a statistically significant 98.36% confidence level. Nye II ¶71. These price declines demonstrate price impact. *See supra* at 2. Moreover, the disclosure was accompanied by negative residual returns in Alphabet's stock price, which alone demonstrates price impact. Nye II ¶71; *see also supra* at 4 (citing cases).

Defendants contend that industry-related news about Snap, Inc. rather than the unredacted AG complaint caused the stock drop and that "many analysts agreed that 'the spillover form Snap . . . is doing ***much more*** to pressure internet advertising stocks' industrywide.'" (Op. 17) (emphasis added) (citation omitted). But the alleged presence of other factors supposedly contributing to the price decline does not refute price impact. *Apple*, 2022 WL 354785, at *10; *see also supra* at 5-6. Moreover, Defendants ignore market commentary discussing the AG's redacted complaint, including that it had been "tough to tell" whether the allegations in the redacted complaint were well supported because "the complaint was maddeningly redacted.'" Nye II ¶73 n.203. Major news outlets also discussed the newly unsealed allegations, including "more details," "internal communications," and "closely guarded specifics," which Google had "fought to keep" redacted. *Id*. ¶74. Defendants' argument that other factors caused the price decline is a classic challenge to loss causation, improper at class certification. *See Halliburton I*, 563 U.S. at 813; *see also supra* at 5-6.

***No mismatch and no stale news***. Defendants contend that there was a mismatch between the allegedly false misstatement and the information revealed in the unredacted portions of the AG's complaint that completely severs the price impact for that date, and that the market was already aware of the AG's allegations. (Op. 19). They are wrong. The unredacted complaint revealed not only that Alphabet's top echelon was involved in negotiating Google's agreement with Facebook, but also disclosed specific details of the Google-Facebook agreement's key terms. Dkt. No. 144-3 (Defs.' Ex. 16) ¶¶203-34 (*e.g.*, 300

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL

millisecond timeouts, impressions targeted to spam, prohibiting Google from using Facebook's bid data); *see also* Nye II ¶73. Notably, Dr. Ferrell admitted at his deposition that the redacted complaint contained additional details regarding the alleged bidding advantages that were previously undisclosed. Nye II ¶75.

Relatedly, Defendants' argument constitutes a "truth-on-the-market" defense, which cannot be decided at class certification. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 481-82 (2013) (proof that "news of the truth credibly entered the market and dissipated the effects of prior misstatements" is reserved for trial (citation omitted)); *Karinski v. Stamps.com, Inc.*, 2020 WL 6572660, at *7 (C.D. Cal. Nov. 9, 2020) (same); *In re Diamond Foods, Inc. Sec. Litig.*, 295 F.R.D. 240, 250 (N.D. Cal. 2013) (same).[12] At trial, Defendants face a "heavy burden" of proof on this argument. *Provenz v. Miller*, 102 F.3d 1478, 1492-93 (9th Cir. 1996).

Contrary to Defendants' contention, the information exposed in the unredacted AG complaint *relates back* to the misstatement, *i.e.*, that "All participants in the unified auction, including those using Google-owned platforms, compete for each impression . . . . *The channel through which a bid is received does not otherwise affect the determination of the winning bidder*." SAC ¶166 (emphasis added).

### 4.    Defendants Have Not Proven a Complete Lack of Price Impact Based on the February 11, 2022 EPC Complaint

On February 11, 2022, the European Publishers Council ("EPC") filed an antitrust complaint against Google with the European Commission, accusing Google of prioritizing its own self-interest at the expense of publishers and advertisers. SAC ¶269. On this news, Alphabet's shares lost value. SAC ¶270; Nye II ¶81.

***Defendants' "statistical significance" argument fails.*** Dr. Nye found that following the disclosure about the EPC complaint, Alphabet's Class A stock price declined at a 53.54% confidence level, while the Class C stock price declined at a 63.7% confidence level, accompanied by negative residual declines. Nye II ¶81. Defendants argue that Alphabet's stock prices did not decrease by statistically significant amounts of 95% (Op. 19) but, as explained above, the absence of statistical significance is not proof that a disclosure

---

[12] *Accord*, *Weston v. DocuSign, Inc.*, 348 F.R.D. 354, 371-72 (N.D. Cal. 2024); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 529 (N.D. Cal. 2009); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 287 (N.D. Cal. 2020).

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL

had no price impact. *See Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 486 (E.D. Pa. 2021) (class certified where price impact of a two-day decline was statistically significant at the 58% confidence level); *see also* Nye II ¶82. Additionally, Dr. Ferrell's regression model is flawed and biased against a finding of statistical significance. Nye II ¶82. Dr. Ferrell likewise offers no explanation for the observable Company-specific decline in Alphabet's stock price on February 11, 2021. *Id*. ¶83. Nor does he identify any other negative Company-specific information unrelated to the EPC complaint that could have contributed to the price decline observed on that day, dooming his effort to rebut price impact. *Id*.

***Defendants' remaining arguments fail.*** Defendants wrongly contend that the EPC complaint was not publicly available, hence it could not affect Alphabet's stock price. (Op. 19-20). But they ignore the fact that, while the actual complaint was not publicly available, the *EPC in its press release summarized its contents*. SAC ¶269; *see also* Dkt. Nos. 145-3, 4 (Defs.' Exs. 23-24). The EPC explained that its complaint included allegations that Google prioritized its own self-interests at the expense of *European* press publishers and advertisers, and that Google's conduct had actively depressed publisher revenues. Dkt. No. 145-4 (Defs.' Ex. 24). It also noted that Google utilized opaque auction programs to manipulate auctions and depress publisher revenues. *Id*. According to the EPC, Google's own internal study estimated that one of its secret auction programs dropped any given publishers' revenue by upwards of 40%. *Id*. Subsequent iterations of that program penalized publishers that have not granted AdX preferential access to their inventory, by dropping Google's bids for their inventory. *Id*.[13] Contrary to Defendants' assertion, major news outlets discussed the EPC complaint and its allegations, with some reports specifically linking Alphabet's stock price decline to the news. Nye II ¶86.

Defendants also argue that there is a "mismatch" between the contents of the press release and the alleged misstatement because the press release did not mention any of the alleged advantages Google had over other participants, nor the Network Bidding Agreement, nor Facebook. (Op. 20). But the disclosure *relates back* to the alleged misrepresentation because it reveals, for example, that Google was influencing

---

[13] Defendants argue that Plaintiffs do not claim the contents of the EPC press release as a corrective disclosure, but that is precisely Plaintiffs' allegation. It was through the EPC press release that the filing of the complaint and its details were announced on February 11, 2022.

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL

bids placed by publishers that refused to grant Google's AdX preferential access to their inventory by dropping Google's bids for those inventories and manipulating the auctions.

Next, Defendants falsely contend that the Court declined to credit this alleged corrective disclosure (Op. 20) which, in fact, falls under the same type of disclosures sustained by the court. *See supra* at 2, 8.

### 5. Defendants Have Not Proven a Complete Lack of Price Impact Based on the January 24, 2023 DOJ Complaint

On January 24, 2023, the DOJ issued a press release announcing that the agency, joined by AGs of eight states, filed a civil antitrust lawsuit against Google for monopolizing multiple digital advertising technology products in violation of antitrust laws, seeking the giant's breakup. SAC ¶271; Nye II ¶88. The lawsuit accused Google of "forcing adoption of Google's tools such as its publisher ad server and ad exchange, limiting real-time bidding on publisher inventory on its ad exchange and preventing rival exchanges from competing, and manipulating auctions to Google's benefit." SAC ¶271. On this news, Alphabet's shares fell. SAC ¶273; Nye II ¶90.

***Defendants' "statistical significance" argument fails.*** Dr. Nye's analysis shows that following the disclosure about the DOJ complaint, over the two-day event window of January 24–25, 2023, Alphabet's Class A stock price declined at a statistically significant 99.54% confidence level, while the Class C stock price declined at a statistically significant 99.36% confidence level, accompanied by negative residual declines. Nye II ¶90. Arguing lack of statistical significance, Defendants invoke Dr. Ferrell's flawed and biased study. (Op. 21). In addition to its wrongful inclusion of earnings days, Dr. Ferrell also improperly limited his analysis to a single-day event window and failed to consider multi-day event windows, even though Plaintiffs clearly allege a two-day decline, and academic event study literature commonly evaluates the price impact of value-relevant disclosures over multi-day periods. *See supra* at 3; *see also* SAC ¶273; Nye II ¶91. Moreover, when the change in Alphabet's stock price is measured using the standard one-day event window employed by Dr. Ferrell on an intraday basis, the company-specific returns are still statistically significant at above the 95% confidence level under both Nye's and Ferrell's regression models, further demonstrating that the market reacted to this alleged corrective event. Nye II ¶92. Dr. Ferrell offers no explanation for the observable company-specific decline in Alphabet's stock

price on January 24–25, 2023. *Id.* ¶93. And he fails to identify any other negative company-specific information unrelated to the DOJ complaint that could have contributed to the stock price decline. *Id.*

***New information and no mismatch.*** Ignoring the SAC's allegations, Defendants next contend that the DOJ complaint does not reveal any new information related to the challenged statement. (Opp. 21). But the DOJ complaint and analyst commentary published the same day about the DOJ's actions underscore *new risks* for Alphabet arising from the lawsuit (SAC ¶272; Nye II ¶97), as well as the fact that through its auctions manipulation, the company was securing over 30% or more of advertising dollars (SAC ¶271). Contemporaneous analyst commentary indicates that market participants viewed the DOJ lawsuit as a significant regulatory development with potentially meaningful implications for Google's advertising technology business, as well as for the company's stock. Nye II ¶97. For example, an analyst report published that day, titled "Death by a thousand cuts: Regulatory pressures intensify," highlighted potential "highly disruptive interventionist measures the DOJ could impose on Google, including divestiture of Google Ad Manager and 'breaking up' the AdTech stack," as well as "the fundamental disruption to Google's business model, which has been integrated along the AdTech stack across SSP (Supply Side), Ad servers, AdExchange and DSP (Demand Side)." SAC ¶272. News media likewise reported extensively on the lawsuit, with several outlets directly linking the announcement to the price decline. Nye II ¶98.

Finally, there is no mismatch because the complaint refers to the subject matter of the misstatement, *i.e.*, Google's manipulation of auctions to Google's benefit.

### 6. Defendants Have Not Proven a Complete Lack of Price Impact Based on the April 17, 2023 Corrective Disclosure

On April 17, 2023, it was announced that nine more State AGs joined the January 24, 2023 DOJ lawsuit against Alphabet. SAC ¶275; Nye II ¶100. On this news, Alphabet's Class A and C shares fell declined. SAC ¶276; Nye II ¶101. Dr. Nye found a decline at the 73.84% and 67.22% confidence level, respectively, for the drops, accompanied by negative residual declines. Nye II ¶101. The joinder expanded significantly Google's potential liability for manipulating the digital advertising auctions in its favor, providing new information to the market. Analysts and news commentary followed, including from the New York Post, which specifically linked the drop in Alphabet's stock price to these new developments.

SAC ¶277; Nye II ¶¶102-03. As explained *supra* at 8, the expanded DOJ lawsuit relates back to the alleged misrepresentation, so there is no *Goldman* mismatch.

In a footnote, Defendants wrongly contend that Plaintiffs "have not moved for class certification as to this alleged corrective disclosure." (Op. 7 n.7). But Plaintiffs did not abandon this disclosure, which the SAC pleads, and courts routinely consider corrective disclosures to be valid after the class period ends. *See Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 942 (C.D. Cal. 2012) ("[Defendants'] suggestion that Plaintiffs cannot suffer any loss as a result of fraud that was not disclosed until after the close of the class period is incorrect."); *In re Connetics Corp. Sec. Litig.*, 2008 WL 3842938, at *11 (N.D. Cal. Aug. 14, 2008) (crediting corrective disclosure outside the class period).[14][15]

**C.  Plaintiffs' Proposed Damages Model Meets the Predominance Requirement**

Plaintiffs and Dr. Nye have proffered a widely accepted methodology for measuring per share damages common to all class members. Nye I ¶¶68-73 (discussing use of event study to calculate damages); Nye II ¶¶105-08. "Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) [cases] . . ., making it the standard method for calculating damages in virtually every Section 10(b) class action." *City of Mia. Gen. Emps.' & Sanitation Emps.' Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018); *Cooper*, 2018 WL 2117337, at *7 (same); *Hatamian*, 2016 WL 1042502, at *8 (same). Defendants misapply *Comcast*, advancing a widely rejected argument (Op. 24-25) that in a securities fraud case Plaintiffs must do more than "articulat[e] a workable class-wide damages model in relation to the predominance requirement," which is not "a significant obstacle to class certification in securities litigation," *In BofI Holding, Inc. Sec. Litig.*, 2021 WL 3742924, at *7 (S.D. Cal. Aug. 24, 2021). "The Ninth Circuit reads *Comcast* to demand

---

[14] *See also In re Dura Pharms. Sec. Litig.*, 452 F. Supp. 2d 1005, 1023 (S.D. Cal. 2006) ("[T]he Supreme Court could have held that as a matter of law Plaintiffs cannot establish loss causation because the corrective disclosures . . . were made several months after the Class Period ended. The Supreme Court did not so hold, and instead only required the Plaintiffs to properly allege a causal connection between the economic losses suffered and the Defendants' misrepresentations.")

[15] Separately, for all the corrective disclosures, Plaintiffs may also invoke the *Affiliated Ute* presumption of reliance. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *6 (N.D. Cal. Apr. 21, 2016). As alleged, Plaintiffs' fraud claims are predicated in part upon omissions of material facts, including the Google-Facebook agreement. *See, e.g.*, SAC ¶¶167, 279, 346.

only that plaintiffs 'be able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *Hatamian*, 2016 WL 1042502, at *8. This is a straightforward exercise here because Plaintiffs have a "single theory of liability—that particular material misrepresentations [or omissions] caused putative class members to purchase [shares] at an artificially inflated price," which subsequently declined, causing damages. *BofI*, 2021 WL 3742924, at *7; Nye I ¶71. This type of liability and resulting out-of-pocket damages theory is routine in 10(b) cases. *See, e.g.*, *Junge*, 2022 WL 1002446, at *6; *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at *5-6 (N.D. Cal. Oct. 27, 2017). Indeed, courts regularly accept Dr. Nye's damages methodology. *See, e,g.*, *Cooper*, 2018 WL 2117337, at *7; *In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 651 (C.D. Cal. 2018).[16]

To the extent Defendants claim that non-fraud factors must be disaggregated from price declines, Dr. Nye opined that accepted tools and techniques exist to do so. Nye II ¶108. Moreover, "Defendants' objections to plaintiffs' damages approach boil[s] down to loss causation, which plaintiffs need not show at this stage." *Junge*, 2022 WL 1002446, at *6; *see also Luna*, 2017 WL 4865559, at *6; *BofI*, 2021 WL 3742924, at *8; *see also supra* at 5-6.[17]

### CONCLUSION

Accordingly, Plaintiffs' motion for class certification should be granted.

Dated:  March 17, 2026

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Emma Gilmore*

Jeremy A. Lieberman (admitted *pro hac vice*)
Emma Gilmore (admitted *pro hac vice*)

---

[16] Courts routinely approve damages models for 10(b) cases based on event studies like Dr. Nye's even in the absence of statistical significance. *See, e.g.*, *Alexion*, 2023 WL 2932485 at *14; *EQT*, 2022 WL 3293518 at *26-28; *S. Co.*, 332 F.R.D. at 396-401.

[17] Defendants rely on inapt cases outside the Securities Exchange Act context to argue that Plaintiffs' damages methodology does not satisfy *Comcast*. (Op. 24). In the only securities fraud case they cite, *Loritz v. Exide Techs.*, 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015), plaintiffs did not "set forth *any* model of damages." And the same judge distinguished *Loritz* in a later case granting class certification **based on Dr. Nye's damages model**. *In re Snap Sec. Litig.*, 334 F.R.D. 209, 217 (C.D. Cal. 2019) (finding it proper because, like here, it would measure only "damages attributable to th[e] theory" of liability).

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL

Villi Shteyn (admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
vshteyn@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

Orly Guy
Eitan Lavie
Ariel Sharon 4, 34th Floor
Givatayim, Israel 5320047
Telephone: +972 (0) 3 624 0240
Facsimile: +972 (0) 3 624 0111
oguy@pomlaw.com
eitan@pomlaw.com

*Counsel for Plaintiffs and for the Proposed Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner
7080 NW 4th Street
Plantation, FL 33317
Tel: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Plaintiff City of Fort Lauderdale Police & Fire Retirement System*

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION
- 3:23-cv-01186-RFL