# EXHIBIT 46

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

PURSUANT TO PROTECTIVE ORDER

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

THE STATE OF TEXAS, et      )
al.,                        )
                            ) Case No.
             Plaintiffs,    ) 4:20-cv-00957-SDJ
                            )
vs.                         ) Hon. Sean D. Jordan
                            )
GOOGLE LLC,                 )
                            )
             Defendant.     )


FRIDAY, AUGUST 30, 2024

HIGHLY CONFIDENTIAL - PURSUANT TO PROTECTIVE
ORDER
- - -

Videotaped deposition of Sundar Pichai, held at the offices of Freshfields Bruckhaus Deringer, 855 Main Street, Redwood City, California, commencing at 10:04 a.m. Pacific Time, on the above date, before Carrie A. Campbell, Registered Diplomate Reporter, Certified Realtime Reporter, Illinois, California & Texas Certified Shorthand Reporter, Missouri, Kansas, Louisiana & New Jersey Certified Court Reporter.
- - -

Job No. MDLG6786466

Page 18

of our ad tech platforms?

Q.    Sure.  Let's limit it right now to ad tech.

A.    You know, how the team defines the quality for an ad, I wouldn't be able to answer that specific, but, you know, they're looking for what will be -- our ad tech platform is trying to connect publishers and advertisers and give users relevant ads, and so they -- they're optimizing for quality, optimizing for monetizing publisher content and so on.  But I'm not fully sure of the actual details of the action.

Q.    All right.  So let's just take two of them, at least, and it may be more than that.

And I'll make the record clear, these are general definitions.  They may need to be tailored as we talk.

But in ad tech, you're looking to optimize the quality and the finances behind it.

Fair?  All right?

A.    Fair.

Q.    What is buy-side software in

PURSUANT TO PROTECTIVE ORDER

Page 19

that ad tech space?

A.     Again, at a high level, and I'm not directly involved with this business, but when we say "buy side," we are talking about, you know, there are publishers who are selling inventory --

Q.     Right.

A.     -- and advertisers who are buying ads against that inventory.  So when we say "buy side," it typically deals, in my understanding, with advertisers and tracking with ad tech platform.

Q.     So this would be software that advertisers use to buy ads, ad space, and place their advertisements.

Fair?

A.     At a high level, yes.

Q.     And then -- and that's all we're doing right now.

Sell-side software then, I think you just gave us a hint of what that is at a high level.

Publishers use it to sell ad space?

A.     Yes.

PURSUANT TO PROTECTIVE ORDER

Page 20

Q.     Have you ever been to an auction?

A.     In the real world?

Q.     Yeah.

A.     No, I've seen them in movies, but haven't been to one in --

Q.     You've never been to one?

A.     No.

Q.     I bought a pig one time because I was scratching my nose, and they thought I was bidding --

A.     Bidding.

Q.     -- at an auction.

You've seen them in the movies?

A.     That's correct, yeah.

Q.     You've got somebody who's selling something?

A.     (Witness nods head.)

Q.     You've got somebody who's buying something?

A.     Uh-huh.

Q.     But you also have that auctioneer.

Right?

A.     (Witness nods head.)

Page 133

Now, when we had been looking at that 90 to 100 percent of the market, that was specifically linked to the publishers.

Wasn't it?

MS. PATRICK:  Are you directing him somewhere?

QUESTIONS BY MR. LANIER:

Q.    Publishers use sell-side software.  Google has a 90 to 100 percent share.

You see?

A.    Yes.

Q.    All right.  ████ ████████ █████

████████ ██ ████████████ ████████ █████ ██

█████ ████ ██ █████ ████████ ██ ██████ ██████

█████ ████████ ██████ ████ ██████ ██████ ██████

And so what did he do?

He ████████ ████ ████ █ ████████

████████ ██ ██████ ██ ██ ████ ██ ████████ █

█ ████████ ██████ █████████ ██ ████████ ██████

████████ ████████ ████ ████████ ██ █ ████████

████████ █████ ████████ █████ ██████ ██ ██████

████████

Do you see that?

PURSUANT TO PROTECTIVE ORDER

Page 134

A.      Yes, I see what he's written.

Q.      So at least within Google, by

████████ ████████ ████████ ████████ █████ █ ███████

███████ █ ███████ ███████

Fair?

MS. PATRICK:  Objection.  Form.

QUESTIONS BY MR. LANIER:

Q.      According to Mr. Levitte?

A.      Yeah, according to this document from Mr. Levitte, yes.

Q.      All right.  Because you don't really know.  You didn't even know really what header bidding was.

Right?

A.      I'd heard of the phrase before, to be clear, but, yeah, I didn't know it in detail.

Q.      Now, Jedi Blue was the Facebook agreement that y'all entered into to kill header bidding.

Wasn't it?

MS. PATRICK:  Objection.  Form.

THE WITNESS:  Again, I wasn't involved with the agreement with Facebook.  I was aware there was an

PURSUANT TO PROTECTIVE ORDER

Page 135

agreement, but I really couldn't tell you anything more about that agreement.

QUESTIONS BY MR. LANIER:

Q.     Well, but if you look at what ███████

A.     I see the title, yes.

Q.     ███████

You're CEO for your level -- or your company.

Aren't you?

A.     That's correct.

Q.     In fact, he's got down here ███████

PURSUANT TO PROTECTIVE ORDER

Page 136

He says he was going to be sending this to you for final approval.

You're saying, if I understand it right, you didn't even know about it?

A.    That's not what I said.

Q.    Okay.

A.    Let me clarify what I said.

Q.    Please do.

A.    I think, you know, as an engineer on the team, he's speculating about the approval process.  That's not how the approval process necessarily works.

The business council -- that's what the word BC means -- they have authority to approve deals, and I think this was a deal which they approved and notified me of the deal.

Q.    Okay.  Do you know ▉▉▉▉ ▉▉▉▉ with ▉▉▉▉?

A.    With ▉▉▉?  I'm sorry, could you clarify?

(Pichai Exhibit 11 marked for identification.)

QUESTIONS BY MR. LANIER:

Q.    Let me -- yeah, let me show it

PURSUANT TO PROTECTIVE ORDER

Page 148

Q.     They're right there in front of you, sir.

Look on page 35.  "Partner" -- that's Google -- Facebook -- "commits to onboard 50 pubs and spend 20 million-plus and will ensure win rates at least 10 percent. Google to ensure the match rate is 80 percent and 60 percent for mobile and web.  The partner is to ensure the bid response rate is no more than 10 percent below the match rate. Google's going to get 10 percent fee on the initial 500,000,000 and 5 percent thereafter."

Do you see where I'm reading?

A.     Yes.

Q.     And you understand this is a big cut rate compared to what Google charged everybody else?

A.     I'm not familiar with the terms in this business, so I can't comment on it.

Q.     So you got this, and you didn't know that y'all were giving them a big discount to do this?

A.     Again, in the ad tech business, I had executives who ran it, and this was

Page 149

overseen by several, several of my senior-most executives. And so, you know, I did not -- I was not involved in the underlying terms.

Q.    But, sir, you got sent this with the statement, you need to see this.

Right?

A.    You know, there are -- my executives would update me if I needed to know something in more detail.

I also delegate responsibility, so -- you know, for certain areas of the business. For the ad tech business, I clearly delegated responsibilities.

Q.    But, I mean, where it lists all the advantages to your company on page 37, as the list continues, it talks about how ███ ████ ████ ██████ ████ ███ █ █████ ██████ █████ ████ ██████ █████ ███ ██████ ██████ ███████ █ ██ █████████ ████ █ ████ ██████ ████ ███ ██████ █ ████ ████ █ ████ ████ █████ ████ █████ ██████

Do you see that?

MS. PATRICK:  Objection.  Form.

THE WITNESS:  Sorry, can you

PURSUANT TO PROTECTIVE ORDER

Page 151

MR. LANIER:  I appreciate yours.

We'll mark my Elmo notes as Exhibit 14 just as a demonstrative so that you've got a copy of them.

MS. PATRICK:  Have you got them all in a stack so we'll catch them all?

MR. LANIER:  Yes.  We'll catch them all.  You bet.

MS. PATRICK:  Thank you so much.

VIDEOGRAPHER:  This concludes today's deposition.  We're going off record.  The time is 2:19.

(Pichai Exhibit 14 marked for identification.)

(Deposition concluded at 2:19 p.m.)

- - - - - - -

PURSUANT TO PROTECTIVE ORDER

Page 152

CERTIFICATE

I, CARRIE A. CAMPBELL, Registered Diplomate Reporter, Certified Realtime Reporter and Certified Shorthand Reporter, do hereby certify that prior to the commencement of the examination, Sundar Pichai, was duly sworn by me to testify to the truth, the whole truth and nothing but the truth.

I DO FURTHER CERTIFY that the foregoing is a verbatim transcript of the testimony as taken stenographically by and before me at the time, place and on the date hereinbefore set forth, to the best of my ability.

I DO FURTHER CERTIFY that I am neither a relative nor employee nor attorney nor counsel of any of the parties to this action, and that I am neither a relative nor employee of such attorney or counsel, and that I am not financially interested in the action.

_Carrie A. Campbell_

_____
CARRIE A. CAMPBELL,
NCRA Registered Diplomate Reporter
Certified Realtime Reporter
California Certified Shorthand
Reporter #13921
Missouri Certified Court Reporter #859
Illinois Certified Shorthand Reporter
#084-004229
Texas Certified Shorthand Reporter #9328
Kansas Certified Court Reporter #1715
New Jersey Certified Court Reporter
#30XI00242600
Louisiana Certified Court Reporter
#2021012
Notary Public
Dated:  9/9/24

PURSUANT TO PROTECTIVE ORDER

Page 153

INSTRUCTIONS TO WITNESS

DATE: 9/3/24      C/O KATHY D. PATRICK, ESQ.

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign the errata sheet and date it.  You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the deposition transcript by you.  If you fail to do so, the deposition transcript may be deemed to be accurate and may be used in court.

PURSUANT TO PROTECTIVE ORDER

Page 154

ACKNOWLEDGMENT OF DEPONENT

I,_____, do hereby certify that I have read the foregoing pages and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____
Sundar Pichai                  DATE

Subscribed and sworn to before me this _____ day of _____, 20 _____.
My commission expires: _____

Notary Public

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.