# EXHIBIT 48

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

BORIS FELDMAN, State Bar No. 128838
boris.feldman@freshfields.com
DORU GAVRIL, State Bar No. 282309
doru.gavril@freshfields.com
ELENA HADJIMICHAEL, State Bar No. 355715
elena.hadjimichael@freshfields.com
CARL P. HUDSON, State Bar No. 317201
carl.hudson@freshfields.com
J. MIA TSUI, State Bar No. 344251
mia.tsui@freshfields.com
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: (650) 618-9250

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMI - GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALPHABET INC., et al., <br><br> Defendants. | Case No.: 3:23-cv-01186-RFL <br><br> **DECLARATION OF ALICIA O'BRIEN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## DECLARATION OF ALICIA O'BRIEN

I, Alicia O'Brien, declare as follows:

1.      I am duly admitted to practice in the District of Columbia and an attorney with the law firm King & Spalding LLP. I have personal knowledge of the matters stated herein. If called as a witness, I could and would competently testify to the matters stated herein.

2.      This declaration is submitted in support of Defendants' Motion for Summary Judgment.

3.      I was personally involved in Google's responses to Questions for the Record ("QFR(s)") sent by Congress to Google on or around August 14, 2020. These QFRs followed testimony to Congress before the U.S. House of Representatives Committee on the Judiciary ("House Judiciary") by several technology company CEOs  on July 29, 2020, including Alphabet's CEO, Sundar Pichai. For the avoidance of doubt, this declaration does not contain or refer to any attorney-client communications or any advice I may have provided in connection with those QFRs.

4.      Google established a process to prepare responses to each QFR. As the QFRs spanned multiple topics, product areas, and time frames, the individual questions were divided and assigned to teams to draft and approve each response. These teams were comprised of members of Google's policy and legal teams (both internal and external). The drafters had, or consulted with individuals with, relevant knowledge to draft answers to each QFR. The drafters also consulted existing documents, where necessary. The approvers also had relevant knowledge and reviewed the draft answers for accuracy and responsiveness. The result of this process was that each of the responses were considered to be accurate and responsive based on the information reasonably available at the time the QFR responses were submitted to Congress.

5.      I am familiar with each of the QFRs, and specifically, the QFRs submitted by former Representative David Cicilline, then Chair of the House Judiciary Subcommittee on Antitrust, Commercial, and Administrative Law (the "Subcommittee"). I am aware that QFR number 6 on Representative Cicilline's list of QFRs ("QFR 6") read "What percentage of bids does Google win on its own ad exchanges?"

6.      I am also aware that Google's response to Representative Cicilline's QFR 6 (the "QFR

-1-

6 Response") read as follows:

> Publishers utilizing Google Ad Manager's auction to sell their ad inventory are able to solicit bids from Authorized Buyers (e.g., third-party demand side platforms ("DSPs"), ad networks, and trading desks) and Open Bidders (third-party ad networks and ad exchanges), as well as buyers utilizing Google-owned platforms such as Google Ads and Display & Video 360. These bidders compete in a unified auction against each other, the publisher's guaranteed sales, and other demand sources configured by the publisher. All participants in the unified auction, including those using Google-owned platforms, compete for each impression on a net basis, and no auction participant receives any information about any other party's bids prior to completion of the auction. The highest net bid wins. The channel through which a bid is received does not otherwise affect the determination of the winning bidder.

7.     I am aware that the specific language being challenged in this securities fraud lawsuit is: "The channel through which a bid is received does not otherwise affect the determination of the winning bidder."

8.     I am aware that Google followed the process described in paragraph 4 of my declaration to draft its response to QFR 6.

9.     I am aware that the drafters of the QFR 6 Response included:

- ███████████, then-███████████████ at Google for display advertising;
- ███████████, then-███████████████████ at Google;
- ██████████, then-█████████████████████████ at Google;
- ██████████, who then worked on Google's █████████████████████ ██████ team; and
- Attorneys at Axinn, Veltrop & Harkrider LLP, who represented Google in the antitrust proceedings brought by the U.S. Department of Justice related to the company's ad tech business, which includes the auction described in the QFR 6 Response.

10.     I am aware that the approvers of the QFR 6 Response included:

- █████████;
- █████████;
- █████████;
- ███████████████, then-█████████████████████████████████████

-2-

at Google;

- ████████████, then-████████████████████████ at Google; and

- ████████████, ████████████████████████████████████ at Google.

11.    Alphabet's CEO, Sundar Pichai, did not draft the QFR 6 Response and was not identified as a reviewer or approver of the QFR 6 Response. I am not aware of any discussions with Mr. Pichai about the QFR 6 Response.

12.    On behalf of Alphabet and Google, King & Spalding submitted the QFR responses, including the QFR 6 Response, to the Subcommittee. The transmittal letter made clear that it was the company, and not Mr. Pichai, who was responding to the QFRs. A copy of that letter is attached as Exhibit A.

13.    Congressional committees, including the House Judiciary Committee, and not the company, control the release of QFR responses as part of the hearing record.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Washington D.C., this 17th day of April, 2026.

Dated: April 17, 2026

By: ████████████
        Alicia O'Brien

-3-

# EXHIBIT A

# KING & SPALDING

King & Spalding LLP
1700 Pennsylvania Ave, NW
Washington, D.C. 20006-4707
Tel: (202) 737-0500
Fax: (202) 626-3737
www.kslaw.com

Alicia C. O'Brien
Direct Dial: 202-626-5575
aobrien@kslaw.com

September 11, 2020

**BY ELECTRONIC MAIL**

**Google – Highly Confidential**

The Honorable Jerrold Nadler
  Chairman
The Honorable Jim Jordan
  Ranking Member
Committee on the Judiciary

The Honorable David N. Cicilline
  Chairman
The Honorable F. James Sensenbrenner, Jr.
  Ranking Member
Subcommittee on Antitrust, Commercial, and Administrative Law

United States House of Representatives
Committee on the Judiciary
2138 Rayburn House Office Building
Washington, DC 20515

      RE:    **Google's Response to Subcommittee Questions for the Record**
               **Received August 14, 2020**

Dear Chairman Nadler, Ranking Member Jordan,
Subcommittee Chairman Cicilline, and Subcommittee
Ranking Member Sensenbrenner:

      On behalf of our client Alphabet Inc. ("Alphabet," its subsidiary "Google," or "the Company"), we write in response to your August 14, 2020 letter and follow up email on August 19, 2020, requesting responses to questions for the record from the Subcommittee on Antitrust, Commercial, and Administrative Law, following the Subcommittee's July 29, 2020 hearing

CONFIDENTIAL

GOOG-AMI-000029888

Honorable Representatives Nadler, Jordan, Cicilline, and Sensenbrenner
September 11, 2020
Page 2

titled, "Online Platforms and Market Power, Part 6: Examining the Dominance of Amazon, Apple, Facebook, and Google." Google has asked me to formally submit information responsive to the Subcommittee's questions for the record (see attached Appendix A). Today's submission supplements information Google has provided to the Subcommittee at the hearing on July 29 and throughout its long-standing and productive engagement with the Committee.

In responding to the Subcommittee's questions at the July 29 hearing, Sundar Pichai used his best efforts to be as accurate and responsive as possible based on his knowledge and recollection of the facts. Similarly, in responding to the Subcommittee's subsequent questions, Google has used its best efforts to be as accurate and responsive as possible based on its understanding of the terms used in your questions. The representations herein are based on reasonably available information and are not intended to, and do not, capture every fact related to the topics raised during the hearing or in your questions for the record.

In providing information and documents in response to your requests, the Company does not waive, nor does it intend to waive, any of its rights or privileges with respect to this inquiry, including any applicable attorney-client, work product, or other evidentiary privilege, or any objections to the assertions or questions in your letter.

Should you have any questions concerning the information provided herein, please contact me directly at 202-626-5575.

Sincerely,

Alicia C. O'Brien

Enclosure

**GOOGLE – HIGHLY CONFIDENTIAL**

CONFIDENTIAL

GOOG-AMI-000029889