UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMI - GOVERNMENT EMPLOYEES PROVIDENT FUND MANAGEMENT COMPANY LTD., et al.,

Plaintiffs,

v.

ALPHABET INC., et al.,

Defendants.

Case No. 23-cv-01186-RFL (KAW)

**ORDER RE 10/16/2026 DISCOVERY LETTER**

Re: Dkt. No. 269

[Discovery Letter No. 2]

Plaintiffs filed this securities class action against Defendants Alphabet Inc., Sundar Pichai, and Google LLC ("Google"), alleging that Defendants violated the Securities Exchange Act by making certain statements relating to Defendant Google's digital advertising technology business. (Second Amend. Compl. ("SAC"), Dkt. No. 87; Dismissal Order, Dkt. No. 108.) Pending before the Court is the parties' joint discovery letter concerning a discovery protocol. (Discovery Letter, Dkt. No. 269.)

At issue are documents collected from two groups of custodians: (1) documents collected for this litigation from 27 custodians that were previously produced in the Ad Tech cases underlying Plaintiffs' lawsuit, and (2) documents collected from 20 new custodians. (Discovery Letter at 1, 3.) Using Plaintiffs' search terms, Defendants conducted statistical sampling of the documents, resulting in hits of 0.25% of the documents produced by the prior 27 custodians (5,467,828 documents) and 0.06% of the documents produced by the new 20 custodians (430,553 documents). (*Id.* at 4.)

Plaintiffs now demand that Defendants sample each individual custodian using new search terms. (Discovery Letter at 4.) During their meet and confer, Defendants agreed to randomly

United States District Court
Northern District of California

sample, at a confidence level of 95% with a 5% margin of error, the documents resulting from Plaintiffs' specified search terms for each individual custodian, *i.e.*, approximately 400 documents per custodian for a total of almost 20,000 documents. (*Id.* at 5.) The parties, however, dispute several issues.

As an initial matter, Defendants now assert that no protocol is required because further random sampling is unwarranted. (Discovery Letter at 5.) The Court is not inclined to find that no further discovery is warranted, particularly given that Defendants offered a protocol and do not suggest that their own proffered protocol would impose an undue burden on them.

As to the protocol itself, the parties first dispute the threshold at which Defendants review and produce documents. Plaintiffs ask that this threshold be 10% or higher. (Discovery Letter at 1.) Defendants propose that the threshold be 15%, but that Defendants will report to Plaintiffs any custodian with a response rate over 10% for the parties to then meet and confer on. (*Id.* at 5.) The Court finds that a 10% threshold appears appropriate. Notably, Defendants have not articulated any particular burden from reporting and performing a search at a 10% threshold (as opposed to a 15% threshold). Further, given the sub-1% hit rates to date, it appears unlikely that a large number of individuals will fall within the 10-15% threshold, such that Defendants' proposed two-tiered approach seems unnecessary. Rather, adopting Defendants' proposal only increases the risk of additional discovery disputes in what is already a contentious discovery process.

Second, Plaintiffs ask that Defendants be required to produce a null set, *i.e.*, a random sample of the non-responsive, non-privileged documents for Plaintiffs' review. (Discovery Letter at 2.) Plaintiffs contend that this null set is warranted because the parties have "sharply diverging views of relevance." (*Id.*) For example, Plaintiffs point to the parties' disagreement regarding match and win rates, which the Court has since resolved. (*Id.*) Plaintiffs do not, however, suggest that Defendants have withheld any such documents on relevance grounds since the dispute was resolved. Plaintiffs also point to Defendants' alleged failure to produce documents that third-party Facebook then provided, but provides no information to suggest that Defendants failed to produce these documents on the grounds of non-responsiveness. (*Id.*) Finally, Plaintiffs point to cases that allowed for validation, but those cases concerned training sets for Technology Assisted Review

("TAR") models. *See Fed. Trade Comm'n v. Uber Techs., Inc.*, No. 25-CV-03477-JST (TSH), 2026 WL 1910139, at *3 (N.D. Cal. July 2, 2026); *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 494 (N.D. Ill. 2018). As noted in *City of Rockford*, conducting random samples of a null set is a part of the TAR process. *Id.* It is not apparent from the parties' filing, however, that the parties are using TAR models; rather, it appears the parties are using statistical sampling of search terms. (*See* Discovery Letter at 4; *see also City of Rockford*, 326 F.R.D. at 493 (distinguishing between key word searches and TAR). Thus, Plaintiffs have not demonstrated a need for a null set.

Third, Plaintiffs ask that production be at a 2.5% margin of error. (Discovery Letter at 3.) Plaintiffs, however, provide no explanation for why this lower margin of error is warranted in this case.

Finally, Plaintiffs request that Defendants provide recall rates, but again provide no explanation for why this would be warranted. (Discovery Letter at 3.)

Accordingly, the Court will adopt the protocol proposed by Defendants as modified, namely that Defendants review random samples from each of the 47 custodians, with the samples to be drawn in a way to support results of 95% confidence with a 5% margin of error. For any custodian with an estimated responsiveness rate of 10% or higher, Defendants shall review and produce custodial documents that contain the search terms proposed by Plaintiffs.

This order disposes of Dkt. No. 269.

IT IS SO ORDERED.

Dated: November 17, 2026

KANDIS A. WESTMORE
United States Magistrate Judge